## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE PROTECT DEMOCRACY PROJECT, INC.
2020 Pennsylvania Ave., NW, #163
Washington, D.C. 20006

            Plaintiff,

    v.

UNITED STATES POSTAL SERVICE,
475 L'Enfant Plaza SW
Washington, D.C. 20260

            Defendant.

Civil Action No. 1:20-cv-02214

## COMPLAINT

Plaintiff The Protect Democracy Project, Inc. ("Protect Democracy") brings this action against Defendant United States Postal Service ("USPS") to compel compliance with the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Plaintiff alleges as follows:

## INTRODUCTION

1.      Plaintiff seeks an Order requiring USPS to provide, on an expedited basis, documents responsive to FOIA requests related to the agency's preparations for the anticipated surge in voting by mail in the 2020 general election.

2.      The election is less than three months away.  The early voting process, including both in-person voting and the distribution of mail ballots, will begin shortly in a number of states.  In a closely contested election, with a high percentage of voting by mail, widespread mail delays causing ballots to go uncounted could influence the outcome, undermining the legitimacy

of the result.  It is difficult to conceive of a more pressing and important policy matter worthy of public debate – all the more so in the face of an unprecedented global pandemic.

3.      Over the past five months, since mid-March, COVID-19 has upended every aspect of Americans' lives.  The highly transmissible nature of the virus and the enhanced risk to older and medically compromised individuals has made formerly straightforward tasks difficult or impossible to carry out.  As reflected in a number of primary and special elections since the onset of the pandemic, voting in person – exercising a citizen's most fundamental right in our democracy – has become challenging and potentially dangerous.

4.      In some cases, fewer polling places have been made available to voters.  Poll workers, many of them older citizens volunteering their time, have been understandably unwilling to participate for fear of exposure to the virus.  So, too, voters have been fearful of showing up in person to vote – a wholly reasonable fear.  For example, a study of the April 7, 2020 Wisconsin primary found a statistically significant association between in-person voting and the spread of COVID-19 two to three weeks after the election.[1]

5.      As a result of these COVID-related concerns, a substantially higher than usual number of primary and special election voters chose to cast their ballots by mail.  Some states saw requests for mail ballots increase by hundreds of thousands or even more than a million.  So, for example, Wisconsin experienced an increase of more than a million absentee ballots returned by mail – 440% more than the number cast in its April 2016 election.  In some primaries, the vast majority of votes were votes by mail – *e.g.*, 85% in Kentucky.  An even greater upsurge in

---

[1] David Wahlberg, *71 People Who Went to the Polls on April 7 Got COVID-19; Tie to Election Uncertain*, Wis. State J. (May 16, 2020), https://madison.com/wsj/news/local/health-med-fit/71-people-who-went-to-the-polls-on-april-7-got-covid-19-tie-to/article_ef5ab183-8e29-579a-a52b-1de069c320c7.html

voting by mail is expected in the upcoming November 2020 general election, with many millions of mailed ballots placing strains on an already overburdened state and local election system, and on an overburdened U.S. Postal Service.

6.      Even before the pandemic, USPS was suffering operational difficulties.  For example, a report by the USPS Office of Inspector General following the November 2018 mid-term elections found that the seven worst performing USPS facilities – which includes facilities in Florida, Ohio and Wisconsin – delivered on average only 84.2% of election mail on time. And on-time mail delivery worsened dramatically in 2019.

7.      Since the onset of the pandemic in March, USPS's operations have been further compromised, resulting in thousands of lost or delayed mail ballots in this spring's primary elections, a failure that threatens to recur in November.  The majority of the agency's 630,000 employees are essential workers who are unable to work remotely.  As of mid-June, before the current surge of infections in parts of the country, more than 3,000 postal workers had tested positive for COVID-19, 67 had died of the virus, and 5,800 were under quarantine.  With health care experts warning of a possible second wave of COVID-19 in the fall, along with the flu, large numbers of USPS employees will likely be unable to report for duty.

8.      The agency's ability to perform its work has also been undermined by severe financial strains.  From 2007 to mid-2020, USPS recorded cumulative net losses of $83.1 billion. It has approximately $161 billion in debt, creating an ongoing, substantial drain on its already limited resources – and requiring it to defer necessary capital improvements, resulting in deteriorating service.

9.      At the same time, the recently installed Postmaster General has issued new rules eliminating overtime and slowing down delivery of mail across the system.  Among other things,

he directed that mail be left behind at distribution centers for delivery the next day if taking the time to collect it would delay mail carriers, a departure from the longstanding practice of not leaving any mail behind and making multiple trips to ensure timely delivery.[2]  After just two weeks following the implementation of these policies on July 13, USPS had already experienced backlogs and delays, even for Express Mail, with bins of mail ready for delivery sitting in post offices.  Without the ability to work overtime, Postal Service employees say the logjam is worsening.[3]

10.     Taken together, these circumstances call into question USPS's readiness for the November 2020 election.  Whatever may be the merits of the recent policy changes, the agency's preparations for voting by mail in the November 2020 election, including outreach to and coordination with state election officials, is indisputably a matter of high public importance.  The need for an effective vote-by-mail system this November – one that ensures, along with in-person balloting, the realization of every citizen's fundamental right to have his or her vote counted – is clear.

11.     In order to exercise their role as representatives of the people, including taking necessary steps to ensure that USPS is able to handle the anticipated surge in voting by mail, members of Congress have asked USPS to provide documents and regular briefings on its election mail plan, and have pressed for federal legislation to address the issue.  To date, USPS

---

[2] Jacob Bogage, *Postal Service Memos Detail 'Difficult' Changes, Including Slower Mail Delivery*, Wash. Post (July 14, 2020), https://www.washingtonpost.com/business/2020/07/14/postal-service-trump-dejoy-delay-mail/

[3] Michelle Ye Hee Lee & Jacob Bogage, *Postal Service Backlog Sparks Worries That Ballot Delivery Could Be Delayed in November*, Wash. Post (July 30, 2020), https://www.washingtonpost.com/politics/postal-service-backlog-sparks-worries-that-ballot-delivery-could-be-delayed-in-november/2020/07/30/cb19f1f4-d1d0-11ea-8d32-1ebf4e9d8e0d_story.html

has largely failed to respond to these Congressional requests.  So, too, it is essential that the people be able to provide their views on this matter of vital national significance.  Neither Congress nor the public can speak to these issues in an informed manner without access to Defendant USPS's records reflecting the steps the agency is – or is not – taking to prepare for voting by mail in November.

12.     Accordingly, on June 22 and June 23, 2020, Plaintiff submitted narrowly targeted FOIA requests to Defendant.  The first request sought a single, specific document:

> The outreach plan . . . as of June 15, 2020, governing contacts with state election officials and political parties regarding the anticipated increase in the volume of election mail in the 2020 general election.

The second request was narrowly tailored as well.  It covered just the period from March 1, 2020 to date and asked for documents focused on USPS's preparations for handling the anticipated increase in election mail in the 2020 general election.

