UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE PROTECT DEMOCRACY PROJECT,
INC.,

                    Plaintiff,

     v.

UNITED STATES POSTAL SERVICE,

                    Defendant.

Civil Action No. 1:20-cv-02214

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR A PRELIMINARY INJUNCTION</u>**

Laurence M. Schwartztol
PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
larry.schwarztol@protectdemocracy.org

David S. Frankel*
Harry P. Morgenthau*
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
dfrankel@kramerlevin.com
hmorgenthau@kramerlevin.com

*Attorneys for Plaintiff*

*Motion for Admission *Pro Hac Vice* forthcoming

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................4

   I.  The COVID-19 Pandemic Has Fundamentally Altered the Way Millions of
      Americans Cast Their Ballots ..............................................................................4

   II.  USPS Has Been Weakened By Financial Pressure and COVID-19 ...................6

   III. Voting By Mail Is Especially at Risk ...............................................................8

   IV. A Successful Vote-By-Mail Process Requires Collaboration Between USPS and
      State Election Officials ......................................................................................12

   V.  USPS Has Been Weakened By Management Changes and Other Actions Initiated
      by President Trump ............................................................................................14

   VI. Protect Democracy's FOIA Requests and Defendant USPS's Responses ........21

ARGUMENT ....................................................................................................................23

   I.  Plaintiff is Likely to Succeed on the Merits ....................................................24

      A.  Defendant Has Failed to Meet the Statutory Deadline for Processing
         Plaintiff's FOIA Requests ..........................................................................24

      B.  Defendant Improperly Denied Plaintiff's Request for Expedited Treatment ............27

   II.  Plaintiff Will Be Irreparably Harmed Absent the Requested Relief .................29

   III. The Requested Relief Will Not Burden Others' Interests ................................31

   IV. The Public Interest Favors the Requested Relief ............................................32

CONCLUSION ..................................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Al-Fayed v. CIA*,
254 F.3d 300 (D.C. Cir. 2001)..............................................................................24

*Am. Immigration Council v. U.S. Dep't of Homeland Security*,
2020 WL 3639733 (D.D.C. July 6, 2020) ..............................................................29

\*   *Am. Oversight v. U.S. Dep't of State*,
414 F. Supp. 3d 182 (D.D.C. 2019)..........................................................26, 29, 32

*Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*,
711 F.3d 180 (D.C. Cir. 2013) ..............................................................................24

*Ctr. for Pub. Integrity v. U.S. Dep't of Def.*,
411 F. Supp. 3d 5 (D.D.C. 2019)....................................................................28, 32

*Elec. Frontier Found. v. Off. of Director of Nat'l Intelligence*,
2007 WL 4208311 (N.D. Cal. Nov. 27, 2007) .......................................................31

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*,
416 F. Supp. 2d 30 (D.D.C. 2006).........................................................................32

*Jacksonville Port Auth. v. Adams*,
556 F.2d 52 (D.C. Cir. 1977)..........................................................................31, 32

*League of Women Voters of N.C. v. North Carolina*,
769 F.3d 224 (4th Cir. 2014) ................................................................................31

*Nat'l Archives & Records Admin. v. Favish*,
541 U.S. 157 (2004) .............................................................................................29

*Payne Enters. v. United States*,
837 F.2d 486 (D.C. Cir. 1988)...............................................................................29

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.*,
263 F. Supp. 3d 293 (D.D.C. 2017)........................................................................27

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*,
489 U.S. 749 (1989) .............................................................................................32

*Washington Post v. Dep't of Homeland Security*,
459 F. Supp. 2d 61 (D.D.C. 2006).........................................................................30

*Wesberry v. Sanders*,
   376 U.S. 1 (1964) ...........................................................................................................31

**Federal Statutes**

5 U.S.C. § 552(a)(6)(A) .......................................................................................................26

5 U.S.C. § 552(a)(6)(B) .......................................................................................................24

5 U.S.C. § 552(a)(6)(E) ..................................................................................................22, 27

**Regulations**

39 C.F.R. § 265.3(c) ............................................................................................................26

39 C.F.R. § 265.5(c)(1) ...................................................................................................22, 27

39 C.F.R. § 265.5(c)(2) ........................................................................................................27

**Other Authorities**

Alan Rappeport, *Postal Service Pick with Ties to Trump Raises Concerns Ahead
   of 2020 Election*, N.Y. Times (May 7, 2020),
   https://www.nytimes.com/2020/05/07/us/politics/postmaster-general-louis-
   dejoy.html?searchResultPosition=10 .........................................................................17

Associated Press, *100,000 Mail-In Votes Went Uncounted in California's
   Primary*, N.Y. Times (July 13, 2020),
   https://www.nytimes.com/aponline/2020/07/13/us/ap-us-election-2020-
   california-uncounted-votes-2nd-ld-writethru.html?searchResultPosition=3;
   https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=20192020
   0AB860..............................................................................................................11

California Assembly Bill No. 180 (June 18, 2020),
   https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=20192020
   0AB860 .............................................................................................................11

Chris Dunker, *Mail-In Ballots Account for 80% of Votes Cast in Record-Breaking
   Primary*, Lincoln Jounral Star (June 18, 2020),
   https://journalstar.com/news/local/govt-and-politics/elections/mail-in-ballots-
   account-for-80-of-votes-cast-in-record-breaking-primary/article_079eda2a-
   7c35-54dc-92c4-cf8c0efc64ae.html ..........................................................................6

COVID-19 Information for Voters and Election Officials, Alaska Division of
   Elections, https://www.elections.alaska.gov/Core/COVID19faq.php ..................................11

Inspector General, USPS, *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections* (Nov. 4, 2019), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2019/19XG010NO000.pdf ............................................................................ 8

Inspector General, USPS, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* (July 7, 2020), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf .................................................................. 5, 10, 12, 14

Jacob Bogage, *Postal Service Memos Detail 'Difficult' Changes, Including Slower Mail Delivery*, Wash. Post (July 14, 2020), https://www.washingtonpost.com/business/2020/07/14/postal-service-trump-dejoy-delay-mail/ ............................................................................................ 18

Jacob Bogage, *Top Democrats Say Postmaster General Acknowledged New Policies That Workers Say Are Delaying Mail*, Wash. Post (Aug. 6, 2020), https://www.washingtonpost.com/politics/2020/08/06/top-democrats-say-postmaster-general-acknowledged-new-policies-that-workers-say-are-delaying-mail/?hpid=hp_politics1-8-12_postmaster-734pm%3Ahomepage%2Fstory-ans ...................................................... 18, 19, 20

Jacob Bogage, *Trump Ally Takes Over Crisis-Ridden Postal Service as Top Senate Democrat Demands Inquiry on Hiring*, Wash. Post (June 15, 2020), http://www.washingtonpost.com/business/2020/06/15/trump-postal-service-dejoy/ ......................................................................................................... 16

Jacob Bogage, *Under Siege from Trump, U.S. Postal Service Finds Surprising Financial Upside in Pandemic*, Wash. Post (June 25, 2020), https://www.washingtonpost.com/business/2020/06/25/postal-service-packages-coronavirus/ ................................................................................ 7

Kate Rabinowitz & Brittany Renee Mayes, *At Least 76% of American Voters Can Cast Ballots by Mail in the Fall*, Wash. Post (Aug. 7, 2020), https://www.washingtonpost.com/graphics/2020/politics/vote-by-mail-states/ ............... 11, 12

Lisa Rein & Jacob Bogage, *Trump Says He Will Block Coronavirus Aid for U.S. Postal Service if It Doesn't Hike Prices Immediately*, Wash. Post (Apr. 24, 2020), https://www.washingtonpost.com/us-policy/2020/04/24/trump-postal-service-loan-treasury/ ............................................................................. 15

Letter from the Committee on Oversight and Reform to Louis DeJoy, U.S. Postmaster General (Aug. 6, 2020), *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-08-06.CBM%20et%20al.%20to%20DeJoy-%20PMG%20re%20Postal%20Standards%20Changes.pdf .................................. 19

Letter from Elizabeth Warren, Carolyn Maloney, et al. to Tammy Whitcomb, U.S. Inspector General (Aug. 7, 2020), *available at* https://www.warren.senate.gov/imo/media/doc/2020.08.07%20Letter%20to%20Postal%20Service%20IG.pdf ............................................................................. 20

Letter from Steven T. Mnuchin, U.S. Secretary of the Treasury, to Louis DeJoy, U.S. Postmaster General (July 28, 2020), *available at* https://federalnewsnetwork.com/wp-content/uploads/2020/07/2020-07-29-UST-Production-summary-of-terms.pdf .............................................................. 16

Letter from Thomas J. Marshall, General Counsel/Executive Vice President, USPS, to State Election Officials (May 29, 2020), *available at* https://about.usps.com/newsroom/national-releases/2020/2020-05-29-marshall-to-election-officials-re-election-mail.pdf ........................................... 12, 28

Maggie Haberman, Nick Corasaniti & Linda Qiu, *Trump's False Attacks on Voting by Mail Stir Broad Concern*, N.Y. Times (June 24, 2020), https://www.nytimes.com/2020/06/24/us/politics/trump-vote-by-mail.html .......................... 15

