**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
THE PROTECT DEMOCRACY                   )
PROJECT, INC.,                          )
                                        )
              Plaintiff,                )
                                        )
       v.                               )       Civil Action No. 1:20-cv-2214 (TNM)
                                        )
UNITED STATES POSTAL SERVICE,           )
                                        )
              Defendant.                )
_____ )

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

I.     Statutory and Regulatory Background ................................................................ 3

II.    Plaintiff's FOIA Requests and Requests for Expedited Processing ................... 4

III.   This Litigation .................................................................................................... 7

ARGUMENT .................................................................................................................. 8

I.     Standard of Review ............................................................................................. 8

II.    Preliminary Injunctive Relief Is Generally Not Appropriate in FOIA Cases .................... 9

III.   Even if Preliminary Injunctive Relief Were Appropriate in FOIA Cases, Plaintiff Has Failed to Meet its Heavy Burden to Show Entitlement to a Preliminary Injunction in this Case ................................................................................. 11

      A.  Plaintiff Has Failed to Demonstrate That It Will Suffer Irreparable Harm ................ 11

      B.  Plaintiff Has Failed to Establish a Likelihood of Success on the Merits .................... 16

      C.  The Balance of Equities and the Public Interest Weigh Against a Preliminary Injunction ................................................................. 20

CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

## CASES

*Al-Fayed v. C.I.A.*,
  254 F.3d 300 (D.C. Cir. 2001).......................................................................................... 20

*Allied Progress v. Consumer Fin. Prot. Bureau*,
  No. CV 17-686 (CKK), 2017 WL 1750263 (D.D.C. May 4, 2017)................................... 8, 10

*Animal Legal Def. Fund v. United States Dep't of Agric.*,
  No. 17-CV-00949-WHO, 2017 WL 2352009 (N.D. Cal. May 31, 2017)............................ 12

*Baker v. Consumer Fin. Prot. Bureau*,
  No. CV 18-2403(CKK), 2018 WL 5723146 (D.D.C. Nov. 1, 2018) ..................................... 22

*\*Cable News Network, Inc. v. Fed. Bureau of Investigation*,
  271 F. Supp. 3d 108 (D.D.C. 2017)...................................................................................... 18

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006).............................................................................................. 9

*CIA v. Sack*,
  53 F. Supp. 3d 154 (D.D.C. 2014)........................................................................................ 19

*Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*,
  711 F.3d 180 (D.C. Cir. 2013)............................................................................................. 17

*CityFed Fin. Corp. v. Office of Thrift Supervision*,
  58 F.3d 738 (D.C. Cir. 1995)............................................................................................ 8, 11

*Cobell v. Kempthorne*,
  455 F.3d 301 (D.C. Cir. 2006).............................................................................................. 9

*Cobell v. Norton*,
  391 F.3d 251 (D.C. Cir. 2004)............................................................................................... 8

*\*Daily Caller v. U.S. Dept. of States*,
  152 F. Supp. 3d 1 (D.D.C. 2015)................................................................................ 10, 12, 21

*Dale v. I.R.S.*,
  238 F. Supp. 2d 99 (D.D.C. 2002)........................................................................................ 17

*Dorfmann v. Boozer*,
  414 F.2d 1168 (D.C. Cir. 1969)......................................................................................... 1, 10

*Elec. Info. Privacy Ctr. v. U.S. Dep't of Justice,*
   15 F. Supp. 3d 32 (D.D.C. 2014) .................................................................. *passim*

*Freedom Watch, Inc. v. Dep't of State,*
   925 F. Supp. 2d 55 (D.D.C. 2013) ..................................................................... 18

*Friends of Animals v. U.S. Bureau of Land Mgmt.,*
   No. 17-0136, 2017 WL 499882 (D.D.C. Feb. 7, 2017) ............................................ 8

*Hubbard v. United States,*
   496 F. Supp. 2d 194 (D.D.C. 2007) .................................................................... 16

*Hunter Group, Inc. v. Smith,*
   164 F.3d 624 (4th Cir.1998) ............................................................................. 13

*In re Navy Chaplaincy,*
   534 F.3d 756 (D.C. Cir. 2008) .......................................................................... 11

*Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity,*
   265 F. Supp. 3d 54 (D.D.C. 2017) ..................................................................... 12

*Leopold v. Dep't of Justice,*
   301 F. Supp. 3d 13 (D.D.C. 2018) ..................................................................... 19

*Long v. U.S. Dep't of Homeland Sec.,*
   436 F. Supp. 2d 38 (D.D.C. 2006) ..................................................................... 10

*Munaf v. Green,*
   553 U.S. 674 (2008) ........................................................................................ 8

*Nation Magazine v. U.S. Dep't of State,*
   805 F. Supp. 68 (D.D.C. 1992) .................................................................... 21, 22

*Nat'l Conf. on Ministry to the Armed Forces v. James,*
   278 F. Supp. 2d 37 (D.D.C. 2003) ...................................................................... 9

*Navistar, Inc. v. U.S. E.P.A.,*
   No. 11-CV-449 RLW, 2011 WL 3743732 (D.D.C. Aug. 25, 2011) ......................... 13

*Nken v. Holder,*
   556 U.S. 418 (2009) ........................................................................................ 8

*Protect Democracy Project, Inc. v. U.S. Dep't of Def.,*
   263 F. Supp. 3d 293 (D.D.C. 2017) ............................................................... 17, 22

*Sampson v. Murray,*
   415 U.S. 61 (1974) ................................................................................................ 11

*Sherley v. Sebelius,*
   644 F.3d 388 (D.C. Cir. 2011)................................................................................. 9

*Truitt v. U.S. Dep't of State,*
   897 F.2d 540 (D.C. Cir. 1990)........................................................................... 3, 17

*Univ. of Texas v. Camenisch,*
   451 U.S. 390 (1981) ............................................................................................. 10

*Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n,*
   259 F.2d 921 (D.C. Cir. 1958)................................................................................. 8

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,*
   559 F.2d 841 (D.C. Cir. 1977)................................................................................. 8

*Wilbur v. CIA,*
   355 F.3d 675 (D.C.Cir.2004)........................................................................... 16, 20

*Winter v. Nat. Res. Def. Council,*
   555 U.S. 7, (2008) .................................................................................................. 8

*Wisc. Gas Co. v. FERC,*
   758 F.2d 669 (D.C. Cir. 1985)......................................................................... 11, 12

