**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| THE PROTECT DEMOCRACY PROJECT, INC., |
| Plaintiff, |
| v. |
| UNITED STATES POSTAL SERVICE, |
| Defendant. |

Civil Action No. 1:20-cv-02214-TNM

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

David S. Frankel (NY Bar No. 1909712)*
Harry P. Morgenthau (NY Bar No. 5565502)*
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
dfrankel@kramerlevin.com
hmorgenthau@kramerlevin.com

Laurence M. Schwartztol (Bar No. MA0007)
PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
larry.schwartztol@protectdemocracy.org

*Attorneys for Plaintiff*

*Admitted Pro Hac Vice*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................3

    I.   Protect Democracy's Motion Properly Seeks Relief This Court is Empowered
to Grant ...........................................................................................................3

    II.  Protect Democracy is Likely to Succeed on the Merits..................................5

    III. Protect Democracy Will Be Irreparably Harmed Absent the Requested Relief..........11

    IV. The Balance of Equities and Public Interest Point Directly to Preliminary
Relief.............................................................................................................16

CONCLUSION.......................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allied Progress v. Consumer Fin. Prot. Bureau*,
  2017 WL 1750263 (D.D.C. May 4, 2017) .................................................................4

\* *Am. Oversight v. U.S. Dep't of State*,
  414 F. Supp. 3d 182 (D.D.C. 2019) ...........................................................7, 11, 16

*Animal Legal Def. Fund v. U.S. Dep't of Agric.*,
  2017 WL 2352009 (N.D. Cal. May 31, 2017) .........................................................16

*Cable News Network, Inc. v. FBI*,
  271 F. Supp. 3d 108 (D.D.C. 2017) ...........................................................................9

\* *Ctr. for Pub. Integrity v. U.S. Dep't of Defense*,
  411 F. Supp. 3d 5 (D.D.C. 2019) ..........................................................4, 5, 16, 17

*Daily Caller v. U.S. Dep't of State*,
  152 F. Supp. 3d 1 (D.D.C. 2015) ..........................................................................3, 16

*Dale v. IRS*,
  238 F. Supp. 2d 99 (D.D.C. 2002) ............................................................................9

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*,
  No. 03-2078, slip op. (D.D.C. Oct. 20, 2003), Dkt. 4 ..............................................5

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice*,
  416 F. Supp. 2d 30 (D.D.C. 2006) .......................................................................4, 18

*Freedom Watch, Inc. v. U.S. Dep't of State*,
  925 F. Supp. 2d 55 (D.D.C. 2013) ............................................................................9

*Judicial Watch, Inc. v. U.S. Nat'l Archives & Records Admin.*,
  2008 WL 11516012 (D.D.C. Sept. 30, 2008) .......................................................8, 9

*Lawyers' Comm. for Civil Rights Under Law v. Presidential Advisory Comm'n on
  Election Integrity*,
  265 F. Supp. 3d 54 (D.D.C. 2017) ..........................................................................15

*Long v. Dep't of Homeland Sec.*,
  436 F. Supp. 2d 38 (D.D.C. 2006) ............................................................................5

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) ................................................................................................11

*Payne Enters., Inc. v. United States*,
837 F.2d 486 (D.C. Cir. 1988) ........................................................................4, 11

*Pub. Citizen, Inc. v. Dep't of Educ.*,
292 F. Supp. 2d 1 (D.D.C. 2003) ..........................................................................6

\* *Pub. Emps. for Envtl. Responsibility v. EPA*,
314 F. Supp. 3d 68 (D.D.C. 2018) .....................................................................5, 10

*Sack v. CIA*,
53 F. Supp. 3d 154 (D.D.C. 2014) ........................................................................9

\* *Tereshchuk v. Bureau of Prisons*,
67 F. Supp. 3d 441 (D.D.C. 2014) ................................................................5, 6, 8

*Yeager v. DEA*,
678 F.2d 315 (D.C. Cir. 1982) ..............................................................................8

**Federal Statutes**

5 U.S.C, § 552 ...................................................................................................5, 7

**Other Authorities**

*Examining the Finances and Operations of the United States Postal Service
During COVID-19 and Upcoming Elections*, U.S. Senate Committee on
Homeland Security & Governmental Affairs (Aug. 21, 2020),
https://www.hsgac.senate.gov/examining-the-finances-and-operations-of-the-
united-states-postal-service-during-covid-19-and-upcoming-elections ..................12

*Fact Check: Postal Service Will Deliver Mail Ballots Even With Insufficient
Postage*, Reuters (Aug. 11, 2020), https://www.reuters.com/article/uk-
factcheck-two-stamps-ballots/fact-check-us-postal-service-will-deliver-mail-
ballots-even-with-insufficient-postage-idUSKCN2571X3.......................................13

Jacob Bogage et al., *DeJoy Pushes Back on Criticism of Changes to Post Service,
Says He Won't Restore Sorting Machines*, Wash. Post (Aug. 24, 2020),
https://www.washingtonpost.com/politics/2020/08/24/dejoy-testimony-usps-
house/ ..................................................................................................................3, 15

Jacob Bogage et al., *Postmaster General Announces He is 'Suspending' Policies
Blamed for Mail Delays*, Wash. Post (Aug. 18, 2020),
https://www.washingtonpost.com/politics/senate-will-hold-postal-service-
hearing-with-dejoy-on-friday-as-mail-delay-fears-grow/2020/08/18/5f978e76-
e14f-11ea-8dd2-d07812bf00f7_story.html .............................................................2