13.     In light of the very limited time before the November election, and the even shorter time before voting by mail begins in many states, there is urgency in accessing the information from Defendant USPS and making it widely available, which Plaintiff intends to do. Accordingly, in order for the records to serve their purpose of timely informing the public on these matters, Plaintiff sought expedited treatment of its requests.  Despite the clear urgency of Plaintiff's requests, Defendant has to date (i) denied Plaintiff's request for expedited processing, without explanation; (ii) erroneously claimed that Plaintiff's requests were overbroad and burdensome, stating that it would "take no further action unless we hear back from you;" (iii) failed to respond to Plaintiff's good faith efforts to narrow its requests; and (iv) failed to comply

with FOIA's mandate that it gather and review responsive documents and determine and communicate the scope of documents it intends to produce and withhold.[4]

14.    Plaintiff now seeks to compel Defendant to take these statutorily required steps, and to produce:

- Within 24 hours of the issuance of this Court's Order, the USPS outreach plan governing contacts with state election officials and political parties regarding the anticipated increase in the volume of election mail in the 2020 general election.

- Within 21 days of the issuance of this Court's Order, or by another date certain to be determined by the Court, all non-exempt other requested records (or acknowledgment if no such records exist).

## JURISDICTION AND VENUE

15.    The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

16.    Venue is proper pursuant to 5 U.S.C. § 552(a)(4)(B).

## PARTIES

17.    Plaintiff Protect Democracy is an organization with 501(c)(3) tax-exempt status, incorporated under the laws of the District of Columbia, and located at 2020 Pennsylvania Avenue, NW, #163, Washington, DC 20006.  Plaintiff's mission is to protect our democracy from descending into a more authoritarian form of government and to work to uphold the guardrails of democracy.  Free, fair, and regular elections form the cornerstone of the American experience, allowing citizens to exercise their most basic political right, the right to choose who governs.  As part of its mission, Plaintiff seeks to inform public understanding of operations and

---

[4]   Notwithstanding these objections, USPS did respond to one item in Plaintiff's requests, producing three email calendar invitations for a call between Postal Service Board of Governors Chairman Robert M. Duncan, Postal Service Governor Roman Martinez, and Secretary of Treasury Steven Mnuchin.  Defendant withheld from production a two-page summary of the call, citing the deliberative process privilege, FOIA Exemption 5, 5 U.S.C. § 552(b)(5).

activities of the government, including the conduct of elections, by gathering and disseminating information that is likely to contribute significantly to the public understanding of executive branch operations and activities.  Plaintiff regularly requests such information pursuant to FOIA.

18.     Plaintiff intends to give the public access to documents transmitted via FOIA on its website, https://protectdemocracy.org, and to provide information about and analysis of those documents as appropriate.

19.     Defendant USPS is an independent agency of the executive branch of the federal government of the United States.  USPS is headquartered at 475 L'Enfant Plaza SW, Washington, D.C., 20260.  USPS has possession, custody, and control of the documents that Plaintiff seeks in response to its FOIA requests.

**FACTUAL ALLEGATIONS**

I.     **The COVID-19 Pandemic Has Fundamentally Altered the Way Millions of Americans Cast Their Ballots**

20.     On March 13, 2020, President Trump issued a Proclamation Declaring a National Emergency Concerning the Novel Coronavirus Disease ("COVID-19") Outbreak.  Because of the highly contagious nature of the disease, the federal government (as well as state and local governments) soon began to recommend, and in some cases require, that individuals refrain from gathering in groups, especially indoors, and avoid large crowds.

21.     As a result, many citizens declined to vote in person in the federal, state and local primary elections that have occurred since March.  Instead, record numbers of American voters chose to vote by mail.

22.     In 2018, 26 states and the District of Columbia had vote-by-mail rates under 10%.[5]  Now, states are facing historic rates of voting by mail, facilitated in part by policy changes to accommodate voters' fears of COVID-19 infections.  Of the 15 states that did not permit voters to request absentee ballots without an excuse, most have determined that the risk of infection is a sufficient justification to vote by mailed absentee ballot.[6]

23.     The primary elections of this spring and summer saw voters request and cast ballots by mail in historic numbers.  For example:

- In Wisconsin, over 1.3 million voters requested absentee ballots for the April 7, 2020 primary election, and almost 1 million were completed and returned by mail to election offices, representing a 440% increase over the April 2016 election.[7]

- In New York, more than 1.7 million voters requested absentee ballots for the June 2020 primary elections, a tenfold increase over 2016.[8]

- In Kentucky, 860,000 people requested mail-in ballots, and about 85% of the votes cast were by mail-in ballot.  Only 15% voted in person.[9]

---

[5] Ryan McCarthy & Maryam Jameel, *The Postal Service is Steadily Getting Worse – Can It Handle a National Mail-In Election?*, ProPublica (June 15, 2020), https://www.propublica.org/article/the-postal-service-is-steadily-getting-worse-can-it-handle-a-national-mail-in-election

[6] Wendy R. Weiser, *To Protect Democracy, Expand Vote by Mail*, Brennan Ctr. For Justice (June 30, 2020), https://www.brennancenter.org/our-work/analysis-opinion/protect-democracy-expand-vote-mail

[7] Office of Inspector General, USPS, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* (July 7, 2020), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf

[8] Rachel Glickhouse, *Electionland 2020: Kentucky and New York Vote, Trump on Mail Voting, COVID Impacts and more*, ProPublica (June 26, 2020), https://www.propublica.org/article/electionland-2020-kentucky-and-new-york-vote-trump-on-mail-voting-covid-impacts-and-more

[9] Paula Vasan, *Kentucky Secretary of State Says Absentee Ballots Account for 85% of Vote*, WHAS 11 (June 24, 2020), https://www.whas11.com/article/news/local/kentucky-election-absentee-vote-turnout/417-23f2bb1e-ea9a-4c7e-8202-c33f54063ab6

- In Washington, D.C., 91,000 voters requested an absentee ballot, 15 times the normal volume.[10]

- In the Georgia primaries, election officials faced a record demand for absentee ballots, sending out more than 1.5 million.[11]  More than 1.1 million absentee ballots were cast, five times as many as in the 2018 general election.[12]

- In Pennsylvania, roughly 1.9 million voters requested absentee ballots – 18 times as many as in the 2016 general election.[13]  Of those, approximately 1.4 million voters cast their ballots by mail, out of a total of roughly 2 million ballots cast.[14]

- In the Nebraska primaries on June 18, 80% of the record 471,000 ballots were cast by mail.  Historically, only about 25% of ballots are cast by mail in Nebraska.[15]

## II.      USPS Operations Have Been Weakened By Financial Pressure and COVID-19

24.      This unprecedented growth in demand for vote-by-mail services comes at a

difficult time for USPS.  The agency is expected to be self-sustaining financially, and it has

---

[10] Nick Corasaniti  Michael Wines, *Beyond Georgia: A Warning for November as States Scramble to Expand Vote-by-Mail*, N.Y. Times (June 10, 2020), https://www.nytimes.com/2020/06/10/us/politics/voting-by-mail-georgia.html?searchResultPosition=20