Matthew Daly, Associated Press, *Congress urges Postal Service to undo changes slowing mail* (Aug. 6, 2020), https://apnews.com/a291ebc31c5638aa5a9adafc2ff2b430 .................................................... 16

Michael D. Shear, *Trump, Having Denounced Amazon's Shipping Deal, Orders Review of Postal Service*, N.Y. Times (Apr. 12, 2018), https://www.nytimes.com/2018/04/12/us/politics/trump-postal-service-amazon.html ............................................................................................... 14

Michael Shear, Hailey Fuchs & Kenneth Vogol, *Mail Delays Fuel Concern Trump is Undercutting Postal System Ahead of Voting*, N.Y. Times (July 31, 2020), https://www.nytimes.com/2020/07/31/us/politics/trump-usps-mail-delays.html?action=click&module=Top%20Stories&pgtype=Homepage ............................. 30

Michelle Ye Hee Lee & Jacob Bogage, *Postal Service Backlog Sparks Worries That Ballot Delivery Could Be Delayed in November*, Wash. Post (July 30, 2020), https://www.washingtonpost.com/politics/postal-service-backlog-sparks-worries-that-ballot-delivery-could-be-delayed-in-november/2020/07/30/cb19f1f4-d1d0-11ea-8d32-1ebf4e9d8e0d_story.html ......................... 20

Michelle Ye Hee Lee, *Scattered Problems with Mail-In Ballots This Year Signal Potential November Challenges for Postal Service*, Wash. Post (July 15, 2020), https://www.washingtonpost.com/politics/scattered-problems-with-mail-in-ballots-this-year-signal-potential-november-challenges-for-postal-service/2020/07/15/0dfb8b42-c216-11ea-b178-bb7b05b94af1_story.html ...................... 13, 17

Myah Ward, *Trump: Postal Service is a 'Joke' That Must Raise Prices to Get Bailout Money*, Politico (Apr. 24, 2020), https://www.politico.com/news/2020/04/24/trump-us-postal-service-coronavirus-bailout-206851 ....................................................................................15

Natural Disaster and Emergency Ballot Act (NDEBA) of 2020 One Pager, *available at* https://www.wyden.senate.gov/imo/media/doc/Natural%20Disaster%20and%20Emergency%20Ballot%20Act%20of%202020%20One%20Pager.pdf ............................20

Nick Corasaniti & Michael Wines, *Beyond Georgia: A Warning for November as States Scramble to Expand Vote-by-Mail*, N.Y. Times (June 10, 2020), https://www.nytimes.com/2020/06/10/us/politics/voting-by-mail-georgia.html?searchResultPosition=20. ...............................................................5, 6

Pandemic Response Accountability Committee, *Top Challenges Facing Federal Agencies: COVID-19 Emergency Relief and Response Efforts* (June 2020), *available at* https://www.oversight.gov/sites/default/files/oig-reports/Top........................7, 8

Paula Vasan, *Kentucky Secretary of State Says Absentee Ballots Account for 85% of Vote*, WHAS 11 (June 24, 2020), https://www.whas11.com/article/news/local/kentucky-election-absentee-vote-turnout/417-23f2bb1e-ea9a-4c7e-8202-c33f54063ab6............................................5

Postmaster General Megan J. Brennan, Testimony Before the House Committee on Oversight and Reform (April 30, 2019), https://about.usps.com/news/testimony/2019/pr19_pmg0430.htm...........................7

*Postmaster General Warns Committee of Dire Consequences Without Congressional Action* (Apr. 9, 2020), https://oversight.house.gov/news/press-releases/postmaster-general-warns-committee-of-dire-consequences-without-congressional ...............................................................................................7

Press Release, Office of the Secretary of State, South Dakota (April 10, 2020), https://sdsos.gov/elections-voting/assets/AbsenteeBallotRequestApplicationsPressRelease.pdf .....................................11

Rachel Glickhouse, *Electionland 2020: Kentucky and New York Vote, Trump on Mail Voting, COVID Impacts and more*, ProPublica (June 26, 2020), https://www.propublica.org/article/electionland-2020-kentucky-and-new-york-vote-trump-on-mail-voting-covid-impacts-and-more.....................................................5

Reuters, *House Democrats Press U.S. Postal Service on Plans to Delay Mail*, N.Y. Times (July 20, 2020), https://www.nytimes.com/reuters/2020/07/20/us/20reuters-usa-postoffice.html?searchResultPosition=1 .................................................................18

Ryan McCarthy & Maryam Jameel, *The Postal Service is Steadily Getting Worse – Can It Handle a National Mail-In Election?*, ProPublica (June 15, 2020), https://www.propublica.org/article/the-postal-service-is-steadily-getting-worse-can-it-handle-a-national-mail-in-election ........................................................ 5, 8, 9, 17

Sharon Bernstein, *Ohio Set to Send All Voters Absentee Ballot Applications before Presidential Election*, Reuters (June 15, 2020), https://www.reuters.com/article/us-usa-election-ohio/ohio-set-to-send-all-voters-absentee-ballot-applications-before-presidential-election-idUSKBN23N00Q ........................................................................................................ 11

USPS, *Your 2020 Official Election Mail Kit 600* (Jan. 2020), *available at* https://about.usps.com/kits/kit600.pdf ........................................... 28

Wendy R. Weiser, *To Protect Democracy, Expand Vote by Mail*, Brennan Ctr. For Justice (June 30, 2020), https://www.brennancenter.org/our-work/analysis-opinion/protect-democracy-expand-vote-mail .............................................. 5, 6

## INTRODUCTION

Plaintiff The Protect Democracy Project, Inc. ("Protect Democracy") seeks an Order requiring Defendant United States Postal Service ("USPS") to provide, on an expedited basis, documents responsive to FOIA requests related to the agency's preparations for the anticipated surge in voting by mail in the 2020 general election.

The election is less than three months away.  The early voting process, including both in person voting and the distribution of mail ballots, will begin shortly in a number of states.  In a closely contested election, with a high percentage of voting by mail, widespread mail delays causing ballots to go uncounted could influence the outcome, undermining the legitimacy of the result.  It is difficult to conceive of a more pressing and important policy matter worthy of public debate.

Over the past five months, since mid-March, COVID-19 has upended every aspect of Americans' lives.  The process by which citizens vote is no exception.  In a number of primary and special elections since the onset of the pandemic, millions of voters chose to cast their ballots by mail, a huge percentage increase over prior years.  An even greater upsurge in voting by mail is expected in the upcoming November 2020 general election.  Yet USPS appears ill equipped to deal with the many millions of additional mail ballots it will be asked to handle.

The agency's on-time mail delivery rate has steadily worsened in the last several years. In the November 2018 mid-term elections, the seven poorest performing USPS facilities, which included facilities in Florida, Ohio and Wisconsin, delivered on average only 84.2% of election mail on time.  Overall, on-time mail delivery deteriorated dramatically in 2019.  And since the onset of the pandemic in March, USPS's operations have been further compromised, resulting in thousands of lost or delayed mail ballots in this spring's primary elections – a failure that threatens to recur in November.  Most of the agency's employees are essential workers who are

unable to work remotely.  As of mid-June, more than 3,000 postal workers had tested positive for

COVID-19, 67 had died of the virus, and 5,800 were under quarantine.  With health care experts

warning of a possible second wave of COVID-19 in the fall, along with the flu, large numbers of

USPS employees will likely be unable to report for duty.

At the same time, the agency's ability to perform its work has been undermined by severe

financial constraints, which the Trump administration has been unwilling to alleviate.  Moreover,

the recently installed Postmaster General has issued new rules eliminating overtime and slowing

down delivery of mail across the system.  According to postal workers and union officials, these

new policies have already resulted in at least a two-day delivery delay in various parts of the

country, even for Express Mail.  More mail is being sorted manually, adding to the delays, as

have scheduling and route changes.  With the ban on overtime, the backlog is likely to continue

to worsen.

Taken together, these circumstances call into question USPS's readiness for the

November 2020 election.  Whatever may be the merits of the recent policy choices, the issue of

USPS's preparations for voting by mail in the November 2020 election, including outreach to

and coordination with state election officials, is indisputably a matter of high public importance.

The need for an efficient and effective vote by mail system this November – one that ensures,

along with in-person balloting, the realization of every citizen's fundamental right to have his or

her vote counted – is clear.

Recognizing the importance of USPS's ability to handle the anticipated surge in voting

by mail, members of Congress have asked USPS to provide documents and regular briefings on

its election mail plan, and have pressed for federal legislation to address the issue.  To date,

USPS has largely failed to respond to these Congressional requests.  So, too, it is essential that

the people be able to provide their views on this matter of vital national significance.  Neither Congress nor the public can speak to these issues in an informed manner without access to Defendant USPS's records reflecting the steps the agency is – or is not – taking to prepare for voting by mail in November.

Accordingly, on June 22 and June 23, 2020, Plaintiff Protect Democracy submitted narrowly targeted FOIA requests to Defendant USPS.  The first request sought a single, specific document:

> The outreach plan . . . as of June 15, 2020, governing contacts with state election officials and political parties regarding the anticipated increase in the volume of election mail in the 2020 general election.