## STATUTES

5 U.S.C. § 552 ............................................................................................... *passim*

## REGULATIONS

39 C.F.R. § 265.3 ............................................................................................... 3, 17

39 C.F.R. § 265.8 ............................................................................................... 4, 17

## OTHER AUTHORITIES

H.R. Rep. No. 104-795, 1996 U.S.C.C.A.N. 3448 ................................................... 21

https://about.usps.com/newsroom/national-releases/2020/2020-05-29-marshall-to-election-
   officials-re-election-mail.pdf................................................................................ 13

https://about.usps.com/what/government-services/election-mail/welcome.htm#resources ... 13, 14

https://about.usps.com/who/leadership/hq-org.pdf ........................................................ 14

OIG, *Processing Readiness for Election and Political Mail for the 2018 Midterm Elections*, June 5, 2018, https://www.uspsoig.gov/sites/default/files/document-library-files/2019/NO-AR-18-007.pdf .................................................................................................................. 14, 15

OIG, *Service Performance of Election and Political During the 2018 Midterm and Special Elections*, Nov. 4., 2019, https://www.uspsoig.gov/sites/default/files/document-library-files/2019/19XG010NO000.pdf ...................................................................................... 15

OIG, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area*, July 7, 2020, https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf .................................................................................................. 15, 16

*Postal Service Publication 631, Official Election Mail—Graphic Design and Logos*, January 2020, https://about.usps.com/publications/pub631.pdf ............................................. 14

Postal Service, Election Mail 2020, https://about.usps.com/who/legal/foia/library.htm ........ 13, 15

Postal Service, FOIA Library, https://about.usps.com/election-mail/election-mail-resources.htm .......................................................................................................... 13, 14

Postal Service, Service Performance Results, https://about.usps.com/what/performance/service-performance/ .................................................................................................................. 16

Reuters, *Fact Check: U.S. Postal Service Will Deliver Mail Ballots Even with Insufficient Postage*, Aug. 11, 2020, https://www.reuters.com/article/uk-factcheck-two-stamps-ballots/fact-check-us-postal-service-will-deliver-mail-ballots-even-with-insufficient-postage-idUSKCN2571X3 ........................................................................................................ 15

## <u>INTRODUCTION</u>

In this Freedom of Information Act (FOIA) suit, Plaintiff—The Protect Democracy Project—seeks a preliminary injunction.  But Plaintiff does not seek a run-of-the-mill preliminary injunction, which would maintain the status quo.  Instead, Plaintiff requests a mandatory injunction that would provide it the full relief it seeks on the merits:  the production of all non-exempt documents responsive to its FOIA requests.  Specifically, Plaintiff requests that the Court order Defendant, the United States Postal Service (Postal Service), to produce documents in response to one of its requests within *24 hours* of the Court issuing an order on the preliminary injunction, and within 21 days as to the other request, which contains ten subparts.

Plaintiff's motion should be denied.  A standard preliminary injunction (i.e., one maintaining the status quo) is an extraordinary remedy that Courts should grant sparingly.  Mandatory injunctions, however, are to be even more sparingly granted.  And, "a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam).  Add Plaintiff's unrealistic timeline on top of that, and the Court should be well on its way to rejecting Plaintiff's request.

But Plaintiff has an even more fundamental problem.  It cannot demonstrate its entitlement to a mandatory preliminary injunction under the balancing test applied by courts, which comprises the following considerations:  (1) the extent to which Plaintiff would suffer any irreparable harm absent an injunction; (2) Plaintiff's likelihood of success on the merits of its claims; and (3) the harm to the Postal Service and public of issuing an injunction.  When seeking a mandatory preliminary injunction, a Plaintiff must make a higher showing than normally required as to either the merits or irreparable harm.

1

Plaintiff's motion fails as to irreparable harm.  Plaintiff contends that it will be irreparably harmed by not being able to disseminate information related to the Post Office and the upcoming election.  But there is an abundance of publicly available information related to many of the topics in Plaintiff's request, such as the Postal Service's outreach to state election officials, the technical requirements for creating a piece of election mail, the handling of ballots with insufficient postage, and the like.  Thus, Plaintiff can only speculate that the absence of a preliminary injunction will cause the kind of very significant harm that warrants the issuance of an injunction.

Plaintiff also is not likely to succeed on the merits, with respect to either the claims related to its June 22, 2020 FOIA request, and those related to its June 23, 2020 FOIA request.  As to both requests, Plaintiff claims that "Defendant is in violation of FOIA by [1] failing, within the statutorily prescribed time limit," to search for and produce documents, and [2] denying Plaintiff's request for expedition.  Compl., Aug. 12, 2020, ECF No. 1, ¶ 76.

Plaintiff's claims related to the June 22 request are likely to fail because Plaintiff has not exhausted its administrative remedies, as required by the FOIA.  The Postal Service issued a final determination as to that request, which informed Plaintiff of its right to file an administrative appeal.  But Plaintiff did not file an appeal.  Accordingly, its claims related to that request are likely to fail.

Plaintiff is no more likely to succeed on the merits as to the June 23 request.  All of the subparts of that request, save one[1], seek "[a]ny and all records reflecting, discussing, or otherwise

---

[1] The exception is subpart 2, which seeks "[a]ny and all organizational charts listing names and titles of individuals directly or indirectly involved in outreach to state election officials and/or political parties regarding the handling of election mail in the 2020 general election."  June 23 Req., at 1.  Unlike the other subparts, it does not contain the "reflecting, discussing, or otherwise relating to" language.  With respect to that request, the Postal Service has conducted a search and will promptly produce any non-exempt, responsive documents that is subject to the FOIA.  The remainder of the brief addresses the other subparts of the June 23 Request.

relating to" various topics.   The quoted language renders the request overbroad.   No "professional employee of the agency who was familiar with the subject area of the request" could "locate the record with a reasonable amount of effort."   *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990).   Finally, as to expedition, the request is moot because Plaintiff has not submitted a proper FOIA request.

Similarly, the balance of the equities weighs against the issuance of an injunction.   To respond to Plaintiffs burdensome request, which the Postal Service cannot even do on the timeline Plaintiff suggests, would consume the Postal Service's FOIA resources, pushing other requests to the back burner—and for quite some time.   Responding to Plaintiff's request with the haste Plaintiff demands would also make it difficult to properly redact responsive documents.   These real harms outweigh the speculative benefits of the injunction identified by Plaintiffs.