Letter from Carolyn B. Maloney, Chairwoman, Committee on Oversight and
    Reform, to Louis DeJoy, Postmaster General, USPS (Aug. 16, 2020),
    *available at*
    https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-
    08-16.CBM%20to%20DeJoy-PMG%20reWitnessInvite.pdf ...................................................2

Letter from Nancy Pelosi, Charles E. Schumer, Zoe Lofgren, Amy Klobuchar,
    Carolyn B. Maloney and Gary C. Peters to Louis DeJoy, Postmaster General,
    USPS (Aug. 14, 2020), *available at*
    https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-
    08-14.Pelosi%20et%20al.%20to%20DeJoy-
    PMG%20re%20Election%20Prep.pdf;........................................................................................2

Letter from Thomas J. Marshall, General Counsel/Executive Vice President,
    USPS, to Carolyn B. Maloney, Chairwoman, Committee on Oversight and
    Reform (Aug. 11, 2020), *available at*
    https://oversight.house.gov/sites/democrats.oversight.house.gov/files/docume
    nts/USPS%20to%20COR%2008-11-20%20re%20Election%20Prep.pdf .............................2

Letter from Thomas J. Marshall, General Counsel/Executive Vice President,
    USPS, to Carolyn B. Maloney, Chairwoman, Committee on Oversight and
    Reform (Aug. 11, 2020), *available at*
    https://oversight.house.gov/sites/democrats.oversight.house.gov/files/docume
    nts/USPS%20to%20COR%2008-11-
    20%20re%20Operational%20Changes.pdf .........................................................................1

Luke Broadwater et al., *The Postal Service Warns States It May Not Meet Mail-In
    Ballot Deadlines*, N.Y. Times (Aug. 15, 2020),
    https://www.nytimes.com/2020/08/15/us/elections/the-postal-service-warns-
    states-it-may-not-meet-mail-in-ballot-deadlines.html .............................................................2

Press Release, House Committee on Oversight and Reform, *DeJoy Admits That
    Mail Delays Are Far Worse Than Expected, But Fails to Take Responsibility*,
    https://oversight.house.gov/news/press-releases/dejoy-admits-that-mail-
    delays-are-far-worse-than-expected-but-fails-to-take ...............................................................2

*Protecting the Timely Delivery of Mail, Medicine, and Mail-in Ballots*, U.S.
    House Committee on Oversight and Reform (Aug. 24, 2020),
    https://oversight.house.gov/legislation/hearings/protecting-the-timely-
    delivery-of-mail-medicine-and-mail-in-ballots ......................................................................15

*US Postal Service: House Backs Election Cash Boost*, BBC (Aug. 23, 2020),
    https://www.bbc.com/news/election-us-2020-53876958 .........................................................3

## INTRODUCTION

In its moving papers, Protect Democracy demonstrated an urgent need to inform the

public regarding the Postal Service's readiness to handle voting by mail in the general election,

now just over two months away.  Numerous problems with election mail, resulting in late or

never delivered ballots, were revealed in this spring's primaries.  The coronavirus pandemic has

made it likely that millions more voters will choose to vote by mail in November, including in

early voting beginning soon in many states.  At the same time, operational changes put in place

by the recently appointed Postmaster General have led to slowdowns in all mail delivery,

including even Express Mail.  Congress has been investigating these matters in connection with

emergency funding for the agency and other potential legislation, but has been in large measure

stymied in its efforts to obtain needed information.

In just the two weeks since Plaintiff filed its motion, fast moving events have only

underscored the importance to the public debate of the information sought by Plaintiff.  To cite

just a few:  On August 11, USPS General Counsel Thomas J. Marshall advised Congress that

USPS is "currently unable to balance [its] costs with available funding sources to fulfill both [its]

universal service mission and other legal obligations"; he outlined a series of operational changes

aimed at cutting costs, "acknowledg[ing] that temporary service impacts can occur" as a result.[1]

Mr. Marshall also disclosed that in late July he had advised state election officials in 46 states

that their "deadlines for requesting and casting mail-in ballots are incongruous with the Postal

Service's delivery standards," creating a risk that ballots "will not be returned by mail in time to

---

[1] Letter from Thomas J. Marshall, General Counsel/Executive Vice President, USPS, to Carolyn
B. Maloney, Chairwoman, Committee on Oversight and Reform, at 2 (Aug. 11, 2020), *available
at*
https://oversight.house.gov/sites/democrats.oversight.house.gov/files/documents/USPS%20to%2
0COR%2008-11-20%20re%20Operational%20Changes.pdf.

be counted."[2]  Nevertheless, he sought to assure Congress that "the Postal Service remains fully committed to fulfilling our role in the electoral process."[3]  Reacting to this and other recent developments at USPS, the House Oversight Committee wrote to Postmaster General Louis DeJoy, on August 14 and again on August 16, seeking further information regarding the operational changes outlined by Mr. Marshall, including their potential effect on election mail, and requesting that Mr. DeJoy appear for a hearing on August 24.[4]  Much of the information sought by Congress has still not been provided.[5]  On August 18, Mr. DeJoy announced he would suspend the changes he had ordered until after the election.[6]  However, in testimony before the

---

[2] Luke Broadwater et al., *The Postal Service Warns States It May Not Meet Mail-In Ballot Deadlines*, N.Y. Times (Aug. 15, 2020), https://www.nytimes.com/2020/08/15/us/elections/the-postal-service-warns-states-it-may-not-meet-mail-in-ballot-deadlines.html.