[11] *Id.*

[12] Wendy R. Weiser, *To Protect Democracy, Expand Vote by Mail*, Brennan Ctr. For Justice (June 30, 2020), https://www.brennancenter.org/our-work/analysis-opinion/protect-democracy-expand-vote-mail

[13] *Id.*

[14] Nick Corasaniti  Michael Wines, *Beyond Georgia: A Warning for November as States Scramble to Expand Vote-by-Mail*, N.Y. Times (June 10, 2020), https://www.nytimes.com/2020/06/10/us/politics/voting-by-mail-georgia.html?searchResultPosition=20

[15] Chris Dunker, *Mail-In Ballots Account for 80% of Votes Cast in Record-Breaking Primary*, Lincoln Jounral Star (June 18, 2020), https://journalstar.com/news/local/govt-and-politics/elections/mail-in-ballots-account-for-80-of-votes-cast-in-record-breaking-primary/article_079eda2a-7c35-54dc-92c4-cf8c0efc64ae.html

received no federal funds since 1982.  In 2006, Congress enacted legislation requiring USPS to prefund 75 years of retiree benefits in ten years, at a cost of approximately 110 billion dollars.[16]

25.    From 2007 to mid-2020, USPS recorded cumulative net losses of $83.1 billion including $9 billion in FY 2019 and a comparable amount expected in 2020, driven largely by a decline in letter mail.[17]  As of late June, the agency had approximately $160.9 billion in debt, $119.3 billion of which was due to its prefunding obligations, creating an ongoing, substantial drain on its already limited resources.[18]  Indeed, USPS has for a number of years been deferring necessary capital investments in order to preserve liquidity to meet these obligations, resulting in a decline in the quality of service, including rates of on-time mail delivery.[19]  In early April, the USPS Board of Governors requested $75 billion in emergency funds from Congress, to "ensure continued delivery of essential information, packages, and services," consisting of a $25 billion emergency appropriation to offset coronavirus-related losses, a $25 billion grant to fund "shovel-

---

[16]   In February 2020, the House of Representatives passed a bill, by a vote of 309-106, to end this prefunding mandate.  Identical legislation was recently introduced in the Senate by Republican Senator Steve Daines of Montana and Democrat Brian Schatz of Hawaii.

[17] Pandemic Response Accountability Committee, *Top Challenges Facing Federal Agencies: COVID-19 Emergency Relief and Response Efforts* (June 2020), *available at* *https://www.oversight.gov/sites/default/files/oig-reports/Top Challenges Facing Federal Agencies - COVID-19 Emergency Relief and Response Efforts_1.pdf*

[18] Jacob Bogage, *Under Siege from Trump, U.S. Postal Service Finds Surprising Financial Upside in Pandemic*, Wash. Post (June 25, 2020), https://www.washingtonpost.com/business/2020/06/25/postal-service-packages-coronavirus/

[19] *Id.*; Pandemic Response Accountability Committee, *Top Challenges Facing Federal Agencies: COVID-19 Emergency Relief and Response Efforts* (June 2020), *available at* *https://www.oversight.gov/sites/default/files/oig-reports/Top Challenges Facing Federal Agencies - COVID-19 Emergency Relief and Response Efforts_1.pdf*; https://about.usps.com/news/testimony/2019/pr19_pmg0430.htm (testimony of Postmaster General Megan J. Brennan, describing deferral of capital projects)

ready" projects to modernize the Postal Service, and access to $25 billion in unrestricted borrowing authority from the Treasury Department.[20]

26.     COVID-19 has also placed significant additional strain on USPS personnel and the agency's ability to perform its job.  The majority of USPS's 630,000 employees are essential workers who are unable to work remotely.  As of mid-June – well before the current wave of infections in the southern and western United States – more than 3,000 postal workers had tested positive for COVID-19, 67 had died of the virus, and 5,800 were under quarantine.[21]

### III.     Voting By Mail Is Especially at Risk

27.     USPS's difficulties handling mail voting predate the pandemic.  A report by the USPS OIG following the November 2018 mid-term elections found that 95.6% of election mail nationally was delivered on time, just short of the agency's goal of 96%.  But even that figure represents a significant number of late or undelivered ballots.  And the seven worst performing USPS facilities, including facilities in Florida, Ohio and Wisconsin, delivered on average only 84.2% of election mail on time.[22]

---

[20] *Postmaster General Warns Committee of Dire Consequences Without Congressional Action* (Apr. 9, 2020), https://oversight.house.gov/news/press-releases/postmaster-general-warns-committee-of-dire-consequences-without-congressional

[21] Ryan McCarthy & Maryam Jameel, *The Postal Service is Steadily Getting Worse – Can It Handle a National Mail-In Election?*, ProPublica (June 15, 2020), https://www.propublica.org/article/the-postal-service-is-steadily-getting-worse-can-it-handle-a-national-mail-in-election; Pandemic Response Accountability Committee, *Top Challenges Facing Federal Agencies: COVID-19 Emergency Relief and Response Efforts* (June 2020), *available at https://www.oversight.gov/sites/default/files/oig-reports/Top Challenges Facing Federal Agencies - COVID-19 Emergency Relief and Response Efforts_1.pdf*

[22] Office of Inspector General, USPS, *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections* (Nov. 4, 2019), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2019/19XG010NO000.pdf

28.    In 2019, the agency's performance deteriorated significantly.  USPS made on-time delivery of only 80.88% of its three-to-five day single-piece first class mail, the method by which many absentee ballots are sent.  Thus, even if USPS were to maintain its pre-pandemic pace, in close races that might be decided by only a few percentage points – or, as in the 2016 presidential election, in some states by as slim a margin as less than one percent – there is a real risk that the result could be determined by lost or delayed ballots.[23]

29.    The experience of voting by mail in recent primaries gives every reason to fear that outcome.  Across the country, voters and state election officials have reported mail ballots that were badly delayed or never delivered.  As a result, thousands of American voters were disenfranchised.

30.    For example, after Ohio's April 28 primary, it was discovered that hundreds of ballots had not been returned by USPS to Ohio election officials in time to be counted.  This came after election mail delivery had been so slow that the Ohio secretary of state publicly warned voters to mail their ballots early and encouraged USPS to hire more staff to handle the volume.  Ballots were similarly delayed or not delivered in New Jersey and Maryland, and so many voters in Washington, D.C. complained of undelivered ballots that election officials allowed them to submit ballots by email.  In Pennsylvania, the governor extended the deadline for receipt of absentee ballots in certain counties after numerous complaints of delays.[24]

---

[23] Ryan McCarthy & Maryam Jameel, *The Postal Service is Steadily Getting Worse – Can It Handle a National Mail-In Election?*, ProPublica (June 15, 2020), https://www.propublica.org/article/the-postal-service-is-steadily-getting-worse-can-it-handle-a-national-mail-in-election

[24] *Id.*

31.     Wisconsin's experience is particularly instructive.  Following the state's April 7, 2020 election – in which thousands of ballots were either delayed or never delivered – a bipartisan group of Wisconsin federal elected officials (Republican Senator Ron Johnson, Republican Representative Bryan Steil, Democratic Senator Tammy Baldwin and Democratic Representative Gwen Moore) asked the USPS Office of the Inspector General ("OIG") to conduct an investigation.