The second request was narrowly tailored as well.  It covered just a few month period beginning March 1, 2020 and asked for documents focused on USPS's preparations for handling the anticipated increase in election mail in the 2020 general election.

In light of the very limited time before the November election, and the even shorter time before voting by mail begins in many states, and in order for the records to serve their purpose of timely informing the public, Protect Democracy requested expedited treatment.  USPS denied the request for expedited processing, without responding to Protect Democracy's stated reasons why expedited processing was required (or explaining why, in Defendant's view, it was not).

Defendant USPS also claimed that Plaintiff's requests were overbroad and burdensome, and stated it would "take no further action unless we hear back from you."  Plaintiff did write back, disputing that its requests were either overbroad or burdensome, but nevertheless offering

to work with USPS to narrow the requests.  Plaintiff also voluntarily further limited its requests

to the offices of a small number of senior USPS officials.  Defendant has not responded.[1]

Plaintiff now seeks (i) to compel Defendant to take the statutorily required steps, *i.e.*, to

expeditiously conduct an adequate search for records responsive to Plaintiff's requests; to gather

and review responsive documents; and to advise Plaintiff which documents it intends to produce

and withhold, and the reasons for withholding any documents; and (ii) to produce:

- Within 24 hours of the issuance of this Court's Order, the USPS outreach plan governing contacts with state election officials and political parties regarding the anticipated increase in the volume of election mail in the 2020 general election.

- Within 21 days of the issuance of this Court's Order, or by another date certain to be determined by the Court, all non-exempt other requested records (or acknowledgment if no such records exist).

## BACKGROUND

### I.   The COVID-19 Pandemic Has Fundamentally Altered the Way Millions of Americans Cast Their Ballots

On March 13, 2020, President Trump issued a Proclamation Declaring a National

Emergency Concerning the Novel Coronavirus Disease ("COVID-19") Outbreak.  Because of

the highly contagious nature of the disease, the federal government (as well as state and local

governments) soon began to recommend, and in some cases require, that individuals refrain from

gathering in groups, especially indoors, and avoid large crowds.  As a result, many citizens

---

[1] Defendant did respond to one of Plaintiff's requests, producing three emails, all of which were nonsubstantive calendar invitations to a telephone conference between Postal Service Board of Governors Chairman Robert M. Duncan, Postal Service Governor Roman Martinez, and Treasury Secretary Steven Mnuchin.  Defendant withheld from production a two-page summary of the call, citing FOIA Exemption 5, covering the deliberative process privilege.

declined to vote in person in the federal, state and local primary elections that have occurred

since March.  Instead, record numbers of American voters chose to vote by mail.[2]

- In Wisconsin, for example, over 1.3 million voters requested absentee ballots for the April 7, 2020 primary election, and almost 1 million were completed and returned by mail to election offices, representing a 440% increase over the April 2016 election.[3]

- In New York, more than 1.7 million voters requested absentee ballots for the June 2020 primary elections, a tenfold increase over 2016.[4]

- In Kentucky, 860,000 people requested mail-in ballots, and about 85% of the votes cast were by mail-in ballot.  Only 15% voted in person.[5]

- In Washington, D.C., 91,000 voters requested an absentee ballot, 15 times the normal volume.[6]

---

[2] In 2018, 26 states and the District of Columbia had vote-by mail rates under 10%.  *See* Ryan McCarthy & Maryam Jameel, *The Postal Service is Steadily Getting Worse – Can It Handle a National Mail-In Election?*, ProPublica (June 15, 2020), https://www.propublica.org/article/the-postal-service-is-steadily-getting-worse-can-it-handle-a-national-mail-in-election.  Now, states are facing historic rates of voting by mail.  Of the 15 states that previously did not permit voters to request absentee ballots without an excuse, most determined that the risk of coronavirus infection was sufficient justification to vote by mailed absentee ballot. *See* Wendy R. Weiser, *To Protect Democracy, Expand Vote by Mail*, Brennan Ctr. For Justice (June 30, 2020), https://www.brennancenter.org/our-work/analysis-opinion/protect-democracy-expand-vote-mail. In states already permitting all voters to request absentee ballots, the growth in absentee ballot requests has also been substantial.

[3] Office of Inspector General, USPS, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* (July 7, 2020), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf

[4] Rachel Glickhouse, *Electionland 2020: Kentucky and New York Vote, Trump on Mail Voting, COVID Impacts and more*, ProPublica (June 26, 2020), https://www.propublica.org/article/electionland-2020-kentucky-and-new-york-vote-trump-on-mail-voting-covid-impacts-and-more

[5] Paula Vasan, *Kentucky Secretary of State Says Absentee Ballots Account for 85% of Vote*, WHAS 11 (June 24, 2020), https://www.whas11.com/article/news/local/kentucky-election-absentee-vote-turnout/417-23f2bb1e-ea9a-4c7e-8202-c33f54063ab6

[6] Nick Corasaniti & Michael Wines, *Beyond Georgia: A Warning for November as States Scramble to Expand Vote-by-Mail*, N.Y. Times (June 10, 2020),

- In the Georgia primaries, election officials faced a record demand for absentee ballots, sending out more than 1.5 million.[7]  More than 1.1 million absentee ballots were cast, five times as many as in the 2018 general election.[8]

- In Pennsylvania, roughly 1.9 million voters requested absentee ballots – 18 times as many as in the 2016 general election.[9]  Of those, approximately 1.4 million voters cast their ballots by mail, out of a total of roughly 2 million ballots cast.[10]

- In the Nebraska primaries on June 18, 80% of the record 471,000 ballots were cast by mail.  Historically, only about 25% of ballots are cast by mail in Nebraska.[11]

## II.    USPS Has Been Weakened By Financial Pressure and COVID-19

This unprecedented growth in demand for vote-by-mail services comes at a difficult time for USPS.  The agency is expected to be self-sustaining financially, and it has received no federal funds since 1982.  In 2006, Congress enacted legislation requiring USPS to prefund 75 years of retiree benefits in ten years, at a cost of approximately 110 billion dollars.[12]

---

https://www.nytimes.com/2020/06/10/us/politics/voting-by-mail-georgia.html?searchResultPosition=20.

[7] *Id.*

[8] Wendy R. Weiser, *To Protect Democracy, Expand Vote by Mail*, Brennan Ctr. For Justice (June 30, 2020), https://www.brennancenter.org/our-work/analysis-opinion/protect-democracy-expand-vote-mail.

[9] *Id.*

[10] Nick Corasaniti  Michael Wines, *Beyond Georgia: A Warning for November as States Scramble to Expand Vote-by-Mail*, N.Y. Times (June 10, 2020), https://www.nytimes.com/2020/06/10/us/politics/voting-by-mail-georgia.html?searchResultPosition=20.

[11] Chris Dunker, *Mail-In Ballots Account for 80% of Votes Cast in Record-Breaking Primary*, Lincoln Jounral Star (June 18, 2020), https://journalstar.com/news/local/govt-and-politics/elections/mail-in-ballots-account-for-80-of-votes-cast-in-record-breaking-primary/article_079eda2a-7c35-54dc-92c4-cf8c0efc64ae.html.

[12] In February 2020, the House of Representatives passed a bill, by a vote of 309-106, to end this prefunding mandate.  Identical legislation was recently introduced in the Senate by Republican Senator Steve Daines of Montana and Democrat Brian Schatz of Hawaii.

From 2007 to mid-2020, USPS recorded cumulative net losses of $83.1 billion including $9 billion in FY 2019 and a comparable amount expected in 2020, driven largely by a decline in letter mail.[13]  As of late June, the agency had approximately $160.9 billion in debt, $119.3 billion of which was due to its prefunding obligations, creating an ongoing, substantial drain on its already limited resources.[14]  Indeed, USPS has for a number of years been deferring necessary capital investments in order to preserve liquidity to meet these obligations, resulting in a decline in the quality of service, including rates of on-time mail delivery.[15]  In early April, the USPS Board of Governors requested $75 billion in emergency funds from Congress, to "ensure continued delivery of essential information, packages, and services," consisting of a $25 billion emergency appropriation to offset coronavirus-related losses, a $25 billion grant to fund 'shovel-ready' projects to modernize the Postal Service, and access to $25 billion in unrestricted borrowing authority from the Treasury Department.[16]

---

[13] Pandemic Response Accountability Committee, *Top Challenges Facing Federal Agencies: COVID-19 Emergency Relief and Response Efforts* (June 2020), *available at* https://www.oversight.gov/sites/default/files/oig-reports/Top Challenges Facing Federal Agencies - COVID-19 Emergency Relief and Response Efforts_1.pdf.

[14] Jacob Bogage, *Under Siege from Trump, U.S. Postal Service Finds Surprising Financial Upside in Pandemic*, Wash. Post (June 25, 2020), https://www.washingtonpost.com/business/2020/06/25/postal-service-packages-coronavirus/.