If this matter were before the Court on a dispositive motion, Plaintiff's claims likely would be rejected, owing to the exhaustion and overbreadth problems (among others).   Plaintiff cannot rescue these claims by dressing them up in a preliminary injunction motion that seeks full relief on the merits.   The Court should deny Plaintiff's motion.

## BACKGROUND

### I.  Statutory and Regulatory Background

The first step to obtaining documents under the FOIA is to submit a request to an agency. A request must "reasonably describe[ ]" the records sought.   5 U.S.C. § 552(a)(3)(A).   The Postal Service's regulations on this point state that "[r]equesters must describe the records sought in sufficient detail to enable Postal Service personnel to locate them with a reasonable amount of effort."   39 C.F.R. § 265.3(c).   Moreover, "[a] request that does not reasonably describe the records sought . . . will be deemed to be an improper FOIA request."   *Id.* § 265.3(f).   If, however, a requester submits a proper FOIA request, then the agency normally has 20 working days to make

a "determination" on the request, 5 U.S.C. § 552(a)(6)(A)(i), and to make records "promptly available" thereafter, *id.* § 552(a)(3)(A).   In certain circumstances, a requester is entitled to expedited processing of its FOIA request. 5 U.S.C. § 552(a)(6)(E)(i)(I), (II).   Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis.   Expedition, when granted, entitles requesters to move immediately to the front of the applicable processing queue, ahead of previously submitted requests, but at the end of expedited processing queue.

Prior to filing suit under the FOIA, a requestor must exhaust administrative remedies. There are two ways for a requester to exhaust administrative remedies under the FOIA:  1) actual exhaustion, *id.* § 552(a)(6)(A)(i), and 2) constructive exhaustion, *id.* § 552(a)(6)(C)(i).   Actual exhaustion occurs when a requester appeals a negative determination to the agency.  *See id.* § 552(a)(6)(A)(i); 39 C.F.R. § 265.8 ("Before seeking judicial review of a [Postal Service] component's adverse determination, a requester generally must first submit a timely administrative appeal.").   A requester constructively exhausts administrative remedies if the agency fails to make a determination on the request within twenty working days.  *Id.* § 552(a)(6)(C)(i).

## II.    Plaintiff's FOIA Requests and Requests for Expedited Processing

On June 22, 2020, Plaintiff submitted a FOIA request to the Postal Service seeking "[t]he outreach plan that was current as of June 15, 2020, governing contacts with state election officials and political parties regarding the anticipated increase in the volume of election mail in the 2020 general election."  June 22 Req., at 1 (attached as Exh. A to Prelim. Inj. Mot.).   Plaintiff requested expedited processing.  *Id.* at 1-3.

The next day, Plaintiff submitted a request to the Postal Service with 10 subparts.  June 23 Req., at 1-2 (attached as Exh. B to Prelim. Inj. Mot.).   The first subpart of the request resembled the request sent the previous day, seeking "[a]ny and all records reflecting, discussing, or otherwise relating to any outreach plan governing contacts with state election officials and/or political parties

regarding the anticipated increase in the volume of election mail in the 2020 general election." *Id.* at 1.  Eight of the remaining nine subparts of the request explicitly relate to the upcoming election, and the ninth relates to communications between the "Postmaster General or members of the Board of Governors and any employee of the Department of the Treasury, the Department of Justice, and the Office of Management and Budget." *Id*. at 2.  All subparts of the request save one (subpart 2), states that Plaintiff seeks "[a]ny and all records reflecting, discussing, or otherwise relating" to a specific topic. *Id.* at 1-2.  Again, Plaintiff sought expedited processing. *Id.* at 2-4.

The Postal Service responded to Plaintiff with a letter on June 29, 2020.  Duplicate Dismissal Letter, June 29, 2020 (attached as Exh. 1).  The letter stated that, "[u]pon review of your [June 22] FOIA request, I have determined your request for records listed above is a duplicate of Item No. 1 of your [June 23] request,"  and that "[t]his request item will be responded to in the response" to the June 23 request. *Id.* at 1.  Therefore, the letter continued, "this request is being closed as a duplicate request." *Id.*  The letter also alerted Plaintiff to its right to appeal this determination within 90 days. *Id.*  Plaintiff has not appealed that decision.  Declaration of Janine Castorina, Chief Privacy and Records Management Officer for the United States Postal Service, Aug. 24, 2020 ("Castorina Decl.), ¶¶ 10-11 (attached as Exh. 2).

On the same day, the Postal Service sent another letter to Plaintiff.  Referral and Expedition Letter, June 29, 2020 (attached as Exh. 3).  It assigned subparts 1-9 of the June 23 request to the Chief Marketing Officer, and subpart 10 to the Board of Governors. *Id.* at 2.  In other words, these components were assigned the duty of responding, on behalf of the Postal Service, to the assigned subparts.  The letter also denied Plaintiff's request for expedition and informed Plaintiff of the right to appeal that denial within 90 days. *Id.* at 2-3.  Plaintiff has not appealed that denial. Castorina Decl., ¶ 12.

The office of the Chief Marketing Officer sent a letter to Plaintiff on July 10, 2020.  July 10 Letter (attached as Exh. E).  The letter explains:

> While we wish to fully cooperate in processing your request, your requests are extremely broad as they seek, "Any and all records reflecting, discussing or otherwise relating to..." The type of search necessary to process this request would involve an extensive electronic and manual search of nearly the entire Postal Service, and would likely take thousands of hours to review all the potentially responsive records on a line by line basis. Accordingly, we will need more definitive information concerning the records you seek

*Id.* at 2.