[3] Letter from Thomas J. Marshall, General Counsel/Executive Vice President, USPS, to Carolyn B. Maloney, Chairwoman, Committee on Oversight and Reform, at 1, 3 (Aug. 11, 2020), *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/documents/USPS%20to%20COR%2008-11-20%20re%20Election%20Prep.pdf.

[4] Letter from Nancy Pelosi, Charles E. Schumer, Zoe Lofgren, Amy Klobuchar, Carolyn B. Maloney and Gary C. Peters to Louis DeJoy, Postmaster General, USPS (Aug. 14, 2020), *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-08-14.Pelosi%20et%20al.%20to%20DeJoy-PMG%20re%20Election%20Prep.pdf; Letter from Carolyn B. Maloney, Chairwoman, Committee on Oversight and Reform, to Louis DeJoy, Postmaster General, USPS (Aug. 16, 2020), *available at* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-08-16.CBM%20to%20DeJoy-PMG%20reWitnessInvite.pdf.

[5] *See, e.g.*, Press Release, House Committee on Oversight and Reform, *DeJoy Admits That Mail Delays Are Far Worse Than Expected, But Fails to Take Responsibility*, https://oversight.house.gov/news/press-releases/dejoy-admits-that-mail-delays-are-far-worse-than-expected-but-fails-to-take.

[6] Jacob Bogage et al., *Postmaster General Announces He is 'Suspending' Policies Blamed for Mail Delays*, Wash. Post (Aug. 18, 2020), https://www.washingtonpost.com/politics/senate-will-hold-postal-service-hearing-with-dejoy-on-friday-as-mail-delay-fears-grow/2020/08/18/5f978e76-e14f-11ea-8dd2-d07812bf00f7_story.html.

Senate Homeland Security and Governmental Affairs Committee on August 21, and the House

Oversight Committee on August 24, Mr. DeJoy made clear that, although he was agreeable to

not presently implementing *further* operational changes, he will not reverse any of the changes

already in place, notwithstanding the apparently severe service delays they had caused.[7]   On

August 22, the House passed legislation authorizing $25 billion in emergency funding and

reversing certain of the changes implemented by Postmaster General DeJoy.[8]   The Senate, which

returns from its recess after Labor Day, has yet to take up this legislation.

In sum, there is a pressing public interest in the information requested by Protect

Democracy, justifying expedited processing.  Nothing in Defendant's opposition rebuts this

showing.

## ARGUMENT

**I.      Protect Democracy's Motion Properly Seeks Relief This Court is Empowered to Grant**

Protect Democracy properly brings this preliminary injunction motion before the Court.

Defendant's argument that "preliminary injunctive relief is not intended to provide plaintiffs with

the means to bypass the litigation process and achieve rapid victory," Def. Br. 10, ignores the

proper role of the Court as a backstop to noncompliant agency responses to FOIA requests.  *See*

*Daily Caller v. U.S. Dep't of State,* 152 F. Supp. 3d 1, 10 (D.D.C. 2015) ("[W]here a requester

seeks judicial review . . . the agency may continue to process the request, and the court . . . will

supervise the agency's ongoing progress, ensuring that the agency continues to exercise due

---

[7] Jacob Bogage et al., *DeJoy Pushes Back on Criticism of Changes to Post Service, Says He Won't Restore Sorting Machines*, Wash. Post (Aug. 24, 2020), https://www.washingtonpost.com/politics/2020/08/24/dejoy-testimony-usps-house/.

[8] *US Postal Service: House Backs Election Cash Boost*, BBC (Aug. 23, 2020), https://www.bbc.com/news/election-us-2020-53876958.

diligence in processing the request.") (citation omitted). As the D.C. Circuit has explained, "The FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne Enters., Inc. v. United States,* 837 F.2d 486, 494 (D.C. Cir. 1988). "On numerous occasions, federal courts have entertained motions for a preliminary injunction in FOIA cases and, when appropriate, have granted such motions." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Justice,* 416 F. Supp. 2d 30, 35 (D.D.C. 2006) ("*EPIC*") (citing cases).

This is especially true where, as here, Congress is actively considering "the same subject matter" and "the requested documents are sought in order to inform the public on a matter of extreme national concern." *Ctr. for Pub. Integrity v. U.S. Dep't of Defense,* 411 F. Supp. 3d 5, 10 (D.D.C. 2019). Protect Democracy respects that a preliminary injunction is not a routine remedy. At the same time, requests for records directly relevant to current congressional debate on USPS's preparedness to administer the 2020 general election are not routine FOIA requests. Defendant does not even address this important aspect of the case law.