32.     After sharing its findings and receiving input from USPS management, OIG issued the report of its investigation on July 7, 2020.[25]

33.     OIG identified numerous errors by USPS, including tubs of ballots that were never delivered and ballots that had not been postmarked.  OIG also identified approximately 150 ballots that a mail carrier erroneously and repeatedly returned to a village election office without delivering them to voters.  To help prevent these errors in the future, OIG recommended that the USPS Acting Vice President, Great Lakes Area, (i) "develop and implement a plan to communicate with the Wisconsin Election Commission and associated election offices" regarding vote-by-mail deadlines; (ii) encourage Wisconsin election districts to use Intelligent Mail Barcodes (IMbs); and (iii) teach election officials how to design ballots that can be easily read and delivered by USPS mail carriers.  OIG also reminded USPS of the importance of using a political mail log to track all election mail, a critical step that had been overlooked in some instances, making it difficult for USPS personnel to track and determine how certain ballots had gone undelivered.

---

[25] Office of Inspector General, USPS, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* (July 7, 2020), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf

34.     Significantly, OIG also found that many of the errors identified in Wisconsin represented "potential nationwide issues" USPS could expect to encounter in administering future elections, including the failure to use IMbs and improper postmarking.

35.     There is every reason to believe the challenges facing USPS will grow as the November general election nears and USPS is tasked with processing all of the nation's mail ballots simultaneously.

36.     According to an analysis published by the Washington Post on August 8, at least 76% of American voters – nearly 180 million people – will be eligible to vote by mail in November.  Of those, 21 million live in states that have agreed to accept fear of the coronavirus as a valid basis for voting by mail, or have changed their policies to become "no excuse" states. And an additional 57 million voters reside in the 34 states (and the District of Columbia) that already permitted anyone to vote by absentee mail ballot, and in some cases are now making the process easier, by sending either ballot applications or ballots to all voters.[26]  For example:

- In California, Governor Gavin Newsom signed a law in June directing election officials to mail a ballot to each of California's nearly 21 million registered voters for the November election.[27]

- Ohio, similarly, has stated that it intends to send absentee ballot applications to all registered voters in the state.[28]

---

[26] Kate Rabinowitz & Brittany Renee Mayes, *At Least 76% of American Voters Can Cast Ballots by Mail in the Fall*, Wash. Post (Aug. 7, 2020), https://www.washingtonpost.com/graphics/2020/politics/vote-by-mail-states/

[27] California Assembly Bill No. 180 (June 18, 2020), https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB860; The Associated Press, *100,000 Mail-In Votes Went Uncounted in California's Primary*, N.Y. Times (July 13, 2020), https://www.nytimes.com/aponline/2020/07/13/us/ap-us-election-2020-california-uncounted-votes-2nd-ld-writethru.html?searchResultPosition=3; https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB860

[28] Sharon Bernstein, *Ohio Set to Send All Voters Absentee Ballot Applications before Presidential Election*, Reuters (June 15, 2020), https://www.reuters.com/article/us-usa-election-

- In Alaska, voters 65 and over will automatically be mailed an absentee application for the general election.[29]

- South Dakota and Idaho automatically mailed absentee applications to voters ahead of their primaries, allowing voters to also request a ballot for the general election.[30]

**IV.    A Successful Vote-By-Mail Process Requires Collaboration Between USPS and State Election Officials**

37.     In the same report on Wisconsin's election, OIG emphasized the importance of a robust outreach program to state and local election officials, noting that USPS personnel in each area and district are assigned the role of Political and Election Mail coordinator.

38.     Currently, many states have absentee ballot rules that do not take into account the limitations of USPS delivery service – even when that service is operating well.  OIG identified 11 states that allow voters to request an absentee ballot three days or fewer before the election. According to OIG, this time period "d[id] not provide sufficient time for election offices to generate a ballot and for the Postal Service to process and deliver the ballots to voters before the election."  For an additional 13 states with deadlines ranging from four to six days before the

---

ohio/ohio-set-to-send-all-voters-absentee-ballot-applications-before-presidential-election-idUSKBN23N00Q

[29] COVID-19 Information for Voters and Election Officials, Alaska Division of Elections, https://www.elections.alaska.gov/Core/COVID19faq.php

[30] Press Release, Office of the Secretary of State, South Dakota (April 10, 2020), https://sdsos.gov/elections-voting/assets/AbsenteeBallotRequestApplicationsPressRelease.pdf; Kate Rabinowitz & Brittany Renee Mayes, *At Least 76% of American Voters Can Cast Ballots by Mail in the Fall*, Wash. Post (Aug. 7, 2020), https://www.washingtonpost.com/graphics/2020/politics/vote-by-mail-states/

election, OIG found that even that extended time period "put ballots at high risk of not being delivered to voters before an election."[31]

39.     OIG's report echoed a May 29, 2020 letter from USPS General Counsel and Executive Vice President Thomas J. Marshall to state election officials.  Mr. Marshall recommended that states require that voters "mail their return ballots at least 1 week prior to the due date established by state law," and noted it was "critical that the Postal Service's delivery standards be kept in mind when informing voters how to successfully participate in an election using the mail."[32]

40.     Many states have had to build or substantially revamp large vote-by-mail operations on short notice in order to handle the huge increase in mail-in ballots.  In order to do so effectively, officials in those states need to learn and be able to conform to USPS protocols for processing election mail.  To that end, the agency has reportedly been in close contact with state and local officials in order to prepare them for November.  In a statement to the Washington Post in mid-July, USPS said:

> As we anticipate that many voters may choose to use the mail to participate in the upcoming elections due to the impacts of the COVID-19 pandemic, we are conducting . . . outreach with state, county and local election officials and Secretaries of State so that they can make informed decisions and educate the public about what they can expect when using the mail to vote.[33]

---

[31] Office of Inspector General, USPS, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* (July 7, 2020), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf

[32] Letter from Thomas J. Marshall, General Counsel/Executive Vice President, USPS, to State Election Officials (May 29, 2020), *available at* https://about.usps.com/newsroom/national-releases/2020/2020-05-29-marshall-to-election-officials-re-election-mail.pdf

[33] Michelle Ye Hee Lee, *Scattered Problems with Mail-In Ballots This Year Signal Potential November Challenges for Postal Service*, Wash. Post (July 15, 2020), https://www.washingtonpost.com/politics/scattered-problems-with-mail-in-ballots-this-year-

41.     Similarly, the USPS OIG recommended, in its report on the Wisconsin election, that USPS personnel engage in outreach with state election officials to confirm they understand proper mailpiece addressing and design, and coordinate with election offices to ensure they are aware of proper ballot mailing procedures.  USPS management agreed with these recommendations.  In its response to OIG's statement that the agency should "develop and implement an action plan with timelines" to address the national issues identified by OIG, USPS management assured OIG that USPS "has been and will continue to conduct outreach with state and local election officials," and that "[t]he plan includes regularly scheduled meetings with Secretaries of State and various state and local election officials as well as bi-weekly meetings with stakeholders on topics such as mail standards versus state's election timelines, IMb, and informed delivery."[34]

42.     Outreach and coordination between USPS and state election offices is critical, given the likelihood that the COVID-19 pandemic, which has led so many citizens to elect to vote by mail, will not have abated – and may well have worsened – in the coming months. Voting in person is likely to remain problematic and unattractive to millions of voters who will expect to be able to exercise the franchise – safely and effectively – by mail.