[15] *Id.*; Pandemic Response Accountability Committee, *Top Challenges Facing Federal Agencies: COVID-19 Emergency Relief and Response Efforts* (June 2020), *available at* *https://www.oversight.gov/sites/default/files/oig-reports/Top Challenges Facing Federal Agencies - COVID-19 Emergency Relief and Response Efforts_1.pdf*; Postmaster General Megan J. Brennan, Testimony Before the House Committee on Oversight and Reform (April 30, 2019), https://about.usps.com/news/testimony/2019/pr19_pmg0430.htm.

[16] *Postmaster General Warns Committee of Dire Consequences Without Congressional Action* (Apr. 9, 2020), https://oversight.house.gov/news/press-releases/postmaster-general-warns-committee-of-dire-consequences-without-congressional.

COVID-19 has also placed significant additional strain on USPS personnel and the agency's ability to perform its job.  The majority of USPS's 630,000 employees are essential workers who are unable to work remotely.  As of mid-June – before the current wave of infections in the southern and western United States – more than 3,000 postal workers had tested positive for COVID-19, 67 had died of the virus, and 5,800 were under quarantine.[17]

### III.    Voting By Mail Is Especially at Risk

USPS's difficulties handling mail voting predate the pandemic.  A report by the USPS OIG following the November 2018 mid-term elections found that 95.6% of election mail nationally was delivered on time, just short of the agency's goal of 96%.  But even that figure represents a significant number of late or undelivered ballots.  And the seven lowest-performing USPS facilities, which includes facilities in Florida, Ohio and Wisconsin, delivered on average only 84.2% of election mail on time.[18]

In 2019, the agency's performance deteriorated significantly.  USPS made on-time delivery of only 80.88% of its three-to-five day single-piece first class mail, the method by which many absentee ballots are sent.  Thus, even if USPS were to maintain its pre-pandemic pace, in close races that might be decided by only a few percentage points – or, as in the 2016

---

[17] Ryan McCarthy & Maryam Jameel, *The Postal Service is Steadily Getting Worse – Can It Handle a National Mail-In Election?*, ProPublica (June 15, 2020), https://www.propublica.org/article/the-postal-service-is-steadily-getting-worse-can-it-handle-a-national-mail-in-election; Pandemic Response Accountability Committee, *Top Challenges Facing Federal Agencies: COVID-19 Emergency Relief and Response Efforts* (June 2020), *available at https://www.oversight.gov/sites/default/files/oig-reports/Top Challenges Facing Federal Agencies - COVID-19 Emergency Relief and Response Efforts_1.pdf*

[18] Office of Inspector General, USPS, *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections* (Nov. 4, 2019), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2019/19XG010NO000.pdf

presidential election, by as slim a margin as less than one percent – there is a real risk that the result could be determined by lost or delayed ballots.[19]

The experience of voting by mail in recent primaries gives every reason to fear that outcome.  Across the country, voters and state election officials have reported mail ballots that were badly delayed or never delivered.  As a result, thousands of American voters were disenfranchised.

Thus, for example, after Ohio's April 28 primary, it was discovered that hundreds of ballots had not been returned by USPS to Ohio election officials in time to be counted.  This came after election mail delivery had been so slow that the Ohio secretary of state publicly warned voters and encouraged USPS to hire more staff to handle the volume.  Ballots were similarly delayed or not delivered in New Jersey and Maryland, and so many voters in Washington, D.C. complained of undelivered ballots that election officials allowed them to submit ballots by email.  In Pennsylvania, the governor extended the deadline for receipt of absentee ballots in certain counties after numerous complaints of delays.[20]

Wisconsin's experience is particularly instructive.  Following the state's April 7, 2020 election – in which thousands of ballots were either delayed or never delivered – a bipartisan group of Wisconsin federal elected officials (Republican Senator Ron Johnson, Republican Representative Bryan Steil, Democratic Senator Tammy Baldwin and Democratic Representative

---

[19] Ryan McCarthy & Maryam Jameel, *The Postal Service is Steadily Getting Worse – Can It Handle a National Mail-In Election?*, ProPublica (June 15, 2020), https://www.propublica.org/article/the-postal-service-is-steadily-getting-worse-can-it-handle-a-national-mail-in-election

[20] *Id.*

Gwen Moore) asked the USPS Office of the Inspector General ("OIG") to conduct an investigation.

After sharing its findings and receiving input from USPS management, OIG issued its report on July 7, 2020.[21]  It identified numerous errors by USPS, including tubs of ballots that were never delivered and ballots that had not been postmarked.  The Inspector General also identified approximately 150 ballots that a mail carrier erroneously and repeatedly returned to a village election office without delivering them to voters.  To help prevent these errors in the future, OIG recommended that the USPS Acting Vice President, Great Lakes Area, "develop and implement a plan to communicate with the Wisconsin Election Commission and associated election offices" regarding vote-by-mail deadlines, encouraging Wisconsin election districts to use Intelligent Mail Barcodes (IMbs), and teaching election officials how to design ballots that could be easily read and delivered by USPS mail carriers.  OIG also reminded USPS of the importance of using a political mail log to track all election mail, a critical step that had been overlooked in some instances, making it difficult for USPS personnel to track and determine how certain ballots had gone undelivered.

Significantly, OIG also found that many of the errors identified in Wisconsin represented "potential nationwide issues" USPS could expect to encounter in administering future elections, including the failure to use IMbs and improper postmarking.

Unfortunately, there is every reason to believe the challenges facing USPS will grow as the November general election nears and USPS is tasked with processing all of the nation's mail ballots simultaneously.  According to an analysis published by the Washington Post on August 8,

---

[21] Office of Inspector General, USPS, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* (July 7, 2020), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf

at least 76% of American voters – nearly 180 million people – will be eligible to vote by mail in

November.  Of those, 21 million live in states that have agreed to accept fear of the coronavirus

as a valid basis for voting by mail, or have changed their policies to become "no excuse" states.

And an additional 57 million voters reside in the 34 states (and the District of Columbia) that

already permitted anyone to vote by absentee mail ballot, and in some cases are now making the

process easier, by sending either ballot applications or ballots to all voters.[22]  For example:

- In California, Governor Gavin Newsom signed a law in June directing election officials to mail a ballot to each of California's nearly 21 million registered voters for the November election.[23]

- Ohio, similarly, has stated that it intends to send absentee ballot applications to all registered voters in the state.[24]

- In Alaska, voters 65 and over will automatically be mailed an absentee application for the general election.[25]

- South Dakota and Idaho automatically mailed absentee applications to voters ahead of their primaries, allowing voters to also request a ballot for the general election.[26]

---

[22] Kate Rabinowitz & Brittany Renee Mayes, *At Least 76% of American Voters Can Cast Ballots by Mail in the Fall*, Wash. Post (Aug. 7, 2020), https://www.washingtonpost.com/graphics/2020/politics/vote-by-mail-states/

[23] California Assembly Bill No. 180 (June 18, 2020), https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB860; Associated Press, *100,000 Mail-In Votes Went Uncounted in California's Primary*, N.Y. Times (July 13, 2020), https://www.nytimes.com/aponline/2020/07/13/us/ap-us-election-2020-california-uncounted-votes-2nd-ld-writethru.html?searchResultPosition=3; https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200AB860

[24] Sharon Bernstein, *Ohio Set to Send All Voters Absentee Ballot Applications before Presidential Election*, Reuters (June 15, 2020), https://www.reuters.com/article/us-usa-election-ohio/ohio-set-to-send-all-voters-absentee-ballot-applications-before-presidential-election-idUSKBN23N00Q

[25] COVID-19 Information for Voters and Election Officials, Alaska Division of Elections, https://www.elections.alaska.gov/Core/COVID19faq.php

[26] Press Release, Office of the Secretary of State, South Dakota (April 10, 2020), https://sdsos.gov/elections-voting/assets/AbsenteeBallotRequestApplicationsPressRelease.pdf;

### IV.    A Successful Vote-By-Mail Process Requires Collaboration Between USPS and State Election Officials

Currently, many states have absentee ballot rules that do not take into account the limitations of USPS delivery service – even when that service is operating well.  In the same report on Wisconsin's election, OIG identified 11 states that allow voters to request an absentee ballot three days or fewer before the election.  According to OIG, this time period "d[id] not provide sufficient time for election offices to generate a ballot and for the Postal Service to process and deliver the ballots to voters before the election."  For an additional 13 states with deadlines ranging from four to six days before the election, OIG found that even that extended time period "put ballots at high risk of not being delivered to voters before an election."[27]

The OIG Report echoed a May 29, 2020 letter from USPS General Counsel and Executive Vice President Thomas J. Marshall to state election officials.  Mr. Marshall recommended that states require that voters "mail their return ballots at least 1 week prior to the due date established by state law," and noted it was "critical that the Postal Service's delivery standards be kept in mind when informing voters how to successfully participate in an election using the mail."[28]

---

Kate Rabinowitz & Brittany Renee Mayes, *At Least 76% of American Voters Can Cast Ballots by Mail in the Fall*, Wash. Post (Aug. 7, 2020), https://www.washingtonpost.com/graphics/2020/politics/vote-by-mail-states/