Plaintiff responded to the office of the Chief Marketing Officer in an email dated July 15, 2020.  July 15 Email (attached as Exh. F to PI Mot.).  Plaintiff disputed the assertions that the records were insufficiently described and that responding to the June 23 request would be unduly burdensome.  Email at 1-2.  Nevertheless, Plaintiff agreed to limit "the request to records located within the offices of the Postmaster General, the Deputy Postmaster General, the Chief Operating Officer, the Area Operations Vice Presidents, and the General Counsel."  *Id.* at 2.  The Postal Service has not made a determination on subparts 1-9 and, by extension, has not produced any records in response to those subparts of the request.[2]

On July 21, 2020, the Board of Governors provided, on behalf of the Postal Service, a response to subpart 10 of Plaintiff's request, which seeks "[a]ny and all records reflecting, discussing, or otherwise relating to communications between the Postmaster General or members of the Board of Governors and any employee of the Department of the Treasury, the Department of Justice, and the Office of Management and Budget."  Board of Governor's Letter, July 21, 2020 (attached as Exh. 5).  The letter stated that the agency searched and identified "five (5) pages of

---

[2] On August 12, 2020, the office of the Chief Marketing Officer sent Plaintiff a letter extending the Agency's time to respond to subparts 1-9 for 10 days.  Aug. 12 Letter (attached as Exh. 4); *see also* 5 U.S.C. § 552(a)(6)(B)(i).

responsive documents, including three (3) emails and a two (2) page summary of a call between Postal Service Board of Governors Chairman Robert M. Duncan, Postal Service Governor Roman Martinez, and Secretary of Treasury Steven Mnuchin."[3]  *Id.* at 1.  Redacted copies of the emails were attached to the letter.  *Id.*  When conducting the search on subpart 10, the agency looked only for "communications" between the specified parties; it did not search for "[a]ny and all records reflecting, discussing, or otherwise relating" to the communications, due to the inadequacy of that description and the burdens of conducting such a search.  Castorina Decl. ¶ 21.  The letter alerted Plaintiff of its right to appeal, Board of Governor's Letter at 2.  Plaintiff has not filed an appeal. Castorina Decl. ¶ 20.

## III.    This Litigation

On August 12, 2020, Plaintiff filed this lawsuit.  *See* Pl.'s Compl, ECF No. 1.  Defendant has not yet filed a response to Plaintiff's Complaint, which is not due until September 16, 2020. Plaintiff served Defendant with a motion for a preliminary injunction on August 17, 2020.  *See* ECF Nos. 10-12.  Plaintiff seeks an order compelling the Postal Service to produce any documents responsive to subpart 1 of its June 23 request within *24 hours* of the Court issuing the order, and to produce non-exempt documents responsive to the other subparts within 21 days of the Court's

---

[3] The Postal Service inadvertently neglected to search for emails in the Postmaster General's Office when it conducted its initial search.  It has conducted a search of those emails and identified no additional responsive records.  Castorina Decl. ¶ 21.

order (or another date certain set by the Court).  Mem. of Points and Authorities in Support of Pl.'s

Mot. for a Prelim. Inj. ("PI Mot."), Aug. 12, 2020, ECF No. 3, at 4.

## ARGUMENT

### I.    Standard of Review

Preliminary injunctive relief "is 'an extraordinary remedy never awarded as of right.'"

*Friends of Animals v. U.S. Bureau of Land Mgmt.*, No. 17-0136, 2017 WL 499882, *3 (D.D.C.

Feb. 7, 2017) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24, (2008)); *see Munaf v.*

*Green*, 553 U.S. 674, 689 (2008) ("A preliminary injunction is an extraordinary and drastic

remedy") (citation omitted)).  It "should be granted only when the party seeking the relief, by a

clear showing, carries the burden of persuasion."  *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir.

2004).

A party moving for a preliminary injunction must establish (1) a substantial likelihood of

success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3)

that an injunction would not substantially injure other interested (nonmoving) parties; and (4) that

the public interest would be furthered by the injunction.  *CityFed Fin. Corp. v. Office of Thrift*

*Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995); *see also, e.g.*, *Wash. Metro. Area Transit Comm'n*

*v. Holiday Tours, Inc.*, 559 F.2d 841, 842–43 (D.C. Cir. 1977); *Va. Petroleum Jobbers Ass'n v.*

*Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).  The final two "factors merge when the

Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Although the D.C.

Circuit has not yet definitively decided whether *Winter* abrogates the "sliding scale" approach for

assessing these four factors previously applied in this Circuit, "[s]everal judges" on the Circuit

have "read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent,

free-standing requirement for a preliminary injunction.'"  *See Allied Progress v. Consumer Fin.*

*Prot. Bureau*, No. CV 17-686 (CKK), 2017 WL 1750263, at *2 (D.D.C. May 4, 2017) (quoting

*Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011)).  This Circuit has also emphasized that a showing of irreparable harm is an "independent prerequisite" for a preliminary injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

## II.    Preliminary Injunctive Relief Is Generally Not Appropriate in FOIA Cases

As an initial matter, preliminary injunctive relief is generally not appropriate in FOIA cases, for a number of reasons.

First, FOIA establishes its own specialized procedural framework controlling the processing of FOIA requests and procedures for FOIA litigation.  *See, e.g.*, 5 U.S.C. § 552(a)(3)(A) (providing that a FOIA request must reasonably describe the records sought and must be filed in accordance with published rules and procedures); *id.* § 552(a)(4)(C) (requiring responsive filing within thirty days of service of a complaint).  Courts should not casually sidestep this statutory framework through issuance of preliminary relief.

In addition, the traditional purpose of a preliminary injunction is to "preserve the status quo" so that the court can issue a meaningful decision on the merits.  *Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006) (citation omitted).  Therefore, when, as here, a movant seeks mandatory injunctive relief, *i.e.*, an injunction that "would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction."  *Elec. Info. Privacy Ctr. v. U.S. Dep't of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (citations omitted); *see also Nat'l Conf. on Ministry to the Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) ("A district court should not issue a mandatory preliminary injunction unless the facts and law clearly favor the moving party." (quotation omitted)).  An order compelling processing of a FOIA request would not merely preserve the status quo but would force specific action by Defendant.

Finally, because preliminary injunctive relief is not intended to provide plaintiffs with a means to bypass the litigation process and achieve rapid victory, "a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam); *see also Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits."). As Plaintiff has indicated, however, that is essentially what it seeks here: an injunction that the Department produce responsive records within 24 hours as to one request and within 21 days as to another. PI Mot. at 4. That is further indication that Plaintiff's motion is a tactic to circumvent the standard litigation process. *See Daily Caller v. U.S. Dept. of States*, 152 F. Supp. 3d 1, 6–7 (D.D.C. 2015) (noting that "in seeking a preliminary order requiring the State Department to process fully the plaintiff's outstanding FOIA requests, and produce all responsive non-exempt documents within twenty business days, the plaintiff essentially requests the full relief it seeks in filing its underlying Complaint").