The other cases Defendant cites are inapposite. Each of them involved denial of a preliminary injunction for expedited processing. But, unlike the defendants in those cases, USPS has not made *any* substantive argument why expedited processing would be inappropriate here. Instead, Defendant relies entirely on its contention that Plaintiff's requests are overbroad and do not require a response at all, thereby, according to Defendant, "mooting" the request for expedited treatment.[9]

---

[9] Defendant's three cited cases are: *Allied Progress v. Consumer Fin. Prot. Bureau*, 2017 WL 1750263, at *4-6 (D.D.C. May 4, 2017), in which the court declined to order expedited processing because the plaintiff had not shown it was a "person primarily engaged in information dissemination," and had not demonstrated either an "urgency to inform" the public or a "substantial public interest in the records sought"; *Long v. Dep't of Homeland Sec.,* 436 F. Supp. 2d 38, 43 (D.D.C. 2006), in which the court would not order expedited processing because the plaintiff had not shown an "urgency to inform"; and *Elec. Privacy Info. Ctr. v. U.S. Dep't of*

## II.    Protect Democracy is Likely to Succeed on the Merits

Defendant seeks to portray Plaintiff's requests as fatally overbroad.  This is premised on both a flawed reading of the governing case law and a mistaken description of what compliance with Plaintiff's requests would entail.[10]

The statutory requirement that a record request "reasonably describes such records," 5 U.S.C. § 552(a)(3)(A), "calls for 'a reasonable description enabling the Government employee to locate the requested records,' but it is 'not to be used as a method of withholding records.'" *Pub. Emps. for Envtl. Responsibility v. EPA*, 314 F. Supp. 3d 68, 74 (D.D.C. 2018) (quoting *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 938 (D.C. Cir. 1970)).  Thus, "once an 'agency becomes reasonably clear as to the materials desired, FOIA's text and legislative history make plain the agency's obligation to bring them forth.'" *Id.* (quoting *Truitt v. U.S. Dep't of State,* 897 F.2d 540, 544 (D.C. Cir. 1990)).  Further, "the burden of demonstrating overbreadth is substantial." *Tereshchuk v. Bureau of Prisons*, 67 F. Supp. 3d 441, 454 (D.D.C. 2014).  In other words, "[w]hen the reasonableness of search and production is questioned, the agency has the burden to produce a sufficient explanation as to why it would be unreasonably burdensome." *Id.*; *see also*

---

*Justice*, No. 03-2078, slip op. at 1 (D.D.C. Oct. 20, 2003), Dkt. 4, a two-page *sua sponte* order in which the court, without citation to case law, appeared to determine that preliminary injunctions ordering expedited processing are *per se* improper, which is not the law.  *See, e.g., Ctr. for Pub. Integrity v. U.S. Dep't of Def.*, 411 F. Supp. 3d 5 (D.D.C. 2019) (granting preliminary injunction seeking expedited processing).

[10] With respect to Plaintiff's June 22 request, seeking production of USPS's current outreach plan, Defendant argues that Protect Democracy is not likely to succeed on the merits because it did not administratively appeal Defendant's June 29 decision to close the request as duplicative of the June 23 request.  Def. Br. 16-17.  But the June 22 request remains pending, having been merged into item no. 1 of the June 23 request.  An administrative appeal would have made little sense, and it remains the case that USPS has not provided the outreach plan – a single, specifically identified document requiring no searching and imposing no burden.  So, too, although Defendant makes much of it (Def. Br. 1, 7, 10), Plaintiff's request that the Court order production of the outreach plan within 24 hours is both reasonable and doable.

*Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1, 6 (D.D.C. 2003) (rejecting the agency's argument that the request at issue was unduly burdensome despite the agency's affidavit stating that the request would require it to manually search 25,000 paper files – a costly and time-consuming endeavor – and would also require the agency "to send the files from Texas to California, or employees from California to Texas, to complete the search").

Defendant argues that Plaintiff's requests – even as narrowed in response to Defendant's request for clarification – are not sufficiently focused to satisfy FOIA.  Def. Br. 18-19.  In fact, as noted in Plaintiff's moving brief, they are limited as to time; limited to just a few offices within USPS which Plaintiff is asking to be searched; and limited to a series of specifically defined, easily understood subject matters related to election mail.  Moreover, upon review, Defendant's own stated basis for its overbreadth claim undermines rather than supports it.

*First*, USPS states that because its "Digital Safe" contains all USPS emails since July 1, 2009, the Safe contains "billions of emails."  Declaration of USPS Chief Privacy and Records Management Officer Janine Castorina ("Castorina Decl.") ¶ 17.  But, as noted, Plaintiff seeks only records from March 1, 2020 to the date searches are run, a small subset of that date range – as of today, roughly 4.6%, or 6 out of 132 months – with many fewer documents to review, and an even smaller volume once search terms are applied.

*Second*, Ms. Castorina states that the Safe "can only be searched by specific email address or general search terms," and that "[a]bsent a targeted search by email address, along with specific search terms, any search within the Digital Safe will return with tens of millions of documents, most of which will not even be relevant to the issues at hand."  *Id*.  But Plaintiff seeks only "records located within the offices of the Postmaster General, the Deputy Postmaster General, the Chief Operating Officer, the Area Operations Vice Presidents, and the General

6

Counsel." Schwartztol Decl. Exh. F. Presumably, USPS can easily identify each employee who has worked in those offices since March 1, 2020 and can run a search term targeted email search for that employee.

*Third*, Ms. Castorina states that the terms "reflecting" and "otherwise relating" in Protect Democracy's requests are overly broad because they would require the agency to apply "a subjective standard, making interpretation impossible." Castorina Decl. ¶ 15. But "reflecting" and "otherwise relating" are terms of art that government officials (and other litigants as well) regularly employ and have no difficulty understanding. Courts have not hesitated to order compliance with FOIA requests using such terms. *See, e.g.*, *Am. Oversight v. U.S. Dep't of State,* 414 F. Supp. 3d 182, 183 (D.D.C. 2019) (granting preliminary injunction ordering compliance with FOIA requests for "documents reflecting communications" between certain persons and on certain subject matters).