**V.     USPS Has Been Weakened By Management Changes and Other Actions Initiated by President Trump**

43.     Beginning well before the pandemic, President Trump has repeatedly attacked the Postal Service.  Initially, the president focused on the rates charged by USPS to deliver mail for

---

signal-potential-november-challenges-for-postal-service/2020/07/15/0dfb8b42-c216-11ea-b178-bb7b05b94af1_story.html

[34] Office of Inspector General, USPS, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* (July 7, 2020), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf

large shippers, especially Amazon, despite evidence that its contract with Amazon is in fact profitable for the agency.  On April 24, after months of criticism, the president called USPS "a joke" and threatened to block any emergency aid to the agency unless it quadrupled prices for package delivery.[35]

44.     In recent months, President Trump has expanded his attacks on USPS to specifically target voting by mail.  In the face of the data demonstrating that all forms of voter fraud, including fraud related to voting by mail, are extremely rare, the president has continuously challenged the legitimacy of absentee voting, insisting, without evidence, that fraud is common.  According to calculations by the New York Times, President Trump made five dozen false claims about mail balloting from April to June 24.  Proceeding on the basis of these false assertions, the president has insisted that the 2020 election would be, "in [his] opinion, the most corrupt election in the history of our country."[36]

45.     During the same period, President Trump has frustrated Congressional efforts to shore up postal services before the 2020 election.  The loan facility authorized months ago in the CARES Act, but not approved until late July, contains conditions agreed upon by Secretary Mnuchin and recently appointed Postmaster General Louis DeJoy.  It requires USPS to provide proprietary and previously confidential financial information to Treasury, including its

---

[35] Lisa Rein & Jacob Bogage, *Trump Says He Will Block Coronavirus Aid for U.S. Postal Service if It Doesn't Hike Prices Immediately*, Wash. Post (Apr. 24, 2020), https://www.washingtonpost.com/us-policy/2020/04/24/trump-postal-service-loan-treasury/; Myah Ward, *Trump: Postal Service is a 'Joke' That Must Raise Prices to Get Bailout Money*, Politico (Apr. 24, 2020), https://www.politico.com/news/2020/04/24/trump-us-postal-service-coronavirus-bailout-206851

[36] Maggie Haberman, Nick Corasaniti & Linda Qiu, *Trump's False Attacks on Voting by Mail Stir Broad Concern*, N.Y. Times (June 24, 2020), https://www.nytimes.com/2020/06/24/us/politics/trump-vote-by-mail.html

Negotiated Service Agreements with Amazon and others.  The maximum borrowing is $10 billion, well short of USPS's original $75 billion request; funds will be made available only for operating expenses, not capital improvements, and only if, "due to the COVID-19 emergency . . . USPS will not be able to fund operating expenses without borrowing money;" the agency must spend any money it borrows within thirty days; and it cannot access any of the funds if it has a cash balance of more than $8 billion.[37]

46.     President Trump has also taken steps to effect change at USPS from within. Following the retirement of Megan J. Brennan as Postmaster General, the president in May installed Mr. DeJoy in that position, in the midst of the dispute between Secretary Mnuchin and USPS.  Mr. DeJoy is the first Postmaster General in nearly two decades without prior experience at USPS.[38]  He is a major Republican donor who, as of his appointment, had donated $360,000 in 2020 alone to Trump Victory, a super PAC supporting the President's re-election campaign.  Mr. DeJoy had no prior experience at USPS.[39]  According to financial disclosure forms submitted by his wife in connection with her nomination to be U.S. Ambassador to Canada, Mr. DeJoy and his wife together have between 30.1 and 75.3 million in assets in USPS competitors or contractors.[40]

---

[37] Letter from Steven T. Mnuchin, U.S. Secretary of the Treasury, to Louis DeJoy, U.S. Postmaster General (July 28, 2020), *available at* https://federalnewsnetwork.com/wp-content/uploads/2020/07/2020-07-29-UST-Production-summary-of-terms.pdf

[38] Matthew Daly, The Associated Press, *Congress urges Postal Service to undo changes slowing mail* (Aug. 6, 2020), https://apnews.com/a291ebc31c5638aa5a9adafc2ff2b430.

[39] Alan Rappeport, *Postal Service Pick with Ties to Trump Raises Concerns Ahead of 2020 Election*, N.Y. Times (May 7, 2020), https://www.nytimes.com/2020/05/07/us/politics/postmaster-general-louis-dejoy.html?searchResultPosition=10

[40] Jacob Bogage, *Trump Ally Takes Over Crisis-Ridden Postal Service as Top Senate Democrat Demands Inquiry on Hiring*, Wash. Post (June 15, 2020), https://www.washingtonpost.com/business/2020/06/15/trump-postal-service-dejoy/

47.     Many in the postal community have expressed concern regarding Mr. DeJoy's appointment.  In an interview with the Washington Post, Mark Dimondstein, president of the American Postal Workers Union, which represents approximately 200,000 USPS employees, noted Mr. DeJoy's status as "a megadonor of President Trump," adding that, "on the surface, there's a real worry about cronyism and patronage and whether someone is being put into place to carry out an agenda.  We hope that's not the case."[41]

48.     Postmaster General DeJoy took office on June 15, coinciding with the departure of at least two key USPS administrators.  Ronald Stroman, the Deputy Postmaster General and the lead coordinator on election outreach related to voting by mail, resigned from USPS effective June 1.  David Williams, the Democratic Vice Chairman of the USPS board of governors and a former USPS Inspector General, resigned in May, reportedly due to disagreement with the potential oversight sought by the Treasury Department and what he considered to be unprecedented politicization of the agency.[42]

49.     Shortly after taking office, Mr. DeJoy began to implement major structural changes at USPS, warning agency employees that USPS would not survive if it did not act quickly to cut costs.  The measures put forward by Mr. DeJoy reportedly include prohibiting

---

[41] Michelle Ye Hee Lee, *Scattered Problems with Mail-In Ballots This Year Signal Potential November Challenges for Postal Service*, Wash. Post (July 15, 2020), https://www.washingtonpost.com/politics/scattered-problems-with-mail-in-ballots-this-year-signal-potential-november-challenges-for-postal-service/2020/07/15/0dfb8b42-c216-11ea-b178-bb7b05b94af1_story.html