[27] Office of Inspector General, USPS, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* (July 7, 2020), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf

[28] Letter from Thomas J. Marshall, General Counsel/Executive Vice President, USPS, to State Election Officials (May 29, 2020), *available at* https://about.usps.com/newsroom/national-releases/2020/2020-05-29-marshall-to-election-officials-re-election-mail.pdf

Many states have had to build or substantially revamp massive vote-by-mail operations on short notice in order to handle the sudden influx of mail-in ballots.  In order to do so effectively, officials in those states need to learn and be able to conform to USPS protocols for processing election mail.  To that end, the agency has reportedly been in close contact with state and local officials in order to prepare them for November.  In a statement to the Washington Post in mid-July, USPS said:

> As we anticipate that many voters may choose to use the mail to participate in the upcoming elections due to the impacts of the COVID-19 pandemic, we are conducting . . . outreach with state, county and local election officials and Secretaries of State so that they can make informed decisions and educate the public about what they can expect when using the mail to vote.[29]

Similarly, the USPS OIG recommended, in its report on the Wisconsin election, that USPS personnel engage in outreach with state election officials to confirm they understand proper mailpiece addressing and design, and coordinate with election offices to ensure they are aware of proper ballot mailing procedures.  USPS management agreed with these recommendations.  In its response to the OIG's statement that the agency should "develop and implement an action plan with timelines" to address the national issues identified by OIG, USPS management assured OIG that USPS "has been and will continue to conduct outreach with state and local election officials," and that "[t]he plan includes regularly scheduled meetings with Secretaries of State and various state and local election officials as well as bi-weekly meetings

---

[29] Michelle Ye Hee Lee, *Scattered Problems with Mail-In Ballots This Year Signal Potential November Challenges for Postal Service*, Wash. Post (July 15, 2020), https://www.washingtonpost.com/politics/scattered-problems-with-mail-in-ballots-this-year-signal-potential-november-challenges-for-postal-service/2020/07/15/0dfb8b42-c216-11ea-b178-bb7b05b94af1_story.html

with stakeholders on topics such as mail standards versus state's election timelines, IMb, and informed delivery."[30]

Outreach and coordination between USPS and state election offices is critical, given the likelihood that the COVID-19 pandemic, which has driven so many voters to seek to vote by mail, will not have abated – and may well have worsened – in the coming months leading up to the November 3 election.  Voting in person is likely to remain problematic and unattractive to millions of voters who will expect to be able to exercise the franchise safely, by mail.

## V.     USPS Has Been Weakened By Management Changes and Other Actions Initiated by President Trump

Beginning well before the pandemic, President Trump has repeatedly attacked the Postal Service.  Initially, the president focused on the rates charged by USPS to large shippers, especially Amazon, despite evidence demonstrating that USPS's contract with Amazon is in fact profitable for the agency.[31]  On April 24, after months of criticism, the president called USPS "a joke" and threatened to block any emergency aid to the agency unless it quadrupled prices for package delivery.[32]

---

[30] Office of Inspector General, USPS, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* (July 7, 2020), *available at* https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf

[31] Michael D. Shear, *Trump, Having Denounced Amazon's Shipping Deal, Orders Review of Postal Service*, N.Y. Times (Apr. 12, 2018), https://www.nytimes.com/2018/04/12/us/politics/trump-postal-service-amazon.html

[32] Lisa Rein & Jacob Bogage, *Trump Says He Will Block Coronavirus Aid for U.S. Postal Service if It Doesn't Hike Prices Immediately*, Wash. Post (Apr. 24, 2020), https://www.washingtonpost.com/us-policy/2020/04/24/trump-postal-service-loan-treasury/; Myah Ward, *Trump: Postal Service is a 'Joke' That Must Raise Prices to Get Bailout Money*, Politico (Apr. 24, 2020), https://www.politico.com/news/2020/04/24/trump-us-postal-service-coronavirus-bailout-206851

In recent months, President Trump has expanded his attacks on USPS to specifically target voting by mail.  In the face of the data demonstrating that all forms of voter fraud, including fraud related to voting by mail, are extremely rare, the president has nevertheless repeatedly challenged the legitimacy of absentee voting, insisting, without evidence, that fraud is common.  According to calculations by the New York Times, President Trump made five dozen false claims about mail balloting from April to June 24.  Proceeding on the basis of these false assertions, the president has insisted that the 2020 election would be, "in [his] opinion, the most corrupt election in the history of our country."[33]

During the same period, President Trump has frustrated Congressional efforts to shore up postal services before the 2020 election.  The loan facility authorized months ago in the CARES Act, but not approved until late July, contains conditions agreed upon by Secretary Mnuchin and recently appointed Postmaster General Louis DeJoy.  It requires USPS to provide proprietary and previously confidential financial information to Treasury, including its Negotiated Service Agreements with Amazon and others.  The maximum borrowing is $10 billion, well short of USPS's original $75 billion request; funds will be made available only for operating expenses, not capital improvements, and only if, "due to the COVID-19 emergency . . . USPS will not be able to fund operating expenses without borrowing money;" the agency must spend any money it borrows within thirty days; and it cannot access any of the funds if it has a cash balance of more than $8 billion.[34]

---

[33] Maggie Haberman, Nick Corasaniti & Linda Qiu, *Trump's False Attacks on Voting by Mail Stir Broad Concern*, N.Y. Times (June 24, 2020), https://www.nytimes.com/2020/06/24/us/politics/trump-vote-by-mail.html

[34] Letter from Steven T. Mnuchin, U.S. Secretary of the Treasury, to Louis DeJoy, U.S. Postmaster General (July 28, 2020), *available at* https://federalnewsnetwork.com/wp-content/uploads/2020/07/2020-07-29-UST-Production-summary-of-terms.pdf

President Trump has also taken steps to effect change at USPS from within.  Following the retirement of Megan J. Brennan as Postmaster General, the president in May installed Mr. DeJoy in that position, in the midst of the dispute between Secretary Mnuchin and USPS.  Mr. DeJoy is the first Postmaster General in nearly two decades without prior experience at USPS.[35] He is a major Republican donor who, as of the time of his appointment, had donated $360,000 in 2020 alone to Trump Victory, a super PAC supporting the President's re-election campaign. According to financial disclosure forms submitted by his wife in connection with her nomination to be U.S. Ambassador to Canada, Mr. DeJoy and his wife together have between 30.1 and 75.3 million in assets in USPS competitors or contractors.[36]

Many in the postal community have expressed concern regarding Mr. DeJoy's appointment.  In an interview with the Washington Post, Mark Dimondstein, president of the American Postal Workers Union, which represents approximately 200,000 USPS employees, noted Mr. DeJoy's status as "a megadonor of President Trump," adding that, "on the surface, there's a real worry about cronyism and patronage and whether someone is being put into place to carry out an agenda.  We hope that's not the case." [37]

---

[35] Matthew Daly, Associated Press, *Congress urges Postal Service to undo changes slowing mail* (Aug. 6, 2020), https://apnews.com/a291ebc31c5638aa5a9adafc2ff2b430.

[36] Jacob Bogage, *Trump Ally Takes Over Crisis-Ridden Postal Service as Top Senate Democrat Demands Inquiry on Hiring*, Wash. Post (June 15, 2020), https://www.washingtonpost.com/business/2020/06/15/trump-postal-service-dejoy/

[37] Michelle Ye Hee Lee, *Scattered Problems with Mail-In Ballots This Year Signal Potential November Challenges for Postal Service*, Wash. Post (July 15, 2020), https://www.washingtonpost.com/politics/scattered-problems-with-mail-in-ballots-this-year-signal-potential-november-challenges-for-postal-service/2020/07/15/0dfb8b42-c216-11ea-b178-bb7b05b94af1_story.html

Postmaster General DeJoy took office on June 15, coinciding with the departure of at least two key USPS administrators.  Ronald Stroman, the deputy postmaster general and the lead coordinator on election outreach related to voting by mail, resigned from USPS effective June 1.  David Williams, the Democratic vice chairman of the USPS Board of Governors and a former USPS Inspector General, also resigned his position, reportedly due to disagreement with the potential oversight sought by the Treasury Department and what he considered to be unprecedented politicization of the agency.[38]

Shortly after taking office, Postmaster General DeJoy began to implement major structural changes at USPS, warning agency employees that USPS would not survive if it did not act quickly to cut costs.  The measures put forward by Mr. DeJoy reportedly include prohibiting overtime and curtailing the use of other techniques that local postmasters use to handle staffing shortages, and directing postal workers to leave behind mail for the following day if the plant is running behind in processing.  Typically, postal workers are trained not to leave letters behind and, if necessary, to make multiple trips in a day to ensure all mail is delivered.[39]  After initial denials from USPS General Counsel Marshall that these changes "originated from Postal Service Headquarters," Postmaster General DeJoy acknowledged having instituted them.[40]