For these reasons, Courts in this district routinely deny requests for preliminary injunctions in FOIA cases. *See, e.g.*, *Long v. U.S. Dep't of Homeland Sec.*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (given the "broad scope of plaintiff's requests," denying motion for preliminary injunction to compel processing within twenty days, and explaining that "[t]he government has not yet had a chance to review its files, prepare and file a dispositive motion, and provide the Court the information necessary to make a decision on any material that might be subject to an exemption"); *Allied Progress*, 2017 WL 1750263, at *1 (denying request for a preliminary injunction mandating expedited processing and production where requester failed to show a likelihood of success on the merits and irreparable harm); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*, No. 03-2078, slip op. at 1 (D.D.C. Oct. 20, 2003), Dkt. 4 (denying, *sua sponte*, a request "'enjoining defendant DOJ

from continuing to deny plaintiff expedited processing of plaintiff's Freedom of Information Act request'" because such relief "would effectively grant all the relief plaintiff seeks"), *vacated as moot* 2004 WL 2713119 (D.C. Cir. 2004). The Court should similarly deny Plaintiff's motion for preliminary injunctive relief here.

III.   **Even if Preliminary Injunctive Relief Were Appropriate in FOIA Cases, Plaintiff Has Failed to Meet its Heavy Burden to Show Entitlement to a Preliminary Injunction in this Case**

A.   **Plaintiff Has Failed to Demonstrate That It Will Suffer Irreparable Harm**

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm." *CityFed Fin. Corp.*, 58 F.3d at 747 (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974), internal quotation marks omitted). The D.C. Circuit "has set a high standard for irreparable injury." *In re Navy Chaplaincy*, 534 F.3d 756, 766 (D.C. Cir. 2008) (internal quotation marks and citation omitted). The party seeking injunctive relief must show that its injury is "both certain and great," and that it is "actual and not theoretical." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). It is a "well known and indisputable principle[]" that a "unsubstantiated and speculative" harm cannot constitute "irreparable harm" sufficient to justify injunctive relief. *Id.* Moreover, in the context of a mandatory injunction like the one sought here, if Plaintiff does not make a heightened showing of likelihood of success on the merits, then, as to the irreparable harm element of the test, it must demonstrate that that "extreme or very serious damage will result from the denial of the injunction." *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014).

In light of the abundance of publicly available information, Plaintiff cannot demonstrate that denying the requested injunction will cause a non-speculative irreparable harm, much less extreme or very serious damage. Plaintiff's argument for irreparable harm is that, absent a

preliminary injunction, it will be unable to disseminate information related to the Postal Service's preparedness for the upcoming election.  PI Mot. at 29-30.  But whether the inability to disseminate information constitutes a "certain and great" harm, *Wisc. Gas Co*., 758 F.2d at 67, or "extreme or very serious damage," *Elec. Privacy Info. Ctr*., 15 F. Supp. 3d at 39, logically depends on a comparison of the information already available to what Plaintiff seeks; courts have declined to find irreparable harm in light of other available information.  *See Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity,* 265 F. Supp. 3d 54, 70–71 (D.D.C. 2017) (declining to find irreparable harm in a Federal Advisory Committee Act case, while relying on FOIA cases regarding irreparable harm, because, while "[t]here may be other documents that could, in theory, further facilitate this public debate, [ ] based on the information presently available, it appears that the principal documents have or will be disclosed, and that the public and Plaintiff will have a substantial opportunity to debate and provide input  with respect to the work of the Commission"); *Daily Caller*, 152 F. Supp. 3d at 14 (holding that plaintiff will not suffer irreparable harm in a FOIA case, and reasoning, in part, that "the plaintiff does not dispute that some records requested by the plaintiff have already been released publicly, and are available on the State Department's website, as a result of other, related FOIA requests . . .Thus, the plaintiff has not been entirely stymied in its ability to review and provide press coverage of the records that are the subject of its FOIA requests."); *see also Animal Legal Def. Fund v. United States Dep't of Agric.*, No. 17-CV-00949-WHO, 2017 WL 2352009, at *9 (N.D. Cal. May 31, 2017) (concluding, with respect to a request for a preliminary injunction under the FOIA and the Administrative Procedure Act, that "[a]s plaintiffs now have access to many of the documents they have indicated are most crucial, and many of the remaining unposted documents are old and outdated reports, they have not demonstrated that they are likely to suffer irreparable harm through

frustration of mission absent immediate access to all APHIS documents"). Put otherwise, a plaintiff "'must demonstrate a causal connection between the alleged harm and the actions to be enjoined; a preliminary injunction will not issue unless it will remedy the alleged injuries.'" *Navistar, Inc. v. U.S. E.P.A.*, No. 11-CV-449 RLW, 2011 WL 3743732, at *2 (D.D.C. Aug. 25, 2011) (quoting *Hunter Group, Inc. v. Smith*, 164 F.3d 624 (4th Cir.1998)). And given the abundance of information already available regarding the topics at issue in Plaintiff's request (discussed below), Plaintiff can only speculate that a preliminary injunction will result in the release of materially new or different information, which if unreleased, would constitute a great or severe harm.

There is a wealth of publicly available information related to the topics in Plaintiff's request. Portions of Plaintiff's June 23 Request are copied below, with (i) a discussion of the information related to the subject that is already available, and, (ii) in some instances, a note about what the documents sought by Plaintiff would add—or, more precisely, would not add due to the likely privileged status of the requested documents.

- **"Any and all records reflecting, discussing, or otherwise relating to any outreach plan governing contacts with state election officials and/or political parties regarding the anticipated increase in the volume of election mail in the 2020 general election."** June 23 Req., at 1. On May 29, 2020, the General Counsel of the Postal Service wrote a letter to state and local election officials around the country regarding the relationship between the Postal Service's delivery process and the upcoming 2020 Election. That letter is available online at https://about.usps.com/newsroom/national-releases/2020/2020-05-29-marshall-to-election-officials-re-election-mail.pdf. The letter references the 2020 Election Mail Kit (Kit 600); it too is available online, along with other election related items, at Postal Service, FOIA Library, https://about.usps.com/election-mail/election-mail-resources.htm; *see also* https://about.usps.com/what/government-services/election-mail/welcome.htm#resources. More recently, the General Counsel sent state-specific letters related to the Postal Service's delivery process and the 2020 election to election officials in all 50 states. Those letters are also available online. Postal Service, Election Mail 2020, available at https://about.usps.com/who/legal/foia/library.htm. Any draft documents, as well many "discussi[ons]," to the extent they are internal to the government, pre-

decisional and deliberative, or include attorney-work product or attorney-client privileged information, would be exempt from disclosure under Exemption 5.  *See* 5 U.S.C. § 552(b)(5).