Indeed, FOIA itself employs these very words in describing how agencies are to respond to requests. For example, agency officials are to apply their judgment and withhold responsive records that are "related solely to the internal personnel rules and practices of an agency," or "related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions." 5 U.S.C. § 552. In short, government officials can and do reasonably construe these terms without difficulty. To the extent that the government's position is that any request with the terms "reflecting" or "otherwise relating" is inherently overbroad, the Court should reject it because it would permanently handicap FOIA requesters, who by and large cannot identify in advance the specific documents they are seeking. No single word or phrase categorically excuses an agency from searching for responsive records; all that matters is that the request "relates to a discrete and

logically coherent category of documents." *Judicial Watch, Inc. v. U.S. Nat'l Archives & Records Admin.*, 2008 WL 11516012, at *3 (D.D.C. Sept. 30, 2008).

Finally, as to subject matter, each item of Plaintiff's requests, other than Item 10, specifically targets a different aspect of USPS's preparation for administering voting by mail in the 2020 general election.  It would not be difficult to develop search terms to target these precise requests.  Because Ms. Castorina's declaration fails to consider the properly narrowed nature of Plaintiff's requests, but instead proceeds as if the USPS FOIA Office was conducting searches of the *entire* Digital Safe, her projections as to the amount of time that it would take to process Plaintiff's request are incorrect.[11]

Defendant has thus failed to meet its "substantial burden" to demonstrate overbreadth. *Tereshchuk*, 67 F. Supp. 3d at 454.  Although Protect Democracy appreciates that its requests may require USPS employees to review a substantial number of documents, FOIA requests may not "be denied based on sheer volume of records requested" because the statute "puts no restrictions on the quantity of records that may be sought."  *Id.* at 454-55; *see also Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) ("[T]he number of records requested appears to be irrelevant to the determination whether they have been 'reasonably described.'"); *Judicial Watch*,

---

[11] As to Item 10, Defendant's answering brief notes "one point of clarification."  It states that "[r]ather than refusing to search for records because of the overbreadth of the request's language, the Postal Service conducted a search for the communications sought by this subpart of the request, but not for '[a]ny and all records reflecting . . . or otherwise relating' to these communications, in light of the overbreadth of the quoted . . . language."  Def. Br. 19.  By contrast, the agency's July 21 letter made no mention of limiting the search to "communications" (rather than records relating to communications), stating simply that "[t]he Postal Service has conducted a search for responsive documents."  Schwartztol Decl. Exh G.

Defendant identified as responsive a memorandum describing a telephone conference among several government officials (although it withheld the document pursuant to a FOIA exemption).  The memorandum is an example of a document "reflecting or relating to a communication" – demonstrating the appropriateness of Plaintiff's requests using that formulation.

2008 WL 11516012, at *3 ("Otherwise valid FOIA requests are not overbroad or unreasonable simply because they seek *a very large number* of documents.").

Further, comparing Plaintiff's requests, in light of Ms. Castorina's declaration, to the cases cited by Defendant, it is apparent that Plaintiff's requests are not impermissibly overbroad. In *Freedom Watch, Inc. v. U.S. Dep't of State*, 925 F. Supp. 2d 55 (D.D.C. 2013), the plaintiff sought "all" documents that "refer[red] or relate[d] to" 63 different categories of documents, with no time restrictions, and it sent its request to seven agencies. *Id*. at 57. As the Court noted, the categories of documents requested were stunningly wide-ranging, seeking "just about everything [the agencies] ha[d] regarding, among other things, Iran, China, Venezuela, Russia, sanctions, waivers, and communications between the Secretary of State, the Secretary of the Treasury, and the President." *Id*. at 61. The plaintiff in *Sack v. CIA*, 53 F. Supp. 3d 154 (D.D.C. 2014), similarly sought all records that "pertain[ed] in whole or in part (*all years, all classifications*)" to a complete list of closed Inspector General investigations and reports. *Id*. at 164 (emphasis added). In *Cable News Network, Inc. v. FBI*, 271 F. Supp. 3d 108 (D.D.C. 2017), there were likewise no time restrictions. And in *Dale v. IRS*, 238 F. Supp. 2d 99 (D.D.C. 2002), the plaintiff's request was fundamentally deficient because it "d[id] not specify what records he seeks, for what years, and located at which office of the IRS." *Id*. at 104.

Importantly, the plaintiffs in each of Defendant's cited cases failed to engage with the defendant agencies to discuss narrowing their requests, ignoring their statutory obligation to do so and going straight to court instead. *See Freedom Watch*, 925 F. Supp. 2d at 62; *Sack*, 53 F. Supp. 3d at 165; *Cable News Network*, 271 F. Supp. 3d at 112; *Dale*, 238 F. Supp. 2d at 104. Here, of course, the opposite is true. In its July 15 letter responding to Defendant's request for clarification, Plaintiff acknowledged that it was "in all of our interests to minimize the burden

that this request would impose on the Postal Service."  In addition to voluntarily narrowing its requests to encompass only several offices within the agency, Plaintiff also asked the USPS FOIA Officer to identify "any specific information on which aspects of the request impose disproportionate burdens, or any suggestions on how to streamline the request," stating that Plaintiff "would be happy to hear from you and work with you to narrow the request." Schwartztol Decl. Exh. F.  Defendant never responded.[12]

The Court should reject Defendant's attempt to "constru[e] . . . [Plaintiff's] FOIA request far more broadly than the text supports in a thinly veiled effort to make the request more complex and burdensome than it is."  *Pub. Emps. for Envtl. Responsibility*, 314 F. Supp. 3d at 79.