[42] Ryan McCarthy & Maryam Jameel, *The Postal Service is Steadily Getting Worse – Can It Handle a National Mail-In Election?*, ProPublica (June 15, 2020), https://www.propublica.org/article/the-postal-service-is-steadily-getting-worse-can-it-handle-a-national-mail-in-election; Alan Rappeport, *Postal Service Pick with Ties to Trump Raises Concerns Ahead of 2020 Election*, N.Y. Times (May 7, 2020), https://www.nytimes.com/2020/05/07/us/politics/postmaster-general-louis-dejoy.html?searchResultPosition=10

overtime and curtailing the use of other techniques that local postmasters use to handle staffing

shortages, and directing postal workers to leave behind mail for the following day if the plant is

running behind in processing.  Typically, postal workers are trained not to leave letters behind

and, if necessary, to make multiple trips in a day to ensure all mail is delivered.[43]  After initial

denials from USPS General Counsel Marshall that these changes "originated from Postal Service

Headquarters," Postmaster General DeJoy acknowledged having instituted them.[44]

    50.    Members of Congress have expressed concern that these changes could lead to

dangerous delays in election mail, raising the question why they would be implemented, with

little notice or transition, in an election year in the middle of a pandemic, with unprecedented

voting by mail about to occur.  On July 20, Representative Carolyn Maloney, Chair of the House

Committee on Oversight and Reform, along with Representatives Gerald Connolly (Chair of the

Subcommittee on Government Operations of the Committee on Oversight and Reform, which

has legislative jurisdiction over the Postal Service), Stephen Lynch, and Brenda Lawrence, wrote

to Postmaster General DeJoy seeking further information on the new policies reported in the

Washington Post:

> While these changes in a normal year would be drastic, in a presidential election
> year when many states are relying heavily on absentee mail-in ballots, increases
> in mail delivery timing would impair the ability of ballots to be received and

---

[43] Jacob Bogage, *Postal Service Memos Detail 'Difficult' Changes, Including Slower Mail Delivery*, Wash. Post (July 14, 2020), https://www.washingtonpost.com/business/2020/07/14/postal-service-trump-dejoy-delay-mail/

[44] Jacob Bogage, *Top Democrats Say Postmaster General Acknowledged New Policies That Workers Say Are Delaying Mail*, Wash. Post (Aug. 6, 2020), https://www.washingtonpost.com/politics/2020/08/06/top-democrats-say-postmaster-general-acknowledged-new-policies-that-workers-say-are-delaying-mail/?hpid=hp_politics1-8-12_postmaster-734pm%3Ahomepage%2Fstory-ans

counted in a timely manner – an unacceptable outcome for a free and fair election.[45]

51.     USPS General Counsel Marshall responded on July 22, stating that the documents describing these changes were not "official USPS memoranda," and that they had been distributed in a limited area by a "mid-level manager."  Representative Maloney (along with a number of her House colleagues) wrote again to Mr. DeJoy on August 6, noting that USPS had failed to explain how the directives had come about, or how Postal Service officials came to believe they should be implemented.[46]  As noted, Postmaster General DeJoy later acknowledged having instituted the directives.[47]

52.     On July 16, two days after the new policies were reported in the Washington Post article, five senators wrote to the Postmaster General seeking information on the Postal Service's preparedness for the expected influx of election mail caused by the pandemic.[48]  The senators requested that USPS provide regular briefings to Congress on its election mail plan, and

---

[45] Reuters, *House Democrats Press U.S. Postal Service on Plans to Delay Mail*, N.Y. Times (July 20, 2020), https://www.nytimes.com/reuters/2020/07/20/us/20reuters-usa-postoffice.html?searchResultPosition=1

[46] Letter from the Committee on Oversight and Reform to Louis DeJoy, U.S. Postmaster General (Aug. 6, 2020), *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-08-06.CBM%20et%20al.%20to%20DeJoy-%20PMG%20re%20Postal%20Standards%20Changes.pdf

[47] Jacob Bogage, *Top Democrats Say Postmaster General Acknowledged New Policies That Workers Say Are Delaying Mail*, Wash. Post (Aug. 6, 2020), https://www.washingtonpost.com/politics/2020/08/06/top-democrats-say-postmaster-general-acknowledged-new-policies-that-workers-say-are-delaying-mail/?hpid=hp_politics1-8-12_postmaster-734pm%3Ahomepage%2Fstory-ans

[48] Letter from Senators Charles E. Schumer, Amy Klobuchar, Thomas R. Carper, Brian Schatz and Cory A. Booker to Louis DeJoy, U.S. Postmaster General (July 16, 2020), *available at* https://www.democrats.senate.gov/imo/media/doc/Final%20-%20letter%20to%20PMG%20DeJoy%2013%20(002).pdf

specifically requested that USPS produce to Congress many of the same documents that are requested by Plaintiff under FOIA.  Despite the senators' request that these documents be provided by July 29, USPS has largely still failed to act.[49]

53.     Similarly, Senator Kamala Harris wrote to Postmaster General DeJoy on July 27, "seeking information on how operational changes reportedly being imposed by you will affect the ability of Americans to rely on the Postal Service to vote by mail in the upcoming elections."[50]  Senator Harris, too, has not received any response.  An August 7 letter sent to the USPS OIG by Representative Maloney, Senator Elizabeth Warren and others stated that the responses to congressional requests have been "seriously lacking" and requested that OIG open an investigation.[51]

54.     In fact, according to postal workers and union officials, these new policies have already resulted in at least a two-day delivery delay in various parts of the country, even for Express Mail.  More mail is being sorted manually, adding to the delays, as have scheduling and route changes.[52]  USPS management officials have acknowledged these delivery delays, but

---

[49] Letter from Elizabeth Warren, Carolyn Maloney, et al. to Tammy Whitcomb, USPS Inspector General (Aug. 7, 2020), *available at* https://www.warren.senate.gov/imo/media/doc/2020.08.07%20Letter%20to%20Postal%20Service%20IG.pdf

[50] Letter from Kamala Harris to Louis DeJoy, U.S. Postmaster General (July 27, 2020), *available at* https://www.harris.senate.gov/imo/media/doc/200727-Sen.HarrisLetterToUSPSPMGDeJoy-OperationalChangesAndVoteByMail.pdf

[51] Letter from Elizabeth Warren, Carolyn Maloney, et al. to Tammy Whitcomb, USPS Inspector General (Aug. 7, 2020), *available at* https://www.warren.senate.gov/imo/media/doc/2020.08.07%20Letter%20to%20Postal%20Service%20IG.pdf

[52] Michelle Ye Hee Lee & Jacob Bogage, *Postal Service Backlog Sparks Worries That Ballot Delivery Could Be Delayed in November*, Wash. Post (July 30, 2020), https://www.washingtonpost.com/politics/postal-service-backlog-sparks-worries-that-ballot-

claim the recent changes are meant to "ensure the agency will be financially stable" and that any

"service impacts . . . will be monitored and temporary as the root causes of any issues will be

addressed as necessary and corrected as appropriate."[53]

**VI.    There Is an Urgent Need for the Requested Records to Be Produced on an Expedited Basis and Made Widely Available to the Public**

55.    Amidst widespread reporting suggesting USPS is not well prepared for the 2020

election, the agency has failed to share its plans fully with Congress or the public.  USPS has

published some of its outreach material, including its Official Election Mail Kit (Kit 600) and

USPS General Counsel Marshall's May 29 follow-up letter.[54]  But as the Congressional requests

for information reflect, there remains a considerable amount of relevant material that USPS has

not shared with the public.