---

[38] Ryan McCarthy & Maryam Jameel, *The Postal Service is Steadily Getting Worse – Can It Handle a National Mail-In Election?*, ProPublica (June 15, 2020), https://www.propublica.org/article/the-postal-service-is-steadily-getting-worse-can-it-handle-a-national-mail-in-election; Alan Rappeport, *Postal Service Pick with Ties to Trump Raises Concerns Ahead of 2020 Election*, N.Y. Times (May 7, 2020), https://www.nytimes.com/2020/05/07/us/politics/postmaster-general-louis-dejoy.html?searchResultPosition=10

[39] Jacob Bogage, *Postal Service Memos Detail 'Difficult' Changes, Including Slower Mail Delivery*, Wash. Post (July 14, 2020), https://www.washingtonpost.com/business/2020/07/14/postal-service-trump-dejoy-delay-mail/

[40] Jacob Bogage, *Top Democrats Say Postmaster General Acknowledged New Policies That Workers Say Are Delaying Mail*, Wash. Post (Aug. 6, 2020),

Members of Congress have expressed concern that these changes could lead to dangerous delays in election mail, raising the question why they would be implemented, with little notice or transition, in an election year in the middle of a pandemic, with unprecedented voting by mail about to occur.  On July 20, Representative Carolyn Maloney, Chair of the House Committee on Oversight and Reform, along with Representatives Gerald Connolly (Chair of the Subcommittee on Government Operations of the Committee on Oversight and Reform, which has legislative jurisdiction over the Postal Service), Stephen Lynch, and Brenda Lawrence, wrote to Postmaster General DeJoy seeking further information on the new policies reported in the Washington Post:

> While these changes in a normal year would be drastic, in a presidential election year when many states are relying heavily on absentee mail-in ballots, increases in mail delivery timing would impair the ability of ballots to be received and counted in a timely manner – an unacceptable outcome for a free and fair election.[41]

USPS General Counsel Marshall responded on July 22, stating that the documents describing these changes were not "official USPS memoranda," and that they had been distributed in a limited area by a "mid-level manager."  Representative Maloney (along with a number of her House colleagues) wrote again to Mr. DeJoy on August 6, noting that USPS had failed to explain how the directives had come about, or how Postal Service officials came to

---

https://www.washingtonpost.com/politics/2020/08/06/top-democrats-say-postmaster-general-acknowledged-new-policies-that-workers-say-are-delaying-mail/?hpid=hp_politics1-8-12_postmaster-734pm%3Ahomepage%2Fstory-ans

[41] Reuters, *House Democrats Press U.S. Postal Service on Plans to Delay Mail*, N.Y. Times (July 20, 2020), https://www.nytimes.com/reuters/2020/07/20/us/20reuters-usa-postoffice.html?searchResultPosition=1

believe they should be implemented.[42]  As noted, Postmaster General DeJoy later acknowledged

having instituted the directives.[43]

On July 16, two days after the new policies were reported in the Washington Post article,

five senators wrote to the postmaster general seeking information on the Postal Service's

preparedness for the expected influx of election mail caused by the pandemic.  The senators

requested that USPS provide regular briefings to Congress on its election mail plan, and

specifically requested that USPS produce to Congress many of the same documents that are

requested by Plaintiff under FOIA.  Despite the senators' request that these documents be

provided by July 29, USPS has still failed to act.  Similarly, Senator Kamala Harris wrote to

Postmaster General DeJoy on July 27, "seeking information on how operational changes

reportedly being imposed by you will affect the ability of Americans to rely on the Postal Service

to vote by mail in the upcoming elections."[44]  Senator Harris, too, has not received any response.

---

[42] Letter from the Committee on Oversight and Reform to Louis DeJoy, U.S. Postmaster General (Aug. 6, 2020), *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-08-06.CBM%20et%20al.%20to%20DeJoy-%20PMG%20re%20Postal%20Standards%20Changes.pdf

[43] Jacob Bogage, *Top Democrats Say Postmaster General Acknowledged New Policies That Workers Say Are Delaying Mail*, Wash. Post (Aug. 6, 2020), https://www.washingtonpost.com/politics/2020/08/06/top-democrats-say-postmaster-general-acknowledged-new-policies-that-workers-say-are-delaying-mail/?hpid=hp_politics1-8-12_postmaster-734pm%3Ahomepage%2Fstory-ans

[44] Some in the Congress have also sought to address the need for effective voting by mail legislatively.  Senators Amy Klobuchar and Ron Wyden, joined by 24 of their colleagues, introduced the Natural Disaster and Emergency Ballot Act of 2020, which, among other things, would ensure that all states provide for no-excuse absentee voting, begin counting votes cast during early voting or by mail or online, in fashion designed to avoid delays on Election Day; and direct all states that do not already use ballot tracking systems to use envelopes with an IMb (intelligent mail) barcode to allow voters to track their ballot for the 2020 and subsequent elections.  Natural Disaster and Emergency Ballot Act (NDEBA) of 2020 One Pager, *available at*

In an August 7 letter sent to the USPS OIG by Representative Maloney, Senator Elizabeth

Warren and others stated that the responses to Congressional requests have been "seriously

lacking" and requested that OIG open an investigation.[45]

In fact, according to postal workers and union officials, these new policies have already

resulted in at least a two-day delivery delay in various parts of the country.  More mail is being

sorted manually, adding to the delays, as have scheduling and route changes.  After just two

weeks following the implementation of the new policies on July 13, USPS had already

experienced backlogs and delays, even for Express Mail, with bins of mail ready for delivery

sitting in post offices.[46]  USPS management officials have acknowledged these delivery delays,

but claim the recent changes are meant to "ensure the agency will be financially stable" and that

any "service impacts . . . will be monitored and temporary as the root causes of any issues will be

addressed as necessary and corrected as appropriate."[47]

---

https://www.wyden.senate.gov/imo/media/doc/Natural%20Disaster%20and%20Emergency%20Ballot%20Act%20of%202020%20One%20Pager.pdf

[45] Letter from Elizabeth Warren, Carolyn Maloney, et al. to Tammy Whitcomb, U.S. Inspector General (Aug. 7, 2020), *available at* https://www.warren.senate.gov/imo/media/doc/2020.08.07%20Letter%20to%20Postal%20Service%20IG.pdf

[46] Michelle Ye Hee Lee & Jacob Bogage, *Postal Service Backlog Sparks Worries That Ballot Delivery Could Be Delayed in November*, Wash. Post (July 30, 2020), https://www.washingtonpost.com/politics/postal-service-backlog-sparks-worries-that-ballot-delivery-could-be-delayed-in-november/2020/07/30/cb19f1f4-d1d0-11ea-8d32-1ebf4e9d8e0d_story.html

[47] Jacob Bogage, *Top Democrats Say Postmaster General Acknowledged New Policies That Workers Say Are Delaying Mail*, Wash. Post (Aug. 6, 2020), https://www.washingtonpost.com/politics/2020/08/06/top-democrats-say-postmaster-general-acknowledged-new-policies-that-workers-say-are-delaying-mail/?hpid=hp_politics1-8-12_postmaster-734pm%3Ahomepage%2Fstory-ans

**VI.     Protect Democracy's FOIA Requests and Defendant USPS's Responses**

On June 22 and June 23, Plaintiff sent two FOIA requests to USPS seeking documents

related to the agency's preparations for the anticipated surge in voting by mail in the 2020

general election.[48]  In the June 22 letter, Plaintiff sought a single, specific document:

> The outreach plan that was current as of June 15, 2020, governing
> contacts with state election officials and political parties regarding
> the anticipated increase in the volume of election mail in the 2020
> general election.

In its June 23 letter, Plaintiff sought additional documents related to USPS's vote-by-mail

preparations.  The request covered a short time frame, the period from March 1, 2020 through

the date on which USPS conducted searches for responsive documents.  It was narrowly tailored

to request documents bearing on clearly defined – and clearly relevant – subject matters:

outreach and contacts between USPS and state election officials and political parties relating to

handling the anticipated increased volume of election mail, and an organizational chart listing the

USPS personnel involved in that outreach (item nos. 1, 2 and 3); records of communications with

state and local election officials (item no. 4); records with vendors relating to election-related

products and services (item no. 5); records of employee training on handling of election mail

(item no. 6); policies and procedures concerning delivery of election mail, including delivery of

election mail without postage and delivery of election mail in certain specific states (item nos. 7

and 8); records relating to the performance of delivery of election mail in the primaries (item no.

9); and communications between either the Postmaster General or the Board of Governors and

any of Treasury, DOJ or OMB (item no. 10).

---

[48] Protect Democracy's June 22 and 23, 2020 requests are attached as Exhibits A and B,
respectively, to the Declaration of Laurence M. Schwartztol in Support of Plaintiff's Motion for
a Preliminary Injunction ("Schwartztol Decl.").

Plaintiff requested expedited processing of its requests, pursuant to 5 U.S.C. § 552(a)(6)(E) and 39 C.F.R. § 265.5(c)(1)(ii), which provide for expedited processing where there is "[a]n urgency to inform the public about an actual or alleged Federal Government activity – one that extends beyond the public's right to know about government activity generally," and the requests were "made by a person who is primarily engaged in disseminating information."  39 C.F.R. § 265.5(c)(1)(ii).  In support, Plaintiff set forth a detailed factual predicate for its claim of urgent need, starting with the anticipated upsurge in voting by mail in an election just months away, along with the problems that occurred in recently conducted primary elections and reasons for concern about USPS's readiness for November.  Plaintiff additionally demonstrated that it is an entity "primarily engaged in disseminating information," and expressed its intention to share all materials obtained through these requests with the public.