- "**Any and all organizational charts listing names and titles of individuals directly or indirectly involved in outreach to state election officials and/or political parties regarding the handling of election mail in the 2020 general election.**"  June 23 Req., at 1.  The Postal Service is processing this request, and, in any case, an organizational chart for the Postal Service is available on-line at https://about.usps.com/who/leadership/hq-org.pdf.

- "**Any and all records (including but not limited to records stored in a database) reflecting, discussing, or otherwise relating to communications with state, county, or local election officials, including but not limited to state secretaries of state and state, county, or local election boards.**" **June 23 Req., at 1**.  As noted above, the May 2020 and July 2020 letters from General Counsel of the Postal Service to state and local election officials around the country are available online, along with other election related items.  *See* https://about.usps.com/election-mail/election-mail-resources.htm;   https://about.usps.com/what/government-services/election-mail/welcome.htm#resources.  Moreover, as noted above, drafts and some discussion documents, to the extent they exist, would be exempt from disclosure under Exemption 5.  This proviso applies to all remaining categories to the extent they reference discussions.

- "**Any and all records reflecting, discussing, or otherwise relating to communications with vendors of election-related products and services, including but not limited to ballot printers and suppliers of envelopes and ink.**"  June 23 Req., at 1.  The May 29 letter to state and local election officials explains that "mailpiece design analysts will assist election officials in designing and preparing envelopes that are consistent with postal regulations, increase mailpiece visibility, facilitate the application of postmarks, and allow officials to receive available postage discounts. You may reach a mailpiece design analyst by calling . . . or by sending an email to  . . . ."  May 29 Letter, at 2-3.  What is more, *Postal Service Publication 631, Official Election Mail—Graphic Design and Logos*, January 2020, available at https://about.usps.com/publications/pub631.pdf, provides details about print size, print color, placement of information on the outside of a mailing, and other similar topics of interest to "vendors of election-related products and services" with respect to election mailings.

- "**Any and all records reflecting, discussing, or otherwise relating to the training of employees in connection with the delivery of election mail.**"  June 23 Req., at 2.  A 2018 report from the Postal Service's Office of Inspector General (OIG) discusses the need for timely training related to the delivery of election mail.  OIG, *Processing Readiness for Election and Political Mail for the 2018 Midterm Elections*,     June     5,     2018,at     2,     5,     7,     available

https://www.uspsoig.gov/sites/default/files/document-library-files/2019/NO-AR-18-007.pdf.

- **"Any and all records reflecting, discussing, or otherwise relating to policies, practices, and procedures concerning the delivery of election mail without postage."** June 23 Req., at 2. Earlier this month, the Postal Service issued a statement addressing the delivery of election mail with insufficient postage. *See* Reuters, *Fact Check: U.S. Postal Service Will Deliver Mail Ballots Even with Insufficient Postage*, Aug. 11, 2020, available at https://www.reuters.com/article/uk-factcheck-two-stamps-ballots/fact-check-us-postal-service-will-deliver-mail-ballots-even-with-insufficient-postage-idUSKCN2571X3. The Postal Service instructs carriers to deliver ballots with insufficient postage: "'[W]ith [respect to] insufficient or unpaid postage, it is the Postal Service's policy not to delay the delivery of completed absentee or vote-by-mail ballots.'" *Id.* (quoting Postal Service statement). "'In cases where a ballot enters the mail-stream without the proper amount of postage, the Postal Service will collect postage from the appropriate Board of Elections.'" *Id.* (quoting Postal Service statement).

- **"Any and all records reflecting, discussing, or otherwise relating to policies, practices, and procedures concerning the delivery of election mail in the following states: Arizona, Florida, Georgia, Michigan, North Carolina, Pennsylvania, Texas, and Wisconsin."** June 23 Req., at 2. As noted earlier, the Postal Service has publicly released the letters that it sent to election officials in all 50 states related to state-specific election mail issues, including the letters sent to the states listed in this subpart of Plaintiff's request. *See* Postal Service, Election Mail 2020, available at https://about.usps.com/who/legal/foia/library.htm.

- **"Any and all records reflecting, discussing, or otherwise relating to performance in delivering election mail on schedule for any presidential primary election—including but not limited to all records reflecting, discussing, or otherwise relating to any investigation conducted by the Office of the Inspector General in connection with the presidential primaries."** June 23 Req., at 2. In November 2019, the Postal Service Office of Inspector General (OIG) released a report "evaluat[ing] the U.S. Postal Service's performance in processing Election and Political Mail for the 2018 midterm and special elections." OIG, *Service Performance of Election and Political During the 2018 Midterm and Special Elections*, Nov. 4., 2019, at 1, available at https://www.uspsoig.gov/sites/default/files/document-library-files/2019/19XG010NO000.pdf. The OIG found that found that "the Postal Service's nationwide service performance score for Election and Political Mail was 95.6 percent." *Id.* at 1. Also, the OIG issued a report addressing certain issues related to the delivery of election mail during the spring 2020 presidential primary in Wisconsin. OIG, *Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area*, July 7, 2020, available at https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-

R20.pdf.  The Postal Service also provides, on its website, quarterly performance results for various types of mail delivered by the Postal Service.  *See* Postal Service, Service       Performance       Results,       available       at https://about.usps.com/what/performance/service-performance/.

In view of the wealth of publicly available information related to the categories of documents sought in Plaintiff's FOIA request, Plaintiff's speculative argument regarding the dissemination of information fails to meet is heavy burden of showing of irreparable harm, especially in the context of a mandatory injunction.

### B.  Plaintiff Has Failed to Establish a Likelihood of Success on the Merits

Before a court may enter a preliminary injunction, "[i]t is particularly important for the movant to demonstrate a substantial likelihood of success on the merits," because "absent a substantial indication of likely success on the merits, there would be no justification for the [C]ourt's intrusion into the ordinary processes of administration and judicial review."  *Hubbard v. United States*, 496 F. Supp. 2d 194, 198 (D.D.C. 2007) (internal quotation marks and citation omitted).  Plaintiff cannot do so.  And, relevant to this request for a mandatory injunction, Plaintiff certainly cannot "show[ ] *clearly* . . . [it] is entitled to relief.  *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 39.