Finally, Defendant makes no substantive argument at all addressing Plaintiff's extensive showing of the need for expedited treatment of its requests in advance of the upcoming election. Instead, Defendant says only that because an improperly overbroad request need not be responded to, the request for expedited treatment is "moot."  For the reasons described here, the requests are not overbroad, and Plaintiff's essentially uncontested motion for expedited processing should be granted.

---

[12] Although Defendant did not respond to Plaintiff's offer to discuss further methods for narrowing the requests, Defendant did write to Plaintiff on August 12, 2020, several hours after Plaintiff filed its Complaint, seeking to extend its time to respond to Plaintiff's request from 20 to 30 days due to "unusual circumstances" and indicating it would provide its response on August 27 (30 business days from July 15). Def. Br. Exh. 4.  As Defendant notes in its opposition brief, "the time in which the agency must respond begins upon receipt of a proper FOIA request, which is one that reasonably describes the records sought."  Def. Br. 17.  Thus, it appears that the USPS FOIA Office determined that, as modified on July 15, Plaintiff's June 22 and June 23 requests were proper requests.

### III.      Protect Democracy Will Be Irreparably Harmed Absent the Requested Relief

An informed public equipped to make its opinions known to its elected representatives is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 172 (2004).  Information about government activity is of significantly diminished value when it comes after the public's ability to shape action based on it.  *See, e.g*., *Payne Enters.*, 837 F.2d at 494 ("[S]tale information is of little value.").  Put differently, "[w]hen 'time is necessarily of the essence,' the harm in agency delay is more likely to be irreparable." *Am. Oversight*, 414 F. Supp. 3d at 186 (granting preliminary injunction in light of ongoing impeachment inquiry and ordering compliance with FOIA requests for documents reflecting (i) communications between senior State Department officials and President Trump's personal lawyer, Rudolph Giuliani, and (ii) communications between State Department officials and the White House regarding recall of Ambassador to Ukraine Marie Yovanovitch) (quoting *EPIC*, 416 F. Supp. 2d at 40-41).

Defendant argues Protect Democracy will not suffer irreparable harm because of the supposed existence of a "wealth" and "abundance" of "publicly available information" on the subject matters of Plaintiff's requests.  In fact, Defendant points to just a handful of official USPS public statements, which barely scratches the surface.  Specifically, Plaintiff's June 23 request includes these items (in bold), with Defendant's description of the available documents it claims are sufficient:

1. **Any and all records reflecting, discussing, or otherwise relating to any outreach plan governing contacts with state election officials and/or political parties regarding the anticipated increase in the volume of election mail in the 2020 general election.**

   Defendant identifies three items: a May 29 letter from USPS General Counsel Thomas J. Marshall to state election officials; the 2020 Election Mail Kit (Kit 600); and late-July letters from Mr. Marshall to election leaders in all 50 states.  *See* Def. Br. 13.

Conspicuously absent is the document Plaintiff specifically identified in its June 22 request – the USPS outreach plan governing contacts with state election officials and political parties regarding the anticipated increase in the volume of election mail in the 2020 general election. Further, as Postmaster General DeJoy acknowledged in testimony before the Senate Homeland Security and Governmental Affairs Committee on August 21, the three documents noted by Defendant are only a small portion of USPS's outreach to state election officials. In response to a question from Senator Ron Johnson, Mr. DeJoy stated, "We had over 50,000 contacts before my arrival with the state election boards to help them understand the mail processing procedures of the Postal Service."[13] And in response to Senator Maggie Hassan's question whether "the letters that you and the general counsel have sent to Congress so far contained your full plan for ensuring the processing and delivery of all election mail," Mr. DeJoy assured the senator that "there are detailed processes that we are going through," including an "expanded election committee."[14] Indeed, Mr. DeJoy agreed to Senator Hassan's request that USPS provide these documents reflecting these "detailed plans" to Congress, although that does not appear to have occurred.[15]

2. **Any and all organizational charts listing names and titles of individuals directly or indirectly involved in outreach to state election officials and/or political parties regarding the handling of election mail in the 2020 general election.**

   Defendant has agreed to process this request. *See* Def. Br. 14.

3. **Any and all records (including but not limited to records stored in a database) reflecting, discussing, or otherwise relating to communications with state political party officials**.

   Defendant does not cite any documents regarding this request.

4. **Any and all records (including but not limited to records stored in a database) reflecting, discussing, or otherwise relating to communications with state, county, or local election officials, including but not limited to state secretaries of state and state, county, or local election boards.**

   Defendant again cites the May 2020 and July 2020 letters from General Counsel Marshall to state election officials. *See* Def. Br. 14.

---

[13] *Examining the Finances and Operations of the United States Postal Service During COVID-19 and Upcoming Elections*, U.S. Senate Committee on Homeland Security & Governmental Affairs (Aug. 21, 2020), https://www.hsgac.senate.gov/examining-the-finances-and-operations-of-the-united-states-postal-service-during-covid-19-and-upcoming-elections (advance video to 17:17).

[14] *Id*. at 1:06:25.

[15] *Id*.

As noted above (at Item 1), USPS has admitted that these materials reflect only a tiny portion of the documentation concerning the agency's outreach to state election officials.

5. **Any and all records reflecting, discussing, or otherwise relating to communications with vendors of election-related products and services, including but not limited to ballot printers and suppliers of envelopes and ink.**

Defendant again cites General Counsel Marshall's May 29 letter, as well as a USPS guide for proper use of the "Official Election Mail Logo." *See* Def. Br. 14.