56.    At the same time, some in the Congress have proposed significant changes in the

voting by mail process.  Senators Amy Klobuchar and Ron Wyden, joined by 24 of their

colleagues, introduced the Natural Disaster and Emergency Ballot Act of 2020, which, among

other things, would ensure that all states provide for no-excuse absentee voting, begin counting

votes cast during early voting or by mail or online, in fashion designed to avoid delays on

---

delivery-could-be-delayed-in-november/2020/07/30/cb19f1f4-d1d0-11ea-8d32-1ebf4e9d8e0d_story.html

[53] Jacob Bogage, *Top Democrats Say Postmaster General Acknowledged New Policies That Workers Say Are Delaying Mail*, Wash. Post (Aug. 6, 2020), https://www.washingtonpost.com/politics/2020/08/06/top-democrats-say-postmaster-general-acknowledged-new-policies-that-workers-say-are-delaying-mail/?hpid=hp_politics1-8-12_postmaster-734pm%3Ahomepage%2Fstory-ans

[54] USPS, *Your 2020 Official Election Mail Kit 600* (Jan. 2020), *available at* https://about.usps.com/kits/kit600.pdf; Letter from Thomas J. Marshall, General Counsel/Executive Vice President, USPS, to State Election Officials (May 29, 2020), *available at* https://about.usps.com/newsroom/national-releases/2020/2020-05-29-marshall-to-election-officials-re-election-mail.pdf

Election Day; and direct all states that do not already use ballot tracking systems to use envelopes with an IMb (intelligent mail) barcode to allow voters to track their ballot for the 2020 and subsequent elections.[55]

57.     In order to facilitate public input and debate in connection with ensuring a fair election in November, it is critical that the materials requested by Plaintiff be fully shared with the public as promptly as possible.  This is particularly the case given the Trump Administration's well-documented hostility toward USPS.  As noted, Postmaster General DeJoy appears to be cutting USPS programs and reducing service exactly when USPS should be ramping up to handle the historic levels of mail voting that experts predict for November.

58.     Whatever may be the appropriate policy responses to the substantial increase in voting by mail this November, it is clear that USPS's preparations for and ability to deal with that surge are critical matters for public debate and Congressional consideration.  Public understanding of the information and documents sought by Plaintiff's FOIA requests is an indispensable part of that debate.  And, given the imminence of early voting and the fast approaching November 3 election, Plaintiff's requests should be responded to on an expedited basis, "jumping the queue" over other, non-urgent FOIA requests.

---

[55] Natural Disaster and Emergency Ballot Act (NDEBA) of 2020 One Pager, *available at* https://www.wyden.senate.gov/imo/media/doc/Natural%20Disaster%20and%20Emergency%20 Ballot%20Act%20of%202020%20One%20Pager.pdf

## VII.    Plaintiff's FOIA Requests

59.    On June 22 and June 23, Plaintiff sent two FOIA requests to USPS seeking

documents related to the agency's preparations for the anticipated surge in voting by mail in the

2020 general election.[56]  In the June 22 request, Plaintiff sought a single, specific document:

> The outreach plan that was current as of June 15, 2020, governing contacts with state
> election officials and political parties regarding the anticipated increase in the volume of
> election mail in the 2020 general election.

60.    In its June 23 request, Plaintiff sought additional documents related to USPS's

vote-by-mail preparations.  The request covered a short time frame, the period from March 1,

2020 through the date on which USPS conducted searches for responsive documents.  It was

narrowly tailored to request documents bearing on clearly defined – and clearly relevant –

subject matters:

- outreach and contacts between USPS and state election officials and political parties
  relating to handling the anticipated increased volume of election mail, and an
  organizational chart listing the USPS personnel involved in that outreach (nos. 1, 2 and
  3);

- records of communications with state and local election officials (no. 4);

- records with vendors relating to election-related products and services (no. 5);

- records of employee training on handling of election mail (no. 6);

- policies and procedures concerning delivery of election mail, including delivery of
  election mail without postage and delivery of election mail in certain specific states (nos.
  7 and 8);

- records relating to the performance of delivery of election mail in the primaries (no. 9);
  and

---

[56] Plaintiff's June 22, 2020 and June 23, 2020 requests are attached to this Complaint as Exhibits
A and B, respectively.

- communications between either the Postmaster General or the Board of Governors and any of Treasury, DOJ or OMB (no. 10).

61.    Plaintiff requested expedited processing of its requests, pursuant to 5 U.S.C. § 552(a)(6)(E) and 39 C.F.R. § 265.5(c)(1)(ii), which provide for expedited processing where there is "[a]n urgency to inform the public about an actual or alleged Federal Government activity," and the requests were "made by a person who is primarily engaged in disseminating information." 39 C.F.R. § 265.5(c)(1)(ii).  In support, Plaintiff described the numerous reasons for "public concern" regarding USPS's readiness to carry out its "crucial responsibility" to prepare for the anticipated surge in voting by mail in the November general election.  Plaintiff additionally demonstrated (as this Court has previously held, *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 299 (D.D.C. 2017)), that it is an entity "primarily engaged in disseminating information," and expressed its intention to share all materials obtained through these requests with the public.

62.    Finally, Plaintiff sought a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) on the ground that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

### VIII.   USPS Responses and Further Statement by Plaintiff in Support of Its Requests

63.    USPS Senior Government Information Specialist (A) Brenda L. Rahe responded to Plaintiff's requests on June 29, 2020.[57]  Ms. Rahe stated that she had forwarded Plaintiff's

---

[57] USPS's June 29, 2020 responses to Protect Democracy's June 22, 2020 and June 23, 2020 requests are attached to this Complaint as Exhibits C and D, respectively.

requests to the agency officials having jurisdiction over the subject matter of Plaintiff's requests

for action and direct response to Plaintiff.[58]

64.     Ms. Rahe further stated that USPS was denying Plaintiff's request for expedited

treatment, noting that

> FOIA requests shall be processed on an expedited basis whenever it is
> determined that they involve: "(i) circumstances in which the lack of
> expedited processing could reasonably be expected to pose an imminent
> threat to the life or physical safety of an individual; (ii) an urgency to
> inform the public about an actual or alleged Federal Government activity,
> if made by a person who is primarily engaged in disseminating
> information." 39 C.F.R. § 265.5(c)(1).