Defendant USPS combined Plaintiff's requests and denied expedited treatment, quoting 39 C.F.R. § 265.5(c)(1), asserting that Plaintiff had "failed to establish" urgency, but offering no response to Plaintiff's stated reasons why there is an urgent need to inform the public.  *See* Schwartztol Decl. Exh. C-D.

About ten days later, USPS further responded to Plaintiff's second (June 23) request, claiming it was overbroad and unreasonably burdensome, and therefore "could not be processed as formulated."  *See* Schwartztol Decl. Exh. E.  Plaintiff responded by email on July 15, 2020.  *See* Schwartztol Decl. Exh. F.  Plaintiff disputed USPS's assertion that Plaintiff's request was overbroad, arguing that it was limited as to both timeframe and subject matter.  Specifically, Plaintiff's request sought only documents from March 1, 2020 through the date that searches were conducted, and was limited to materials concerning USPS's preparations for, conduct of, and outreach to states regarding expanded voting by mail in the November general election.

22

Plaintiff further pointed out that, under FOIA, it is generally the agency's obligation, and not the requester's, to identify likely custodians of responsive documents and to conduct searches for those materials.

To demonstrate good faith, however, Plaintiff also offered to work with USPS to narrow the requests. Plaintiff volunteered to further narrow its requests to records located in a limited number of agency offices (those of the Postmaster General, the Deputy Postmaster General, the Chief Operating Officer, the Area Operations Vice Presidents, and the General Counsel). Defendant has not responded to this offer.

Finally, as to one item in the June 23 letter, seeking records reflecting communications between the Postmaster General or members of the USPS Board of Governors and any employee of the Department of the Treasury, DOJ or OMB, USPS stated that it had conducted a search for responsive documents and found five:

- three email calendar invitations for a call between Postal Service Board of Governors Chairman Robert M. Duncan, Postal Service Governor Roman Martinez, and Secretary of Treasury Steven Mnuchin, which it produced, and

- a two page summary the call, which it withheld in full pursuant to the deliberative process privilege, FOIA Exemption 5.

*See* Schwartztol Decl. Exh. G.

## ARGUMENT

Protect Democracy is entitled to a preliminary injunction ordering expedited processing and production of records responsive to Plaintiff's June 22 and June 23 FOIA requests. In considering a request for a preliminary injunction, a court must weigh four factors:

> (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest.

*Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001).  Here, all four factors weigh in favor of granting Protect Democracy's motion.

## I.        Plaintiff is Likely to Succeed on the Merits

Protect Democracy is likely to succeed on the merits because (i) Defendant has failed to meet FOIA's unambiguous deadlines, and (ii) Defendant has improperly denied Plaintiff's request for expedited treatment.

### A.  Defendant Has Failed to Meet the Statutory Deadline for Processing Plaintiff's FOIA Requests

A government agency must respond to a FOIA request within twenty business days and "at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse."  *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("*CREW*").  Where there are "unusual circumstances," an agency is entitled to a ten business day extension of this deadline for making and communicating its determination of which documents it will provide, and which it will withhold.  5 U.S.C. § 552(a)(6)(B).  Upon determining the scope of any production, an agency must "make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years."  *CREW,* 711 F.3d at 188 (quoting 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i)).[49]

---

[49] The time in which the agency must respond begins upon receipt of a "proper FOIA request," which is one that "'reasonably describes' the records sought."  *See CREW,* 711 F.3d at 185 n.3, 188 (quoting 5 U.S.C. § 552(a)(3)(A)).  As described below, the FOIA requests here easily meet that standard.

Defendant USPS has failed to gather and review responsive documents (other than 5 pages responsive to one of Plaintiff's requests).  Instead, by letter dated July 10, Defendant claimed that Plaintiff's requests were overbroad and unreasonably burdensome because they asked for "any and all records reflecting, discussing or otherwise relating to" certain categories of documents.  Schwartztol Decl. Exh. E.  On this basis, USPS claimed the requests "could not be processed as formulated."  *Id.*

Plaintiff responded promptly by email, noting that the allegedly objectionable "any and all records" language of the requests "is common practice in the FOIA context and does not in itself suggest overbreadth.  This is particularly the case where, as here, the request is limited in terms of timeframe and subject matter."  Schwartztol Decl. Exh. F.  More specifically:

- Plaintiff's first request could not possibly be described as overbroad – it sought production of a single, specifically identified document, the agency's current "outreach plan . . . governing contacts with state election officials and political parties regarding the anticipated increase in the volume of election mail in the 2020 general election.

- Plaintiff's June 23 request were narrowly focused as well, seeking documents relating to communications and outreach with state and local election officials; training of USPS employees and other preparations for voting by mail; USPS performance in delivering election mail in recently conducted presidential primaries (including investigations of those primaries by the USPS Office of Inspector General); and policies, practices and procedures for delivery of election mail in eight identified states, Arizona, Florida, Georgia, Michigan, North Carolina, Pennsylvania, Texas and Wisconsin.

- Plaintiff's requests sought documents for a brief period, from March 1, 2020 through the date that searches were conducted.

- Moreover, as Plaintiff pointed out, under FOIA it is generally the agency's obligation, and not the requester's, to identify likely custodians of responsive documents and to conduct searches for those materials.

Plaintiff thus demonstrated that the requests were specifically targeted to cover only relevant categories of documents, and that those enumerated categories enabled USPS to identify locations and custodians of responsive documents, and thereby locate and gather the documents "with a reasonable amount of effort," 39 C.F.R. § 265.3(c).  Moreover, to demonstrate good

faith, Plaintiff asked that USPS provide "any specific information on which aspects of the request impose disproportionate burdens, or any suggestions on how to streamline the request," offering to work with the agency to narrow the request.  And Plaintiff went further than just proposing to hear and address USPS's concerns, by voluntarily narrowing the requests to records located in a limited number of agency offices (those of the Postmaster General, the Deputy Postmaster General, the Chief Operating Officer, the Area Operations Vice Presidents, and the General Counsel).  Defendant has not responded.

 "Where, as here, the agency has not yet issued a determination and the statutory deadline has passed, it has violated FOIA." *Am. Oversight v. U.S. Dep't of State,* 414 F. Supp. 3d 182, 186 (D.D.C. 2019).  "FOIA specifically permits courts to 'enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld.'" *Id*. at 184 (quoting 5 U.S.C. § 552(a)(4)(B)).

Excluding the three business days between Defendant's July 10 letter and Plaintiff's email response (which tolled the running of USPS's time to respond, *see* Schwartztol Decl. Exh. E-F; 5 U.S.C. § 552(a)(6)(A)(ii)(I)), thirty-one business days have passed since Defendant received Protect Democracy's requests.  Yet, other than five pages produced in response to one request, Defendant has thus far failed to make the required determination, let alone produce any documents – indeed, Defendant appears not to have taken any steps to identify and gather responsive documents.  Defendant has thus missed the statutory deadline and violated FOIA as to all of the other requests.  In light of that violation, Protect Democracy "is certain to succeed on the merits of its claim that [USPS] owes it a determination on its requests."  *Am. Oversight,* 414 F. Supp. 3d at 186.  "And since disclosure of non-exempt documents must follow shortly

thereafter, the Court may order those disclosures at the same time under its customary supervisory authority in FOIA matters." *Id*.

### B.  Defendant Improperly Denied Plaintiff's Request for Expedited Treatment

In the case of "a request made by a person primarily engaged in disseminating information," expedited processing is required where there is "urgency to inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(V)(I)-(II) (emphasis added); *see also* 39 C.F.R. § 265.5(c)(1) (USPS regulations laying out the same standard).  Defendant summarily denied Plaintiff's request, without explanation.  Defendant simply quoted from the governing regulation and asserted – without more – that Plaintiff "failed to 'establish a particular urgency to inform the public about the government activity in the request – one that extends beyond the public's right to know about government activity generally.'  39 C.F.R. § 265.5(c)(2)."[50]

In fact, as set forth in its June 22 and June 23 letters, Plaintiff easily meets this standard and will prevail on its request for expedited processing.

*First*, as at least one court in this district has already found, Protect Democracy – which intends to publicly distribute any documents obtained through its request – is plainly a person "primarily engaged in disseminating information."  *See* Schwartztol Decl. Exh. H (Declaration of Ian Bassin); Compl. ¶¶ 13, 17-18; *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 298 (D.D.C. 2017) (holding that Protect Democracy satisfies DOJ's identically worded regulation).

---

[50] USPS also stated that Plaintiff had failed to make out the other available basis for expedited processing, "an imminent threat to the life or physical safety of an individual" in the absence of such expedited processing.  Plaintiff did not seek expedited processing on this ground.