Plaintiff argues that it is likely to succeed on the merits of its claim that the Postal Service "'owes it a determination on its [FOIA] requests,'" PI Mot. at 26, because it "failed to meet the statutory deadline for processing" its requests, *id.* at 24.  Plaintiff's argument is flawed.

As to the June 22 request, Plaintiff did not exhaust its administrative remedies.  Defendant provided a timely response, closing the request as duplicative.  Duplicate and Dismissal Letter, June 29, 2020, at 1 (attached as Exh. 1).  But Plaintiff did not appeal.  Castorina Decl ¶ 11.  Thus, it did not exhaust its administrative remedies and is unlikely to succeed on the merits.  *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C.Cir.2004) (per curiam) (explaining that "a requester under FOIA

must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal"); 39 C.F.R. § 265.8 ("Before seeking judicial review . . . a requester generally must first submit a timely administrative appeal.").

Plaintiff fares no better with respect to its June 23 request.  Plaintiff admits (as it must, given circuit precedent) that, under the FOIA statute, 5 U.S.C. § 552(a)(3)(A), "the time in which the agency must respond begins upon receipt of a proper FOIA request, which is one that reasonably describes the records sought." PI Mot. at 24 n.49 (brackets and quotation marks omitted); *see Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 185 (D.C. Cir. 2013).  But Plaintiff has not reasonably described the records that it seeks.  Thus, no statutory clock was triggered and no deadline has passed.[4]  Put simply, the Postal Service "is under no obligation to release records that have not been reasonably described." *Dale v. I.R.S.*, 238 F. Supp. 2d 99, 104–05 (D.D.C. 2002).

When assessing the propriety of the description of records in a FOIA request, the key question is whether the phrasing of the request would permit a "professional employee of the agency who was familiar with the subject area of the request" to "locate the record with a reasonable amount of effort." *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990); 39 C.F.R. § 265.3(c).  Plaintiff's request for "any and all records reflecting, discussing, or otherwise relating to" specified topics fails under this standards.  It is overbroad. *See* Castorina

---

[4] In any event, even if the Postal Service had missed the statutory processing deadline for the June 23 Request, that fact would not entitle Plaintiff to the imposition of a schedule requiring immediate production, as they request.  PI Mot. at 4.  Rather, "[t]he automatic 'penalty' for failing to meet FOIA's twenty-day timeline is not the imposition of another explicit timeline, but rather 'that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court.'" *Protect Democracy Project, Inc. v. U.S. Dep't of Def.*, 263 F. Supp. 3d 293, 302 (D.D.C. 2017) (quoting *Citizens for Responsibility & Ethics in Washington*, 711 F.3d at 189).  Production would still be unwarranted given Plaintiff's overbroad description of the records it seeks.

Decl. ¶¶ 15-18; *Cable News Network, Inc. v. Fed. Bureau of Investigation*, 271 F. Supp. 3d 108, 112 (D.D.C. 2017) (concluding that "the language 'relate in any way to' certain Comey memos was too vague" to constitute a proper FOIA request.); *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61–62 (D.D.C. 2013) (concluding that requests which sought all "records that 'relate to' each subject area" were "fatally overbroad").  The Postal Service alerted Plaintiff to the problems with the "reflecting . . . otherwise relating to" language and asked Plaintiff to provide "more definitive information" about the records sought.  July 10 Letter at 2.  While Plaintiff responded by limiting the offices from which it seeks records, it did not modify the problematic "refecting . . . and otherwise relating to" language flagged by the Postal Service.  *See* July 15 Email.

Plaintiff insists that its request is not overbroad, but its arguments are unpersuasive. Plaintiff contends that "any and all records language of the requests is common practice in the FOIA context and does not in itself suggest overbreadth. This is particularly the case where, as here, the request is limited in terms of timeframe and subject matter."  PI Mot. at 25 (internal quotations omitted).  To start, the problem with Plaintiff's request is not the "any and all records language," but the "reflecting, discussing, or otherwise relating to" language.  And regardless of whether or not *this language* is included in FOIA requests as a matter of "common practice," it is improper, as explained above, and it does, in fact, "in itself suggest overbreadth," *id.*: "[S]ince the requests asked for all records that relate to each subject area . . . they were inevitably subject to criticism as overbroad  . . . ."  *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. at 61.  Nor is this overbreadth cured by the fact that the request is limited "in terms of timeframe and subject matter."  The temporal limitation does not change the fact that "[t]he problem for an agency responding to such a request is that the lack of clarity leaves the agency to guess at the plaintiff's

intent." *CIA v. Sack*, 53 F. Supp. 3d 154, 164 (D.D.C. 2014); Castorina Decl. ¶¶ 15-18.  As for the subject matter limitation, the problem with the "reflecting . . . or otherwise relating" to language is precisely that it does not adequately limit the subject matter of the request sufficiently, but renders the request too broad.   Plaintiff also touts the fact that it limited its request to records held in specified offices.   PI Mot. at 26.   But that limitation, like the temporal one, does not address the fact that the "otherwise relating" language "leaves the agency to guess at the plaintiff's intent." *Sack*, 53 F. Supp. 3d at 164.  Plaintiff cites no cases in support of the proposition that its request is proper in scope.

One point deserves clarification—the handling of subpart 10 of Plaintiff's request.  The Postal Service handled this portion differently than it handled the other subparts, but nonetheless consistently with the conclusion that the "[a]ny and all records reflecting, discussing, or otherwise relating" language is improper.   (Recall, the Post Office assigned subparts 1-9 to the Chief Marketing Officer, but assigned subpart 10 to the Board of Governors.   Referral and Expedition Letter (attached as Exh. 3) at 2.) Rather than refusing to search for records because of the overbreadth of the request's language, the Postal Service conducted a search for the communications sought by this subpart of the request, but not for "[a]ny and all records reflecting . . . or otherwise relating" to these communications, in light of the overbreadth of the quoted5language.  *See* June 23 Req., at 2; Castorina Decl. ¶ 21.  (The Postal Service also produced the non-exempt records.  *See* Board of Governors Letter at 1.)  This approach was equally appropriate.  *See Leopold v. Dep't of Justice*, 301 F. Supp. 3d 13, 23-24 (D.D.C. 2018) (approving agency's decision to search based on a narrowing construction of Plaintiff's request, which would otherwise have been overbroad).  Moreover, Plaintiff cannot succeed on any claims related to subpart 10 because, as it has not filed an administrative appeal of the final determination rendered

by the agency, it has not exhausted its administrative remedies.  *See* Board of Governors Letter at 2; Castorina Decl. ¶ 20; *Wilbur*, 355 F.3d at 676.