Neither of these documents, which are both directed at state election officials, is a "communication[] with [a] vendor of election-related products and services," nor do they relate to such communications.

6. **Any and all records reflecting, discussing, or otherwise relating to the training of employees in connection with the delivery of election mail.**

Here, Defendant cites a June 2018 report by the USPS Office of the Inspector General ("OIG") regarding preparation for the 2018 midterm elections. *See* Def. Br. 14-15.

A June 2018 OIG report has no bearing on Plaintiff's request, which seeks documents only from March 1, 2020 to the present. Defendant is effectively declining to search for and produce any responsive documents on the issue of employee training for voting by mail, at the same time it has been publicly claiming its personnel are well equipped for the job.

7. **Any and all records reflecting, discussing, or otherwise relating to policies, practices, and procedures concerning the delivery of election mail without postage.**

Defendant cites to an article describing its policy on delivery of mail without postage. *Fact Check: Postal Service Will Deliver Mail Ballots Even With Insufficient Postage*, Reuters (Aug. 11, 2020), https://www.reuters.com/article/uk-factcheck-two-stamps-ballots/fact-check-us-postal-service-will-deliver-mail-ballots-even-with-insufficient-postage-idUSKCN2571X3.

This is a start, but the same article quotes USPS as stating that it is "proactively working with state and local election officials" on mailing requirements including postage. These interactions are presumably reflected in emails, memoranda or other documents, and are clearly relevant to a full understanding of the issue.

8. **Any and all records reflecting, discussing, or otherwise relating to policies, practices, and procedures concerning the delivery of election mail in the following states: Arizona, Florida, Georgia, Michigan, North Carolina, Pennsylvania, Texas, and Wisconsin.**

Defendant again cites the May 2020 and July 2020 letters from General Counsel Marshall to state election officials. *See* Def. Br. 15.

As noted above (at Item 1), USPS has admitted that these materials reflect only a small portion of the agency's outreach to state election officials. Nor do they purport to reflect the full range of USPS's material policies concerning election mail delivery in the relevant states.

9. **Any and all records reflecting, discussing, or otherwise relating to performance in delivering election mail on schedule for any presidential primary election – including but not limited to all records reflecting, discussing, or otherwise relating to any investigation conducted by the Office of the Inspector General in connection with the presidential primaries.**

Defendant cites two OIG reports, a November 2019 report "evaluat[ing] the U.S. Postal Service's performance in processing Election and Political Mail for the 2018 midterm and special elections" and a July 2020 report "addressing certain issues related to the delivery of election mail during the spring 2020 presidential primary in Wisconsin." *See* Def. Br. 15. Defendant also points to "quarterly performance results for various types of mail delivered by the Postal Service." Def. Br. 16.

First, Plaintiff's request seeks more than just OIG reports. To the extent there are other records evaluating USPS's election mail performance, they are plainly relevant and should be readily identified. Moreover, the Wisconsin report (the only recent OIG report of the three) concerned issues in a geographical area – the Milwaukee Processing & Distribution Center Service Area. Of course, as described by Plaintiff in its opening brief, and entirely ignored by Defendant in its opposition, election mail delays occurred across the country during the recent presidential primaries, and any USPS documents addressing those performance problems are highly relevant. *See, e.g.*, Pl. Br. 9. Finally, none of the quarterly performance results address election mail.

10. **Any and all records reflecting, discussing, or otherwise relating to communications between the Postmaster General or members of the Board of Governors and any employee of the Department of the Treasury, the Department of Justice, and the Office of Management and Budget.**

Defendant has provided a limited number of documents in response to this request.

Importantly, internal USPS documents that *have* been made public in recent days and weeks have demonstrated apparent inconsistencies. For instance, internal Postal Service documents circulated to mid-level managers and reported on by *The Washington Post* showed that Postmaster General DeJoy cracked down on overtime and additional delivery trips meant to

ensure on-time mail service, despite the fact that Mr. DeJoy initially denied in sworn testimony

that he had issued any such guidance.[16]  Similarly, an August 12 document entitled "Service

Performance Measurement for the PMG Postmaster General Briefing," which was obtained by

the House Oversight and Reform Committee and confirmed as authentic by USPS, showed

service degradations of nearly 10 percent since July, a significantly higher figure than had been

publicly suggested by USPS.[17]  This led Committee Chair Carolyn Maloney to conclude that Mr.

DeJoy was "withholding information from us, concealing documents, and downplaying the

damage that [he is] causing."[18]

        In light of the limited information that remains publicly available, the cases cited by

Defendant are plainly inapposite.  In *Lawyers' Comm. for Civil Rights Under Law v. Presidential

Advisory Comm'n on Election Integrity*, 265 F. Supp. 3d 54 (D.D.C. 2017), a case brought under

the Federal Advisory Committee Act rather than FOIA, the plaintiff sought a temporary

restraining order and preliminary injunction directing the defendants to hold an upcoming

meeting open to the public, and to publicly disclose certain records prior to the meeting.  *Id*. at

58.  The court determined that the plaintiffs had failed to demonstrate irreparable harm after the

defendants agreed to open the meeting to the public and disclose the materials that would be used

at the meeting.  *Id*. at 70-71.  In other words, the plaintiffs failed to demonstrate irreparable harm

---

[16] Jacob Bogage et al., *DeJoy Pushes Back on Criticism of Changes to Post Service, Says He Won't Restore Sorting Machines*, Wash. Post (Aug. 24, 2020), https://www.washingtonpost.com/politics/2020/08/24/dejoy-testimony-usps-house/.

[17] *Protecting the Timely Delivery of Mail, Medicine, and Mail-in Ballots*, U.S. House Committee on Oversight and Reform (Aug. 24, 2020), https://oversight.house.gov/legislation/hearings/protecting-the-timely-delivery-of-mail-medicine-and-mail-in-ballots (advance video to 47:38).

[18] *Id*. at 54:50.

because they had received virtually everything they had asked for.  Similarly, in *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 2017 WL 2352009 (N.D. Cal. May 31, 2017), a case brought under FOIA's reading room provision, the agency had reposted on its website "tens of thousands" of documents that had been the subject of the plaintiff's request, including "many of the documents [the plaintiff] ha[d] indicated [we]re most crucial."  *Id.* at *1, *9.  Finally, in *Daily Caller v. U.S. Dep't of State*, which concerned requests related to former Secretary of State Hillary Clinton's email practices, considerable material had already been released publicly, and the State Department had indicated that it was processing the plaintiff's requests.  152 F. Supp. 3d at 13-14.

## IV.    The Balance of Equities and Public Interest Point Directly to Preliminary Relief

The public has a vital interest in a full understanding of USPS's preparations for the 2020 general election.  Moreover, the public's assessment of those preparations is vital to Congress's ongoing debate over potential legislation, including the bill already passed by the House of Representatives providing additional funding to USPS and restricting operational changes. Defendant argues that countervailing interests weigh more heavily against a preliminary injunction.  Their arguments fail.

*First*, Defendant protests the unfairness of line jumping over other expedited requests, which "would harm the interests of other individuals and groups who have filed FOIA requests." Def. Br. 20.  But urgency is a matter for the Court to determine, and not all requests are equally urgent.  Protect Democracy submits that "[t]his is the extraordinary case where the public interest favors placing [its] requests ahead of other requests in the . . . FOIA queue."  *Am. Oversight*, 414 F. Supp. 3d at 187; *see also Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 14 (concluding that although "[t]he grant of a preliminary injunction in [that] case [would] likely

place Plaintiff's request ahead of others in Defendants' FOIA queues[,] extraordinary circumstances . . . warrant[ed] such line-cutting").

The same line-jumping is warranted here.  In *Center for Public Integrity*, FOIA requesters sought records including communications between the Department of Defense and the Office of Management and Budget regarding the release of congressionally appropriated funds for military aid to Ukraine.  *Id*. at 8.  The court recognized that the documents at issue were directly relevant to congressional impeachment proceedings stemming from President Trump's direction that military aid to Ukraine be withheld.  *Id*. at 10.  Under those circumstances, "[o]nly an informed electorate can develop its opinions and persuasively petition its elected officials to act in ways which further the aims of those opinions . . . .  [W]here the records are sought to inform an imminent public debate, courts in this Circuit have granted preliminary injunctions." *Id*.  This case is analogous to *Center for Public Integrity*.  Following major operational changes and a sharp decline in performance, USPS and its preparedness for voting by mail have become front page news.  Congress is presently considering legislation to address these issues and ensure that USPS is able to effectively process the anticipated surge of election mail.  Recognizing that the limited materials already released publicly by USPS are insufficient, members of Congress have continually pressed Postmaster General DeJoy for many of the materials sought in Plaintiff's requests.  And as noted above, internal USPS documents that *have* been released publicly in recent days have proven vital to Congress's investigation.  Preliminary relief is justified here so that "an informed electorate can develop its opinions and persuasively petition its elected officials to act in ways which further the aims of those opinions." *Ctr. for Pub. Integrity*, 414 F. Supp. 3d at 10.

*Second*, Defendant argues that granting Protect Democracy's requested relief risks the inadvertent disclosure of exempt materials.  This is a general consideration about practicability that, without specifics, the government can use as an excuse not to abide by any expedited schedule.  *EPIC*, 416 F. Supp. 2d at 42 (granting preliminary injunction; "[v]ague suggestions that inadvertent release of exempted documents *might* occur are insufficient to outweigh the very tangible benefits that FOIA seeks to further – government openness and accountability").  This Court is well able to subject this general protestation to close scrutiny and determine for itself how quickly Defendant can produce documents.  If there exist segregable, informative documents that can quickly be processed and released – which is certainly the case with the sole document requested in Plaintiff's June 22 letter, USPS's election outreach plan as of June 15, and may well be true of other categories – the public value of receiving that information in time to contribute to the congressional debate is more than worth the strain on the agencies in producing them as quickly as truly practicable under court supervision.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a preliminary injunction should be granted.

Dated: August 27, 2020

<div style="margin-left:40%">

Respectfully submitted,

/s/ David S. Frankel

David S. Frankel (NY Bar No. 1909712)*
Harry P. Morgenthau (NY Bar No. 5565502)*
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
dfrankel@kramerlevin.com
hmorgenthau@kramerlevin.com

</div>

Laurence M. Schwartztol (Bar No. MA0007)
PROTECT DEMOCRACY PROJECT, INC.
15 Main Street, Suite 312
Watertown, MA 02472
Telephone: (202) 579-4582
Facsimile: (929) 777-8428
larry.schwarztol@protectdemocracy.org

*Attorneys for Plaintiff*

\*Admitted *Pro Hac Vice*