65.     Purportedly applying this standard, Ms. Rahe contended that Plaintiff's request

did not qualify for expedited treatment, citing and quoting the applicable regulation, without

more:

> Here, you failed to explain how the lack of expedited processing could
> reasonably be expected to pose an imminent threat to the life or physical
> safety of an individual.  The records you requested seem to have no
> bearing on the life or physical safety of an individual.  You also failed to
> "establish a particular urgency to inform the public about the government
> activity involved in the request – one that extends beyond the public's
> right to know about government activity generally."  39 C.F.R. §
> 265.5(c)(2).  Thus, we are denying your request for expedited processing.

66.     Far from failing to establish an urgency to inform the public, Plaintiff in its letter

requests made out a detailed factual predicate for its claim of urgent need – starting with the

anticipated upsurge in voting by mail in an election just months away, along with the problems

that occurred in recently conducted primary elections and reasons for concern about USPS's

---

[58] Because she found that Plaintiff's June 22 letter request for the USPS election outreach plan
was covered by Item No. 1 in Plaintiff's June 23 letter, USPS closed Plaintiff's June 22 request
as duplicative.

readiness for November.  Citing and quoting the relevant standard, prefaced by the words, "You also failed to establish," does not begin to rebut Plaintiff's showing.

67.     Finally, Ms. Rahe stated that USPS was granting Plaintiff's request for a fee waiver.

68.     By letter dated July 10, 2020, Plaintiff USPS Sales Support Specialist Merl L. Stanley, responding to items 1 through 9 in Plaintiff's June 23 request, asserted that they were overbroad and unreasonably burdensome, and therefore "could not be processed as formulated:"

> While we wish to fully cooperate in processing your request, your requests are extremely broad as they seek, "Any and all records reflecting, discussing or otherwise relating to . . ."  The type of search necessary to process this request would involve an extensive electronic and manual search of nearly the entire Postal Service, and would likely take thousands of hours to review all the potentially responsive records on a line by line basis.[59]

69.     Mr. Stanley further stated that USPS would "take no further action" on Plaintiff's requests until Plaintiff provided "more definitive information concerning the records [it sought]."

70.     Plaintiff responded by email on July 15, 2020.[60]  Plaintiff disputed USPS's assertion that Plaintiff's request was overbroad, noting that the request was limited as to both timeframe and subject matter.  Specifically, Plaintiff's request sought only documents from March 1, 2020 through the date that searches are conducted, and (except for item no. 10, which the agency has since responded to, *see* ¶ 73 *infra*) was limited to materials concerning USPS's preparations for, conduct of, and outreach to states regarding expanded voting by mail in the November general election.  Plaintiff further pointed out that, under FOIA, it is generally the

---

[59] Defendant's July 10, 2020 letter, further responding and objecting to Plaintiff's requests, is attached to this Complaint as Exhibit E.

[60] Protect Democracy's July 15, 2020 email, responding to Defendant's objections, is attached to this Complaint as Exhibit F.

agency's obligation, and not the requestor's, to identify likely custodians of responsive

documents and to conduct searches for those materials.

71.     Nevertheless, as a show of good faith, Plaintiff offered to work with USPS to

narrow the requests, writing:

> It is nevertheless in all our interests to minimize the burden that
> this request would impose on the Postal Service.  Thus, if you have
> any specific information on which aspects of the request impose
> disproportionate burdens, or any suggestions on how to streamline
> the request, [Protect Democracy] would be happy to hear from you
> and work with you to narrow the request.

Plaintiff also volunteered to further narrow its requests to records located in the offices of a

limited number of senior USPS officials:  the Postmaster General, the Deputy Postmaster

General, the Chief Operating Officer, the Area Operations Vice Presidents, and the General

Counsel.

72.     Defendant has not responded to Plaintiff's July 15 email.

73.     As to Item 10 of the 1386 Request, Plaintiff received a letter from USPS Senior

Government Relations Liaison Jennifer Selde on July 21, 2020.[61]  Ms. Selde stated that USPS

had conducted a search for documents responsive to Plaintiff's request, and "uncovered five (5)

pages of responsive documents, including three (3) emails and a two (2) page summary of a call

between Postal Service Board of Governors Chairman Robert M. Duncan, Postal Service

Governor Roman Martinez, and Secretary of Treasury Steven Mnuchin."

---

[61] USPS's July 21, 2020 letter is attached to this Complaint as Exhibit G.  Item 10 asked for
"[a]ny and all records reflecting, discussing, or otherwise relating to communications between
the Postmaster General or members of the Board of Governors and any employee of the
Department of the Treasury, the Department of Justice, and the Office of Management and
Budget."

74.     Ms. Selde stated that USPS had determined to redact personal identifying information from the responsive documents pursuant to FOIA Exemption 6, 5 U.S.C. § 552(b)(6).  She further stated the two-page call summary would be withheld in full pursuant to the deliberative process privilege, FOIA Exemption 5, 5 U.S.C. § 552(b)(5).  Ms. Selde asserted that the call summary was properly withheld because it "consist[ed] of deliberations between agency officials all of which are predecisional and deliberative in nature."

## COUNT I

### (Violation of FOIA, 5 U.S.C. § 552)

75.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

76.     Defendant is in violation of FOIA by failing, within the statutorily prescribed time limit, to conduct a search that is reasonably likely to lead to the discovery of records responsive to Plaintiff's requests; by failing to gather and review documents responsive to Plaintiff's requests, and to determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; by denying Plaintiff's request for expedited processing; and by unlawfully withholding records responsive to Plaintiff's request.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(1)  Order Defendant to grant Plaintiff's request for expedited treatment;

(2)  Order Defendant, by a date certain, to conduct a search that is reasonably likely to lead to the discovery of any and all records responsive to Plaintiff's request;

(3)  Order Defendant, by a date certain, to demonstrate that it has conducted an adequate search;

(4)  Order Defendant, within 24 hours of the issuance of this Court's Order, to produce to Plaintiff the USPS outreach plan requested in Plaintiff's June 22, 2020 request;

(4)  Order Defendant, within 21 days of the issuance of this Court's Order or by another date certain to be determined by the Court, to produce to Plaintiff any and all non-exempt records or portions of records responsive to item nos. 1-9 in its June 23, 2020 request, as well as a *Vaughn* index of any records or portions of records withheld due to a claim of exemption;

(5)  Enjoin Defendant from improperly withholding records responsive to Plaintiff's requests;

(6)  Grant Plaintiff an award of attorney fees and other reasonable litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E);

(7)  Grant Plaintiff such other relief as the Court deems appropriate.

Dated: August 12, 2020

Respectfully submitted,

/s/ Laurence M. Schwartztol

Laurence M. Schwartztol
THE PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
larry.schwarztol@protectdemocracy.org

David S. Frankel*
Harry P. Morgenthau*
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
dfrankel@kramerlevin.com
hmorgenthau@kramerlevin.com

*Attorneys for Plaintiff*

*Motion for Admission *Pro Hac Vice* forthcoming