*Second*, Protect Democracy's request demonstrates an "urgency to inform the public concerning actual or alleged Federal Government activity."  Plaintiff seeks documents vital to understanding the Postal Service's readiness for the upcoming federal election, an election that is now less than three months away.  Further, the political branches are currently locked in debate concerning funding for USPS, and concerning new USPS policies and procedures that pose a great risk of slowing down mail delivery and harming voters in November.  Congress has issued numerous requests to USPS for documents concerning the Postal Service's finances and election mail plan, only to be largely rebuffed.

USPS has published some of its outreach material, including its Official Election Mail Kit (Kit 600) and USPS General Counsel Marshall's May 29 follow-up letter.[51]  But as the Congressional requests for information – and the failure of USPS to provide the requested document – reflect, there remains a considerable amount of relevant material that USPS has not shared with the public.

In order to facilitate public input and debate on these issues – aimed at ensuring that all voters, including those voting by mail, have their votes counted – it is critical that the materials requested by Plaintiff be fully shared with the public as promptly as possible.  *See*, *e.g.*, *Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5, 11-12 (D.D.C. 2019) (granting expedited treatment of the plaintiff's request for documents related to the Ukraine Security Assistance Initiative where Congressional hearings were presently occurring and potential Congressional action was "imminent," and where Congress itself had sought many of the same materials).

---

[51] USPS, *Your 2020 Official Election Mail Kit 600* (Jan. 2020), *available at* https://about.usps.com/kits/kit600.pdf; Letter from Thomas J. Marshall, General Counsel/Executive Vice President, USPS, to State Election Officials (May 29, 2020), *available at* https://about.usps.com/newsroom/national-releases/2020/2020-05-29-marshall-to-election-officials-re-election-mail.pdf

This is particularly the case given the Trump Administration's well-documented hostility toward USPS.  As noted, Postmaster General DeJoy appears to be cutting USPS programs and reducing service exactly when USPS should be ramping up to handle the historic levels of mail voting that experts predict for November.  Whatever may be the appropriate policy responses to the substantial increase in voting by mail this November, it is clear that USPS's preparations for and ability to deal with that surge are critical matters for public debate and Congressional consideration.  Public understanding of the information and documents sought by Plaintiff's FOIA requests is an indispensable part of that debate.  And, given the imminence of early voting and the fast approaching November 3 election, Plaintiff's requests should be responded to on an expedited basis, "jumping the queue" over other, non-urgent FOIA requests.

## II.      Plaintiff Will Be Irreparably Harmed Absent the Requested Relief

"District courts in this circuit have recognized that, where an obligation to disclose exists, a plaintiff may suffer irreparable harm if denied access to information that is highly relevant to an ongoing public debate."  *Am. Immigration Council v. U.S. Dep't of Homeland Security*, 2020 WL 3639733, at *4 (D.D.C. July 6, 2020).  As the Supreme Court has observed, public awareness of the government's actions is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 172 (2004).  Public awareness must be *timely* because "stale information is of little value."  *Payne Enters. v. United States,* 837 F.2d 486, 494 (D.C. Cir. 1988).  "When 'time is necessarily of the essence,' the harm in agency delay is more likely to be irreparable." *Am. Oversight,* 414 F. Supp. 3d at 186 (granting preliminary injunction in FOIA case involving request for documents reflecting communications between senior State Department officials and President Trump's personal lawyer, Rudolph Giuliani, and documents reflecting communications between State Department officials and the White House regarding recall of former ambassador to Ukraine, Marie Yovanovich, in light of related

impeachment inquiry) (quoting *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice,* 416 F. Supp. 2d

30, 40-41 (D.D.C. 2006) ("*EPIC*")); *see also Washington Post v. Dep't of Homeland Security*,

459 F. Supp. 2d 61, 75 (D.D.C. 2006) (granting preliminary injunction where newspaper sought

White House visitor logs in order to investigate influence of lobbyists on the vice president, as

well as CIA-related leaks from the vice president's office; "[b]ecause the urgency with which the

plaintiff makes its FOIA request is predicated on a matter of current national debate, due to the

impending election, a likelihood for irreparable harm exists if the plaintiff's FOIA request does

not receive expedited treatment").

　　Plaintiff's requests – for materials related to Defendant's preparation for the November

2020 election – are a quintessential example of the type of request as to which prompt FOIA

processing is necessary.  Election Day is less than three months away, and the first states begin

mailing absentee ballots in a matter of weeks.  On top of this, the Postal Service is in the midst of

implementing new policies and procedures that risk further delaying mail service and could have

profound effects on the delivery of election mail.  Yet USPS has so far refused to share full

details of these changes with Congress.  Congress, meanwhile, is engaged in an intense debate

over funding for USPS, with Democrats proposing a $25 billion cash infusion in order to

maintain prompt mail delivery.[52]

　　Plaintiff's targeted requests seek the USPS documents most likely to contain critical

information about the steps the agency is – or is not – taking to prepare the nation to vote by mail

in November.  Moreover, the need for prompt compliance with Plaintiff's requests is heightened

---

[52] Michael Shear, Hailey Fuchs & Kenneth Vogol, *Mail Delays Fuel Concern Trump is Undercutting Postal System Ahead of Voting*, N.Y. Times (July 31, 2020), https://www.nytimes.com/2020/07/31/us/politics/trump-usps-mail-delays.html?action=click&module=Top%20Stories&pgtype=Homepage

because they concern voting.  The right to cast one's ballot and to have it counted accurately is the most precious of all rights in a functioning democracy.  *See Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live.").  "Other rights, even the most basic, are illusory if the right to vote is undermined."  *Id*.  If that right is not protected before the election, disenfranchised voters cannot be made whole after the fact.  *Cf. League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("[O]nce the election occurs, there can be no do-over and no redress.  The injury to these voters is real and completely irreparable if nothing is done to enjoin this law.").

## III.      The Requested Relief Will Not Burden Others' Interests

The preliminary injunction sought here would not burden the interests of Defendant or third parties not before the court.  Defendant cannot be "burdened" by a requirement that it merely comply with the law.  *See Jacksonville Port Auth. v. Adams,* 556 F.2d 52, 59 (D.C. Cir. 1977) (recognizing "an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate").  To the extent that there is a burden to others awaiting processing of FOIA requests, it is one imposed by Congress, which is the proper place for concerns to be addressed.  *See Elec. Frontier Found. v. Off. of Director of Nat'l Intelligence*, 2007 WL 4208311, at *7 (N.D. Cal. Nov. 27, 2007) (citing *Fiduccia v. U.S. Dep't of Justice,* 185 F.3d 1035, 1041 (9th Cir. 1999)) ("any complaints about the burdens of complying with the law are best addressed to Congress, not the courts.").  Further, the targeted nature of Plaintiff's requests – seeking only documents from the offices of a small number of top USPS officials in the narrow timeframe of March 1 to the date the search is run – ensures that USPS and other requesters will be burdened as minimally as possible by Plaintiff's requests.

Even if expedited processing of Protect Democracy's request *did* slow down USPS's processing of other FOIA requests, "[t]his is the extraordinary case where the public interest favors placing [Protect Democracy's] requests ahead of other requests in [Defendant's] FOIA queues." *Am. Oversight,* 414 F. Supp. 3d at 187; *see also Ctr. for Pub. Integrity,* 411 F. Supp. 3d at 14-15 (granting preliminary injunction in FOIA case requesting documents from DOD and OMB concerning the withholding of military aid to Ukraine, concluding "that the extraordinary circumstances presented in this case warrant [FOIA queue] line-cutting").  The documents Plaintiff seeks – and intends to place before the public – bear upon the ability of millions of American voters to vindicate their right to cast an effective ballot by mail, mere weeks before voting by mail begins.

## IV.     The Public Interest Favors the Requested Relief

The final factor in the preliminary injunction analysis also weighs in favor of issuance of the order Protect Democracy seeks in this case.  Release of FOIA records promotes the public interest by "'shed[ding] light on an agency's performance of its statutory duties." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 773 (1989).  More fundamentally, courts have long recognized a presumptive public interest in "an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth.*, 556 F.2d at 59.  Lastly, the "timely release" of information given media attention and Congressional action makes the public interest "particularly well-served." *EPIC,* 416 F. Supp. 2d at 42.

The public, and its elected representatives, will clearly benefit from an understanding of USPS's preparations for the anticipated surge in voting by mail, including the agency's outreach to, and coordination with, state election officials.  *First*, public debate will be enriched by virtue of shining light on the issue of USPS being able to carry out its statutory duty to timely and safely deliver election mail.  *Second*, the specific issue of USPS's financial condition and need

32

for funding is currently the subject of Congressional debate.  How that debate is resolved could influence the Postal Service's ability to make voting by mail work as intended, for all voters who choose to employ it, in the November 2020 election.  The public interest surely benefits from disclosure of information informing that debate in Congress.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted.

Dated: August 12, 2020

Respectfully submitted,

/s/ Laurence M. Schwartztol

Laurence M. Schwartztol
PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
larry.schwarztol@protectdemocracy.org

David S. Frankel*
Harry P. Morgenthau*
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
dfrankel@kramerlevin.com
hmorgenthau@kramerlevin.com

*Attorneys for Plaintiff*

*Motion for Admission *Pro Hac Vice* forthcoming