Lastly, Plaintiff not only contends that it is entitled to a substantive response to its request, but it also argues that it is entitled to expedited processing of responsive documents.  PI Mot. at 27-29.  That request is moot.  Since the Postal Service has no obligation to respond to Plaintiff's FOIA request at all, it follows that, with respect to subparts 1-9, it has no obligation to do so in an expedited fashion.   And, in the case of subpart 10, the request is moot because the Postal Service has already provided its response, which it is in the course of supplementing.

### C. The Balance of Equities and the Public Interest Weigh Against a Preliminary Injunction

Along with alleged harm to Plaintiff, the Court must consider whether a preliminary injunction of the sort demanded by Plaintiff would be in the public interest or harm nonlitigants. *See Al-Fayed*, 254 F.3d at 303.  The relief Plaintiff seeks is not in the public interest and would harm nonlitigants, and for this reason as well, Plaintiff's motion should be denied.

First, granting the broad, mandatory injunction sought by Plaintiff would harm the interests of other individuals and groups who have filed FOIA requests.  As noted earlier, because of the (over)breadth of Plaintiff's request, searching for, identifying, and reviewing records responsive to Plaintiff's request would take thousands of hours of work.  Castorina Decl. ¶¶ 17-18.  The Postal Service's FOIA office is a small one, comprising only 6 employees (with another likely to be added in the coming weeks).  *Id.* ¶ 4.  The burden of responding to Plaintiff's request—especially in 21 days, if that were even possible, which it is not, *id.* ¶ 18—would consume the office.  *Id.* ¶¶ 17-18.  But Plaintiff's FOIA request is not the only one pending at the Postal Service.  *Id*. ¶ 22.  Currently, there are many other FOIA requests pending.  *Id.* ¶ 22.  The Postal Service's response to all of these other requests would be significantly delayed as a result of responding to Plaintiff's single,

overbroad request.  *Id*. ¶ 19.   Courts have consistently recognized this as a harm to the public interest.  *Nation Magazine v. U.S. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (entry of a preliminary injunction expediting a FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of [ ] FOIA"); *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 47 ("[A]llowing [a plaintiff] to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more pressing needs.")

Second, granting Plaintiff's request for an infeasible and extraordinary processing schedule, would compromise the public interest in ensuring that certain types of documents, the disclosure of which would cause harm, are redacted consistent with the FOIA exemptions.  *See* Castorina Decl. ¶ 23.  The exemptions listed in § 552(b) embody a judgment by Congress that the public interest would best be served by allowing agencies to withhold certain records—for example, information related to the agency's internal deliberative processes and information protected by the attorney-client privilege.  Indeed, Congress specifically recognized that, in certain cases, depending on the subject matter of the request, additional time would be required to ensure that the public's interest in preventing the public disclosure of these exempted documents was not compromised.  *See* H.R. Rep. No. 104-795, 1996 U.S.C.C.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken the interests protected by the FOIA exemptions.  Agencies processing some requests may need additional time to adequately review requested material to protect these exemption interests.").   Ordering the Department to disclose documents, not "as soon as practicable" as dictated by FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), but rather on an artificial, accelerated timetable, threatens to risk disclosure of statutorily exempt material.  *See Daily Caller*, 152 F. Supp. 3d at 14

("Requiring the agency to process and produce [requested] materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA."); *Protect Democracy Project*, 263 F. Supp. 3d at 302 ("Imposing on Defendants an arbitrary deadline for processing would run the risk of overburdening them, and could even lead to the mistaken release of protected information."); *Baker v. Consumer Fin. Prot. Bureau*, No. CV 18-2403(CKK), 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018) ("Ordering Defendant to process and release documents according to Plaintiff's timeline risks that, in its haste, Defendant will inadvertently release records which fall under a FOIA exception and Congress has decided should not be released."); *see also* Castorina Decl. ¶ 23.  For this reason as well, the public interest weighs against the issuance of the requested mandatory injunction.

Plaintiff's arguments regarding the balance of equities and the public interest are unpersuasive.  To start, Plaintiff argues that "Defendant cannot be 'burdened' by a requirement that it merely comply with the law."  PI Mot. at 31.  But the law does not require agencies to process overbroad requests, like Plaintiff's.  *See* § III.B. above.  Moreover, courts have recognized that, when deciding whether to issue a preliminary injunction in a FOIA case, they should take account of the harm to the processing of FOIA requests submitted by others.  *Nation Magazine*, 805 F. Supp. at 74; *Elec. Privacy Info. Ctr.*, 15 F. Supp. 3d at 47.  Nor, contrary to Plaintiff's suggestion, PI Mot. at 31, must the Postal Service go to Congress to address this harm:  The Court can—and should—obviate this harm by denying the requested injunction.  And Plaintiff's contention that "the targeted nature of Plaintiff's requests . . . ensures that USPS and other requesters will be burdened as minimally as possible by Plaintiff's request," PI Mot. at 31, is irrelevant:  The question is not whether Plaintiff could envision a version of the request that would be even more burdensome, but whether the severe burden imposed by the request as actually

formulated, when considered in the balance, weighs in favor issuing the requested injunction.  It does not.

Finally, in view of all of the circumstances previously discussed, including the wealth of available information, the speculative benefit that documents might provide to the public does not outweigh the harms that would be caused by granting the burdensome mandatory injunction sought by Plaintiff.  The public interest is best served by rejecting Plaintiff's request.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should deny Plaintiff's motion for a preliminary injunction.

Dated: August 24, 2020                           Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director
Federal Programs Branch

*/s/ Justin M. Sandberg*
JUSTIN M. SANDBERG
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Room 11004
Washington, D.C. 20005
Tel: (202) 514-5838
Email: justin.sandberg@usdoj.gov

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2020, I electronically transmitted the foregoing to the parties and the clerk of court for the United States District Court for the District of Columbia using the CM/ECF filing system.

/s/ Justin M. Sandberg
JUSTIN M. SANDBERG
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch